```
                 UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY

_____

FEDERAL TRADE COMMISSION,

     Plaintiff,                CIVIL ACTION NUMBER:

        vs.                    2:20-cv-18140-JMV

HACKENSACK MERIDIAN HEALTH,    Telephone Conference
INC., and ENGLEWOOD
HEALTHCARE FOUNDATION, INC.,

     Defendants.
_____

     Frank R. Lautenberg Post Office and Courthouse
     Two Federal Square
     Newark, New Jersey  07102
     December 7, 2020


B E F O R E:          THE HONORABLE JOHN MICHAEL VAZQUEZ,
                      UNITED STATES DISTRICT COURT JUDGE


     **  ALL PARTIES PRESENT VIA TELEPHONE CONFERENCE  **


A P P E A R A N C E S:

     FEDERAL TRADE COMMISSION
     BUREAU OF COMPETITION, BY:
     JONATHAN LASKEN, ESQ.
     600 Pennsylvania Avenue, NW
     Washington, DC  20580
     jlasken@ftc.gov
     (202)326-2604
         and


          /S/Lisa A. Larsen, RPR, RMR, CRR, FCRR
                 Lisalarsen25@gmail.com
                     (630)338-5069
```

Proceedings recorded by mechanical stenography.
Transcript produced by computer-aided transcription.

```
 1   A P P E A R A N C E S:  (Cont'd.)

 2       FEDERAL TRADE COMMISSION
         BUREAU OF COMPETITION, BY:
 3       CHRISTOPHER CAPUTO, ESQ.
         LINDSEY BOHL, ESQ.
 4       400 7th Street, SW
         Washington, DC  20024
 5       ccaputo@ftc.gov
         (202)326-2460
 6       lbohl@ftc.gov
         (202)326-2805
 7            and
         FEDERAL TRADE COMMISSION
 8       BUREAU OF COMPETITION, BY:
         EMILY BOWNE, ESQ.
 9       1733 Abbey Oak Drive
         Vienna, VA  22182
10       ebowne@ftc.gov
         (202)326-2552
11
              appeared on behalf of the Plaintiff;
12
         FAEGRE DRINKER BIDDLE & REATH LLP, BY:
13       PAUL H. SAINT-ANTOINE, ESQ.
         600 Campus Drive
14       Florham Park, NJ  07932
         Paul.Saint-Antoine@faegredrinker.com
15       (973)549-7000
              and
16       FAEGRE DRINKER BIDDLE & REATH LLP, BY:
         KENNETH M. VORRASI, ESQ.
17       1500 K Street, NW, Suite 1100
         Washington, DC  20005
18       kenneth.vorrasi@faegredrinker.com
         (202)842-8800
19
              appeared on behalf of Defendant Hackensack Meridian
20            Health, Inc.;

21       LOWENSTEIN SANDLER LLP, BY:
         CHRISTOPHER S. PORRINO, ESQ.
22       6 Becker Farm Road
         Roseland, NJ  07068
23       cporrino@lowenstein.com
         (973)597-2500
24            and

25
```

```
 1  A P P E A R A N C E S:  (Cont'd.)

 2      LOWENSTEIN SANDLER LLP, BY:
        LEIV BLAD, JR., ESQ.
 3      2200 Pennsylvania Avenue, NW
        Washington, DC  20037
 4      lblad@lowenstein.com
        (202)753-3820
 5           and
        ROPES & GRAY LLP, BY:
 6      JOHN P. BUEKER, ESQ.
        Prudential Tower
 7      800 Boylston Street
        Boston, MA 02199
 8      john.bueker@ropesgray.com
        (617)951-7000
 9
             appeared on behalf of Defendant Englewood Healthcare
10           Foundation, Inc.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1           (PROCEEDINGS held via telephone conference before
2             The HONORABLE JOHN MICHAEL VAZQUEZ, United States
3             District Judge, on December 7, 2020.)
4           THE COURT:  Hello, this is Judge Vazquez.  We're on
5  the record in the matter of *Federal Trade Commission vs.*
6  *Hackensack Meridian Health, Inc., and Englewood Healthcare*
7  *Foundation*.  The civil number in this case is 20-18140.
8           Could I please have appearances, starting with the FTC.
9           MR. LASKEN:  Yes, Your Honor.  May it please the
10 Court, this is Jonathan Lasken for the Federal Trade
11 Commission.
12          Would you like my co-counsels that are on the line to
13 introduce themselves for their appearances, or would you
14 prefer for me to give their names?
15          THE COURT:  However you prefer.  I'm perfectly fine
16 if you want to let me know who is also representing plaintiff
17 in this matter.
18          MR. LASKEN:  Okay.  With me on the line is Emily
19 Bowne, Christopher Caputo, and Lindsey Bohl.
20          THE COURT:  Okay.  Good morning, Counsel.
21      For Hackensack?
22          MR. SAINT-ANTOINE:  Good morning, Your Honor.  This
23 is Paul Saint-Antoine from Faegre Drinker Biddle & Reath on
24 behalf of Hackensack.
25          And, Your Honor, I also have on the call my partner

1  Ken Vorrasi, whose pro hac application will be submitted as
2  soon as the docket is opened up.
3              THE COURT:  Okay.  All right.  Thank you.
4         And for Englewood?
5              MR. PORRINO:  Good morning, Your Honor, Chris Porrino
6  from Lowenstein Sandler joined by my partner Leiv Blad.
7         Also on the line are counsel from Ropes & Gray on
8  behalf of Englewood.  Our pro hac papers were I think hand
9  delivered earlier this morning.
10             THE COURT:  All right.  Good morning, Counsel.
11        By way of background, I did receive and review the
12 complaint.  Pursuant to a stipulation that had been previously
13 entered into by the parties, I did enter the requested TRO,
14 and that was pursuant to the authority provided in the FTC Act
15 and the Clayton Act.
16        It appears that the underlying dispute concerns the
17 proposed merger between Hackensack and Englewood and,
18 according to the FTC, if I had not entered that TRO, the
19 merger could have gone forward as of 11:59 p.m. tonight,
20 December 7th.
21        What I hoped to accomplish today was to talk to counsel
22 about going forward.  Now, defendants will see I also entered
23 a separate order because the FTC requested that I place
24 certain pertinent materials under seal.
25             Defendants have time, pursuant to the order, to respond

1  as to their position as to certain materials remaining under
2  seal, and I'll deal with that in due course.
3         But for today's purposes, I wanted to discuss with the
4  parties how they wish to proceed concerning the TRO, vis-á-vis
5  a preliminary injunction.
6         The two options that I see, but there may be a third or
7  fourth that I haven't considered, is that, if the defendants
8  wish, I could set forth a preliminary injunction briefing
9  schedule and deal with this matter in due course.
10        Or, if the parties reach an agreement, to convert the
11 TRO to a preliminary injunction.  We can also have that
12 discussion.
13        Let me ask -- and if there's any other issues you want
14 to raise, that's fine, but that's the primary issue that I'm
15 concerned about.
16        Let me start with the FTC to see if you have a
17 different view on the issue.
18          MR. LASKEN:  We don't have a different view,
19 Your Honor.  We would be more than happy if the defendants
20 wanted to convert this to a preliminary injunction.  In my
21 experience, they typically do not, so I think we will end up
22 in the first world that Your Honor proposed.
23        We are putting together and planning to send to the
24 defendant tomorrow kind of a proposed case management order
25 and schedule.

1          In the typical course in one of these proceedings,
2    there is a little bit of discovery that goes on, you know,
3    a month to two months of fact discovery and then expert
4    discovery before we -- and the briefing technically is
5    concurrent to expert discovery before we have the hearing on
6    the motion.
7          So we're -- hopefully we can reach agreement with that.
8    Or, if the Court would like, we can talk it out today and
9    maybe reach a decision or Your Honor can obviously just tell
10   us what works for Your Honor.
11           THE COURT:  Okay.  Just for the record, that was
12   Mr. Lasken; correct?
13           MR. LASKEN:  Yes.  I'll be speaking for the FTC
14   today.  I'll specifically ask for someone else to jump in if
15   we need that.
16           THE COURT:  Okay.
17        Let me hear from Hackensack as to their view.
18        Counsel, I know Mr. Saint-Antoine spoke for Hackensack
19   and Mr. Porrino spoke for Englewood.  If anybody else is
20   going to be speaking, please let us know who you are so we
21   have a clear record.
22        Let me turn to Hackensack and their view.
23           MR. SAINT-ANTOINE:  Yes, Your Honor.  Thank you.
24            First, initially, counsel for FTC did indicate in
25   an e-mail communication to us on Friday that they would be

1  proposing a case management order and a schedule, and they
2  indicated they would provide that tomorrow.
3          We will, of course, consider it and welcome an
4  opportunity to meet with FTC counsel to discuss whether we
5  can reach an agreement on the schedule.
6          Now, turning to Your Honor's question, I think from
7  defendants' point of view it's very important to recognize the
8  significance in these merger cases to the preliminary
9  injunction proceeding.
10         Although there is automatically set an
11 administrative trial in Washington upon commencement of the
12 action, it's also the realty -- and I don't think we'll have
13 any disagreement from the FTC on this -- that for the vast
14 majority of these merger challenges the outcome of the
15 proposed transaction rises and falls with the outcome of the
16 preliminary injunction proceeding.
17         So unlike some other situations where a PI is a
18 relatively modest event that precedes a trial on the merits,
19 defendants believe, and this is we think consistent with how
20 these cases have unfolded both in this circuit and elsewhere,
21 this is really the critical event for a transaction that
22 Hackensack and Englewood regard as very critical to their
23 healthcare mission.
24         Consistent with that, although every case is
25 unique, these merger cases generally and specifically -- when

1  they involve hospitals, they typically involve a preliminary
2  injunction hearing as much as five days or even more and a
3  discovery period of -- well, the most recent one that took
4  place in the Eastern District of Pennsylvania was six
5  and a half months between the filing of the complaint and the
6  preliminary injunction hearing which took place in September.
7           There is typically -- and we would seek it -- a
8  period of time for fact discovery, including significant
9  third-party discovery, followed by expert reports.
10          Most notably, Your Honor, because of the issues
11 involved, there tend to be one or more economic experts from
12 both sides, and they typically submit significant reports
13 typical of a trial on the merits and there's deposition
14 discovery of those experts so that both parties go into the
15 hearing understanding well the economic issues presented by
16 the other side's experts.
17          Those are -- the schedule in terms of substantial
18 discovery and expert discovery, Your Honor, is I think
19 consistent with all merger cases historically.
20          The one other comment I would make preliminarily to
21 the Court is that we're dealing with an obstacle that we want
22 to be sensitive to, particularly in the context of a merger
23 case, and that is dealing with discovery in the course of a
24 pandemic.
25          Among the third-party recipients that we anticipate

1   would be hospitals in the New Jersey area and maybe some
2   hospitals in Manhattan.  This will be critical to
3   understanding the plaintiff's allegations about
4   anticompetitive effects.
5          But while it's very important for us to get that
6   discovery, we're also very sensitive to the priorities of
7   those third parties.  We dealt with this issue I think with
8   cooperation of the Federal Trade Commission's counsel, we
9   dealt with it effectively in the Pennsylvania case earlier
10  this year, but it took some additional time to work
11  cooperatively with those third-party hospitals to get
12  discovery we needed without interfering with their priority
13  and that is serving their patients during the pandemic.
14         THE COURT:  As to the third-party discovery, are you
15  going to be looking at particular hospitals or particular
16  healthcare systems?
17        Obviously, I'm aware that Hackensack is a big
18  healthcare system.  I know you have a number of hospitals,
19  just from living in New Jersey.  I know Atlantic is very big,
20  as well.
21        Will it be focused on healthcare systems or in
22  particular hospitals?
23         MR. SAINT-ANTOINE:  So the subpoenas typically,
24  Your Honor, would be served on the healthcare system as the
25  custodians of the record, but in many cases we would be

1  targeting the particular document requests to focus on those
2  hospitals that are in and around the area of competition by
3  the party.
4          THE COURT:  That leaves, with Englewood, northern
5  New Jersey and then Manhattan perhaps, you said.
6          MR. SAINT-ANTOINE:  Yes.  The service area starts
7  with Bergen but the -- I'll call it the 75 percent primary
8  service area also includes Hudson County, Passaic County,
9  Essex County.  And then because of Englewood's location on the
10 Hudson River, examples of a New York hospital include New York
11 Presbyterian right across the bridge.
12         THE COURT:  Got it.  Okay.  Thank you.
13      Mr. Porrino.
14         MR. PORRINO:  Good morning, Your Honor.  The only
15 comment I would make is, given the fact we have not yet seen
16 the FTC's proposed schedule and given, as you've heard my
17 colleague describe the various moving parts that I think the
18 parties anticipate, I believe we'd benefit from having a
19 conversation with the FTC upon seeing their proposed schedule
20 and then coming back to the Court with either a consensus or
21 the areas where we have consensus and assistance for the areas
22 where we don't.
23         THE COURT:  Okay.
24         MR. PORRINO:  Your Honor, I'm sorry.  My colleague
25 John Bueker from Ropes & Gray is also on the phone.  I want to

1  make sure that he didn't have anything beyond what I just said
2  to add.
3              MR. BUEKER:  That's, I think, a very smart plan,
4  Your Honor, and it seems like the best way to proceed.
5              THE COURT:  Okay.  We're going to have a very robust
6  preliminary injunction proceeding.  It seems as though the
7  parties, at least from what I've heard, are in agreement to
8  have the defendants review the FTC's proposed plan.
9         I know the vast majority of you have not appeared
10 before me in the past, but my own practice is that, if the
11 parties are in agreement, as long as it doesn't do violence to
12 another area that I have to be concerned with, I'm generally
13 going to let the lawyers reach an agreement as to the
14 scheduling because you will know what you need better than
15 I do, particularly at this point.
16        So if the parties do reach a case management agreement,
17 you can submit it as a consent order.  I'll review it.  Unless
18 something jumps out at me, I will enter it.
19        But if not, if the parties reach an impasse as to
20 certain matters, if you just put a letter on the docket, I
21 will try to set up a call in the imminent future after
22 receiving it.  Okay?
23        Is there anything else that anybody would like to
24 address on the record?
25             I understand the parties are going to meet and confer

1  in good faith as to the scheduling order.  If you reach an
2  agreement, please just submit it.
3          As I indicated, I can only say historically I've never
4  rejected one that the parties agreed to.  You never know, but
5  if there is an issue that needs to be worked out with my
6  assistance, I'm happy to do so.
7          MR. LASKEN:  Your Honor, this is Jonathan Lasken from
8  the FTC.  I have one or two other things I just wanted to
9  mention.
10         THE COURT:  Sure, Mr. Lasken.
11         MR. LASKEN:  So one thing that I just wanted to flag
12 for Your Honor that I expect to happen fairly quickly, we sent
13 a proposed protective order to the defendant for governing
14 confidential information.  These cases tend to involve
15 significant amounts of confidential information.
16         We will file that soon which will allow us to start
17 turning over our files, but I just wanted to make the Court
18 aware that that's likely to appear soon, hopefully.
19         I haven't heard back from them, so I don't want to
20 speak for them.  That's why I'm kind of waffling on time a
21 little bit.
22         THE COURT:  Okay.
23         MR. LASKEN:  The other thing I wanted to note is we
24 think the docket may have been sealed in its entirety, and I
25 just wanted to make sure that we were clear that the FTC was

1   only seeking to seal the complaint and we don't, from our
2   perspective, have a basis to seek sealing of the entire
3   docket, to the extent that's what may have happened.
4            THE COURT:  I'll check with the clerk's office
5   because when I read the proposed order that I did enter, I
6   only read it as to the complaint, as well.  We're moving very
7   quickly.  We got it on Friday and we acted.
8         Sometimes the clerk's office takes steps that are not
9   entirely consistent with the order, but I'll review the order.
10  If the order only requires the complaint, we'll make sure we
11  take care of that.
12        So the sealing, the protective order, we'll look at
13  both of those issues, and I'll await the protective order if
14  the parties reach an agreement on it.  Okay.
15           Anything else on behalf of the FTC?
16           MR. LASKEN:  Yes.  One other thing I was going to
17  ask is, because of the crunch of time in these cases which
18  typically is bounded on the back end by the administrative
19  proceeding, we've sometimes opened discovery before the CMO is
20  actually agreed to and entered.  When I say "we," we've asked
21  the court to and the court has done it.
22        I mentioned that to defendants.  I don't know what
23  their position on it is, but it lets people get started.
24        I want to ask the Court if it might be agreeable to
25  opening discovery to allow us to serve some requests before we

```
 1  get off the call.
 2          THE COURT:  Let me first give the defendants an
 3  opportunity to review your proposed schedule.  If the parties
 4  are not able to agree, what I would most likely do -- in
 5  short order, I'm not going to make you wait -- I will start
 6  permitting certain discovery that's really not going to be in
 7  dispute.
 8          Because this was just filed, I'd like to give the
 9  defendants an opportunity to review your proposed schedule,
10  and if it seems as though it's going to be subject to long
11  negotiations, I will permit certain discovery to start.
12          Okay, Mr. Lasken?
13          MR. LASKEN:  Yes, Your Honor.  Thank you.
14          THE COURT:  All right.  Is there anything else on
15  behalf of Hackensack?
16          MR. SAINT-ANTOINE:  I don't think so, Your Honor.
17          THE COURT:  And on behalf of Englewood?
18          MR. PORRINO:  No, Your Honor.
19          THE COURT:  All right.  Thank you, Counsel.  As I
20  indicated, I will look for the protective order.  I'll take a
21  look at the sealing issue.
22          If you negotiate in good faith on the case management
23  order, if it hits a point where it looks as though it's
24  going to be an extended negotiation and the parties do want to
25  get started with basic discovery, put a letter on the docket
```

1  and then I will permit some discovery to start right away.
2  Okay?
3              MR. LASKEN:  Thank you very much, Your Honor.
4              MR. SAINT-ANTOINE:  Thank you, Judge.
5              THE COURT:  Thanks, Counsel.
6                (Which were all the proceedings had in
7                  the foregoing matter on said day.)
8                      *          *          *

*United States District Court*
*Newark, New Jersey*

FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE

I, **Lisa A. Larsen, RPR, RMR, CRR, FCRR**, Official Court Reporter of the United States District Court for the District of New Jersey, do hereby certify that the foregoing proceedings are a true and accurate transcript of the testimony as taken stenographically by and before me at the time, place, and on the date hereinbefore set forth.

I further certify that I am neither related to any of the parties by blood or marriage, nor do I have any interest in the outcome of the above matter.

*/S/Lisa A. Larsen, RPR, RMR, CRR, FCRR*
Official U.S. District Court Reporter ~

DATED this December 31, 2020

*United States District Court*
*Newark, New Jersey*