```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
 2

 3   _____

     FEDERAL TRADE COMMISSION,
 4
          Plaintiff,                    CIVIL ACTION NUMBER:
 5
              vs.                       2:20-cv-18140-JMV
 6
     HACKENSACK MERIDIAN HEALTH,        Telephone Conference
 7   INC., and ENGLEWOOD
     HEALTHCARE FOUNDATION, INC.,
 8
          Defendants.
 9   _____

10        Frank R. Lautenberg Post Office and Courthouse
          Two Federal Square
11        Newark, New Jersey  07102
          January 4, 2021
12

13   B E F O R E:            THE HONORABLE JOHN MICHAEL VAZQUEZ,
                             UNITED STATES DISTRICT COURT JUDGE
14

15        **  ALL PARTIES PRESENT VIA TELEPHONE CONFERENCE  **

16

17   A P P E A R A N C E S:

18        FEDERAL TRADE COMMISSION
          BUREAU OF COMPETITION, BY:
19        JONATHAN LASKEN, ESQ.
          600 Pennsylvania Avenue, NW
20        Washington, DC  20580
          jlasken@ftc.gov
21        (202)326-2604
              appeared on behalf of the Plaintiff;
22

23
                /S/Lisa A. Larsen, RPR, RMR, CRR, FCRR
24                    Lisalarsen25@gmail.com
                         (630)338-5069
25
```

1    **A P P E A R A N C E S:** (Cont'd.)

2        FAEGRE DRINKER BIDDLE & REATH LLP, BY:
         PAUL H. SAINT-ANTOINE, ESQ.
3        600 Campus Drive
         Florham Park, NJ  07932
4        Paul.Saint-Antoine@faegredrinker.com
         (973)549-7000
5             and
         FAEGRE DRINKER BIDDLE & REATH LLP, BY:
6        KENNETH M. VORRASI, ESQ.
         1500 K Street, NW, Suite 1100
7        Washington, DC  20005
         kenneth.vorrasi@faegredrinker.com
8        (202)842-8800

9            appeared on behalf of Defendant Hackensack
             Meridian Health, Inc.;
10
         GENOVA BURNS LLC, BY:
11       ANGELO J. GENOVA, ESQ.
         494 Broad Street
12       Newark, NJ  07102
         agenova@genovaburns.com
13       (973) 533-0777
              and
14       WINSTON & STRAWN LLP, BY:
         JEFFREY L. KESSLER, ESQ.
15       200 Park Avenue
         New York, NY  10166
16       JKessler@winston.com
         (732)778-8578
17
             appeared on behalf of Defendant Englewood
18           Healthcare Foundation, Inc.

19   **A L S O   P R E S E N T:**

20       Emily Bowne, Esq., FTC
         Lindsey Bohl, Esq., FTC
21       Christopher Caputo, Esq., FTC
         Cathleen Williams, Esq., FTC
22
         Kerry C. Donovan, Esq., Englewood
23       Heather P. Lamberg, Esq., Englewood
         Jeffrey J. Amato, Esq., Englewood
24       David E. Dahlquist, Esq., Englewood
         Joanna Hudgens, Esq., Englewood
25

1              (PROCEEDINGS held via telephone conference before

2              The HONORABLE JOHN MICHAEL VAZQUEZ, United States

3              District Judge, on January 4, 2021.)

4         THE COURT:  Good afternoon.  This is Judge Vazquez.

5    We're on the record in the matter of the *Federal Trade*

6    *Commission vs. Hackensack Meridian Health, Inc., and Englewood*

7    *Healthcare Foundation*.  The civil number in this case is

8    20-18140.

9         Could I please have appearances, starting with the FTC.

10        MR. LASKEN:  Yes, Your Honor, Jonathan Lasken,

11   counsel for the FTC.  With me on the line is Emily Bowne,

12   Christopher Caputo, Lindsey Bohl, and Cathleen Williams.

13   Thanks, Your Honor.

14        THE COURT:  Good afternoon.

15        And could I have counsel for Hackensack, please.

16        MR. SAINT-ANTOINE:  Good afternoon, Your Honor.  This

17   is Paul Saint-Antoine from Faegre Drinker Biddle & Reath on

18   behalf of Hackensack, and joining me is my partner Ken

19   Vorrasi.

20        THE COURT:  Good afternoon.

21        MR. SAINT-ANTOINE:  Thank you.

22        THE COURT:  And for Englewood.

23        MR. GENOVA:  Good afternoon, Your Honor.  This is

24   Angelo Genova of Genova Burns here in Newark who entered his

25   appearance today.  I'll be serving as local counsel for

1   Winston & Strawn.

2          I can identify those from Winston & Strawn as a matter

3   of efficiency for you, Your Honor.  Jeffrey Kessler from

4   Winston & Strawn, Heather Lamberg, David Dahlquist, Jeffrey

5   Amato, Kerry Donovan, and Joanna Hudgens, Your Honor.

6             THE COURT:  Good afternoon, Counsel.

7          Counsel, before you speak today, please say your name,

8   just so we have a clear record.

9          The purpose of today's call is to review the disputes

10  the parties are having as far as scheduling this matter.  By

11  "scheduling," I mean not only dates but also substantive

12  disagreements as to the, for example, amount of depositions,

13  number of witnesses, and so forth.

14         In preparation, I did review the joint letter that was

15  submitted at Docket Entry 45 along with the attachments.  The

16  attachments include the joint status report and proposal for

17  case management order.

18         I was going to take the issues in order.  I know that

19  there are several other minor issues not addressed in the

20  December 31st letter but which are highlighted in the proposed

21  scheduling order.

22         Do the parties want to address any issues before we

23  take them one by one, starting with the date of the hearing?

24            MR. LASKEN:  Your Honor, this is Jonathan Lasken for

25  the FTC.

1          There are one or two other things not related to the

2    CMSO that we might want to raise but can do that at the end

3    from our perspective.

4          THE COURT:  Does either Hackensack or Englewood have

5    anything that they would like to put on the record before we

6    start going through the issues?

7          MR. SAINT-ANTOINE:  I don't think so, Your Honor.

8    This is Paul Saint-Antoine on behalf of Hackensack.  I do

9    think it might make sense to start with the overall scheduling

10   issue.

11         THE COURT:  Okay.

12         MR. KESSLER:  This is Jeffrey Kessler for Englewood.

13         We also are fine proceeding with the issues as they are

14   set forth in order in the letter.

15         THE COURT:  Let me ask, as to the date of the

16   hearing, I've already entered the stipulated TRO, so my

17   understanding is that the parties are in agreement that the

18   stipulated TRO is going to stay in place until the preliminary

19   injunction hearing is held and a decision is rendered.

20         MR. LASKEN:  This is Jonathan Lasken for the FTC.

21         Yes, Your Honor, that's correct, from our perspective.

22         THE COURT:  And for the defendants, is that also your

23   understanding?

24         MR. SAINT-ANTOINE:  Yes, that is our understanding,

25   Your Honor.

1           MR. KESSLER:  It is, Your Honor, Englewood, as well.

2           THE COURT:  With that being said, I know that the ALJ

3     has this scheduled for June 15th of this upcoming year, 2021,

4     but if the TRO is in place, given the breadth of information

5     that the parties want to review, can I ask the FTC what's the

6     push for the hearing?

7           It seems as though you already have the temporary

8     restraints.  Why push the preliminary injunction so quickly in

9     light of the amount of information the parties are trying to

10    exchange?

11          MR. LASKEN:  I think, Your Honor -- this is Jonathan

12    Lasken.

13          I think, Your Honor, we would sort of answer that

14    question in two parts, right?  The first is the hearing is set

15    by the commissioners and is the trial on the merits, so if

16    we're going to have an ancillary preliminary injunction

17    proceeding, we think it needs to happen before, not at the

18    same time as the hearing -- as the trial on the merits.

19          Doing them at the same time I think has obvious

20    problems related to witnesses trying to testify in two places

21    at once, you know, counsel trying to be in two places at once

22    and so forth.

23          So our view is and the traditional way this is done and

24    in fact other than one or two instances, which I'll talk about

25    in a minute, the only way this has ever been done is for the

 1  preliminary injunction to be treated as a preliminary

 2  proceeding that happened before the trial on the merits

 3  because that's simply, you know, what the statute authorizes.

 4       Now, we referenced the *Tronox* matter.  Our view is, if

 5  the defendants are happy to wait with the TRO in place, we

 6  think the appropriate thing to do is actually delay the

 7  hearing even further than what they're proposing and just go

 8  ahead in the administrative action and have their trial on the

 9  merits.

10       And if they can't stay separate until Judge Chappell is

11  able to rule, then we would come back to Your Honor and we

12  would have a much more abbreviated hearing as was the case in

13  *Tronox* where we knew the parties were not going to merge or we

14  thought they were not going to merge until after the trial on

15  the merits.  And then at the last minute it turned out they

16  were and so we had to come in to get the preliminary

17  injunction.

18       So that is sort of our view.  And the reason we have

19  made our proposal is -- our understanding is the defendants

20  want to have a preliminary injunction proceeding and that

21  they're not willing to sort of hold off their merger, you

22  know, to go to the ALJ.

23       But from our perspective, you know, it's just

24  inefficient to do two proceedings, a hearing and a trial on

25  top of each other.  We should do either the preliminary

1   injunction as a preliminary injunction, or we can come back to

2   Your Honor with the record that is developed in the trial of

3   the merits if the defendants are going to sort of force our

4   hand in needing the preliminary injunction.

5          THE COURT:  First of all, I do agree that doing

6   them both at the same time or nearly at the same time is

7   unworkable, not for me and probably not for the ALJ but for

8   the parties, so I don't disagree with that view.

9          Let me ask you, though, as far as the ALJ proceeding,

10  I know it's up to the ALJ but what's the normal amount of

11  time -- or I shouldn't say "normal."  On average, how long do

12  the parties wait before they get a decision from the ALJ?

13         MR. LASKEN:  Your Honor, let me -- there is actually

14  a time in the CFR and it's not registering off the top of my

15  head.  It's a couple of months.

16         I can get back to you with a specific answer.  I think

17  it's about three months.  There are other folks on the call

18  who may jump in that have it in their mind.

19         The ALJ hearing is a 210-hour trial on the merits, so

20  it's a very different proceeding from this with a lot more

21  substance.

22         THE COURT:  Let me ask you, the scope of discovery in

23  the proceedings before the ALJ, how does it compare vis-á-vis

24  the Federal Rules of Civil Procedure?

25         MR. LASKEN:  It's very similar to that.  It's

1   actually even a little broader.  I believe there's no limit on

2   the number of depositions, for example, in that proceeding.

3   They would have the same interrogatories and so forth, so it's

4   very similar.

5           I can give you -- you know, we call it Part 3, but

6   I can get you the actual citation in the CFR for it if you'd

7   like to look afterwards.

8           THE COURT:  That's okay.  That's all I need.  Part 3

9   in the CFR.  I can take a look at that.  Thank you.

10          Now, let me ask defense counsel, if you want to propose

11  having a preliminary injunction hearing on June 21st, if this

12  trial date holds on June 15th and you're going to be able to

13  get more discovery than what you would have in my case -- if

14  you're already willing to wait until June 21st, does it make

15  sense to have your trial, you'll have a full record, and then

16  if need be you can come in with a full record and we can have

17  a preliminary injunction hearing?

18          MR. SAINT-ANTOINE:  Your Honor, this is Paul

19  Saint-Antoine.

20          Let me start -- on behalf of Hackensack -- and just

21  say that what counsel for the plaintiff is proposing is not

22  consistent with the sequence in merger cases generally, and

23  the one exception he's identified is distinguishable in a very

24  important respect.

25          THE COURT:  I don't -- I'm going off your date, not

1    his date.  His date was April 6th.  He wants to do this

2    earlier.  The FTC wants to do it earlier.

3         The trial date is June 15th.  The date provided by the

4    defendants was June 21st.  I'm working off of your date.

5         If you want to start on June 21st, my question is does

6    it make sense to let you do the trial?  You'll have a full

7    record, and if you don't want to wait until the ALJ issues his

8    decision, you come before me for a preliminary injunction.

9         MR. SAINT-ANTOINE:  The issue for us, Your Honor, is

10   we don't necessarily get the same amount of discovery in the

11   Part 3 proceeding as defendants have traditionally received in

12   Federal Court.

13        It's also the case that, while we agreed to a TRO, we

14   didn't agree to an indefinite stay on this transaction.  This

15   is very important --

16        THE COURT:  Hold on.  That's why I started off by

17   asking does the TRO stay in place until we do the preliminary

18   injunction hearing, and you said yes.  And then your proposed

19   date is June 21st, which is after the start of the trial date.

20        It sounds like you're arguing against yourself based on

21   what I've already asked you.  I'm asking a very common-sense

22   question which is, if you want to start this preliminary

23   injunction hearing after the trial, does it make sense to let

24   the trial go, you'll have a full record, and then you can come

25   to me on the preliminary injunction?

1        Why are we going to have two hearings -- a full trial

2   and then a hearing on a preliminary injunction?

3           MR. SAINT-ANTOINE:  Under our proposal, Your Honor,

4   we would have the preliminary injunction proceeding as in

5   other cases in June and then Your Honor would decide based on

6   that record whether or not we could close on the transaction

7   or not.

8        As in other merger cases, if the injunction is denied,

9   the parties could immediately close.  And in this particular

10  transaction, a decision from this Court is the last obstacle

11  for that closing.

12          In contrast --

13          THE COURT:  Don't you have a June 15th trial date?

14          MR. SAINT-ANTOINE:  Excuse me, Your Honor?  It would

15  be after a decision after the hearing in June, so in some

16  sense the defendants are trying to strike a balance between

17  having a record to explain the transaction and to show why

18  it's pro-competitive and their interest in closing.

19       That interest is compromised if the transaction is held

20  up until the resolution of a Part 3 proceeding, which if we

21  didn't have the ability to close until that, we're

22  contemplating a trial on the merits followed by a decision by

23  the ALJ followed by an appeal to the full commission followed

24  by an appeal to the court of appeals.

25       We lose significantly the advantage that's built into

1   the system of putting the burden on the FTC to get an

2   injunction -- a preliminary injunction, not just a TRO but a

3   preliminary injunction in a matter of months.

4         So while we --

5         THE COURT:  If that's your view, then why are you

6   opposing to their dates and times?  I'm getting a conflicting

7   message from defendants here.

8         You're telling me how important it is to have the

9   preliminary injunction hearing, but then you're asking for a

10  much larger amount of discovery and a later date.  Those are

11  not --

12        MR. SAINT-ANTOINE:  Understood, Your Honor.  I

13  appreciate the question.

14        I think what I was saying is, under normal

15  circumstances, our interests would probably be very much

16  aligned in terms of the schedule that the plaintiffs are

17  proposing but we anticipate -- in a merger in the healthcare

18  context, it's going to be extremely difficult to get the

19  necessary discovery from third-party healthcare providers

20  given the current pandemic.

21        And so whereas before this may not be an issue, under

22  the present circumstances we're asking for a little bit more

23  time so that we can accommodate what we anticipate to be the

24  concerns of third parties and to minimize as much as possible

25  the motion practice that we may get when we serve subpoenas on

1    those third parties.

2            MR. KESSLER:  Your Honor, this is Mr. Kessler.

3        I think I can address a concern that you raised, if I

4    may.

5            THE COURT:  Sure.

6            MR. KESSLER:  It would be our intention, if

7    Your Honor agrees with us that the trial should be -- the

8    preliminary injunction hearing should be on June 21st, we will

9    move the FTC to delay administrative hearing until after

10   Your Honor rules with your preliminary injunction decision.

11       This is exactly what the administrative law judge said

12   at our hearing with him that he would expect we would do, that

13   the FTC we would ask to accommodate the courts.

14       The reason for that is very, very practical.  In all of

15   these merger cases, it is virtually always the case that the

16   preliminary injunction proceedings decide the entire matter.

17   By that I mean if we go up to the court of appeals and we lose

18   and the preliminary injunction is entered, it is very likely

19   the transaction will be abandoned and there would never be a

20   full administrative trial.

21       Conversely, if Your Honor denies the preliminary

22   injunction and that denial is sustained on appeal in an

23   expedited basis, we would close, and it is very likely that

24   the FTC would not go forward with any administrative trial.

25           That is also in the transcript.  The administrative law

1    judge is very familiar with how this works.  The reason for

2    this is very practical.

3        The practical reasons are it takes well over a year

4    to go through the FTC administrative trial which then gets

5    appealed to the full commission, as Mr. Saint-Antoine

6    explained, and then goes to the court of appeals first for a

7    resolution.  While the preliminary injunction proceedings are

8    expedited, they let the parties either close or not close.

9        So what we would respectfully ask is, if Your Honor

10   agrees that it is not practical, complete this fact discovery

11   of health institutions who are both trying to take care of

12   patients and vaccinate the public during this compressed

13   period of time and ask them to do discovery for this merger in

14   such a compressed period of time in the middle of this health

15   emergency and therefore that June 21st is the much more

16   sensible, practical schedule.

17       We would ask you to order that and then leave it to us

18   to go to the FTC and ask for a delay in the administrative

19   proceeding.  I hope that clarifies how at least we would hope

20   that this would work out.

21       THE COURT:  Let me ask the defendants.  I know that

22   we're in the midst of a pandemic.  What the defendants have

23   not provided to me is how the folks who are dealing with the

24   pandemic cross over into the issues raised in this case.

25       I haven't seen that type of information where these

```
 1   folks are going to be critical to our case but they're also
 2   critical to dealing with the pandemic.  I know that Hackensack
 3   is a very large organization.
 4        So, while I appreciate the fact that all healthcare
 5   entities in the United States, particularly in the hot zones
 6   right now, i.e. Southern California, are dealing with an
 7   unprecedented surge, what the defendants have not given me is
 8   how that impacts the people who are going to be involved in
 9   this case.
10            MR. SAINT-ANTOINE:  Your Honor, this is Paul
11   Saint-Antoine.
12        One reference point I can provide the Court is we have
13   had a hospital merger case take place in the course of the
14   pandemic through a decision and there was -- as in this case
15   there was contemplated third-party discovery on healthcare
16   providers.
17        There was objections to the discovery by those
18   providers, there was some motion practice in that case.  This
19   is the Jefferson-Einstein in the Eastern District of
20   Pennsylvania.  There was motion practice.
21        Whether through objections or motion practice, those
22   third parties referenced their concerns about diverting
23   resources to respond to discovery while they were trying to
24   address the healthcare concern created by the pandemic.
25            Another reference point I can provide to Your Honor
```

1  comes from the New Jersey Supreme Court.  It reinstated just

2  recently a prohibition on depositions of healthcare providers

3  given the current pandemic.

4      Now, I'm not suggesting that that would preclude the

5  discovery that we are contemplating in this case, but it is

6  emblematic of the types of objections that we anticipate in

7  this case like we received in the *Jefferson-Einstein* matter.

8      THE COURT:  Okay.  So then we're going to have to

9  have a safety net, so to speak, for issues that arise that are

10  unique to the pandemic.  That I don't disagree with.  I'd have

11  to see what each of those issues are before ruling on them.

12      Conversely, I know a number of healthcare practitioners

13  who have not been practicing as much during the pandemic.

14  They're just not in the area that deal with COVID-19 or

15  related issues and they have actually seen an opposite -- you

16  know, surgeries put off and so forth.  Some of those people I

17  know in the healthcare field have seen actually a significant

18  drop-off during the pandemic.

19      I think that's going to have to depend on the person

20  who is needed for a deposition or the documents that have to

21  be produced, and then I'd have to understand how the person

22  who produces documents is needed to deal with the pandemic or,

23  I guess, paperwork related to the pandemic.

24      In other words, just telling me that there's a pandemic

25  doesn't really answer the question.  I'm well aware there's a

1    pandemic, but I need to know more to determine whether the

2    pressures of the pandemic are actually causing a delay.

3        I'm not saying that there won't be, but I would need

4    more before parties just tell me, well, Judge, there's a

5    pandemic delay.

6        You're all on the phone, I'm on the phone, and we're

7    trying to work through this.

8            MR. LASKEN:  Your Honor, can I respond briefly?

9            THE COURT:  Sure, go ahead and respond.

10           MR. LASKEN:  I just wanted to say a couple of things.

11   The case the defendants referenced was a much broader case

12   than this one.  It involved the market inpatient rehab, which

13   means nursing homes had to testify, and a lot of those

14   disputes were with nursing homes which are much smaller

15   entities, so I just wanted to flag that.

16       The second point I just wanted to clarify for the Court

17   is we don't have any intention to seek discovery of front-line

18   providers.  This is about the leverage of negotiations between

19   hospitals and insurers and this is about those folks, so, you

20   know, we agree with the Court that we think it's unlikely that

21   these people are on the front line, at least from our

22   perspective.  We obviously don't know what the defendants

23   will do.

24           THE COURT:  I don't know, either.  I just don't want

25   to go with an assumption that it necessarily will be.  I can

```
 1   certainly envision circumstances where there's going to be

 2   somebody who in good faith says this is why I'm not able to

 3   comply at this time due to my duties with the pandemic and

 4   then there should be other people who don't have that same

 5   obstacle.

 6         MR. LASKEN:  I completely agree, Your Honor.  This is

 7   Jonathan Lasken.

 8       We agree with the approach of dealing with the issues

 9   as they arise.

10         MR. SAINT-ANTOINE:  Your Honor, this is Paul

11   Saint-Antoine.

12       Just to add, we anticipate if we get those objections

13   from third parties that we would explore solutions.  We're not

14   contemplating simply accepting the objections at face value,

15   but what we do anticipate is additional time to meet and

16   confer and attempt to resolve those third-party concerns

17   amicably so that the Court is not inundated with motions for

18   protective order or motions to compel immediately after a

19   response is submitted.

20         THE COURT:  Let me --

21         MR. KESSLER:  Your Honor --

22         THE COURT:  Yes.

23         MR. KESSLER:  This is Mr. Kessler.

24        I just was going to indicate that most of the

25   third-party witnesses we need are going to be at the
```

1 senior hospital level of administration, not on-the-line

2 practitioners, but those very officials are very involved in

3 the issues of vaccine rollout, of surge expansion, of all of

4 these major decisions that are going on right now to actually

5 run the hospitals.

6 We have a very large number of third-party

7 hospitals who are going to be involved, not just in Bergen

8 County but in Hudson County as well as in Manhattan.

9 Given that number and this obvious problem that

10 we're going to face, we believe the schedule we proposed is

11 still extremely expedited and it is just -- you know, we could

12 go through this and serve the discovery and then come back to

13 Your Honor immediately, but I believe it will be far more

14 efficient if we went to the FTC now and asked them to put off

15 their hearing for a couple of months so that we could have

16 this orderly schedule before you.

17 That's going to be a much more efficient and

18 effective way of proceeding than putting this off, in effect,

19 for 30 days from now where we're going to be inundated from

20 requests from these third parties for delay.

21 THE COURT:  Mr. Kessler, I'm going to wait and see

22 how that actually plays out.  I can certainly foresee it

23 playing out in some circumstances as you're indicating, but

24 I'm not going to make that decision today as far as just

25 anticipating every third party is going to have difficulty

 1   because of the pandemic.  That I'm going to -- I want to build

 2   a record on.

 3        You may ultimately prove to be correct, but I'm

 4   going to want more evidence to support that argument before I

 5   agree with that position.

 6        Let me work back and give everybody my preliminary view

 7   on timing because I went through this closely before we got on

 8   the phone.

 9        My preliminary view is, first of all, no in limine

10   motions, no *Daubert* motions.  That's going to take up a

11   tremendous amount of time.

12        I'm going to be hearing the preliminary injunction.  If

13   you have an objection either on *Daubert* grounds or on

14   in limine grounds, you make it during the hearing and I'll

15   reserve on it.

16        I'm not going to have an entire *Daubert* hearing or

17   concerns -- I don't mind if you submit briefs ahead of time

18   and tell me why you don't think a person is qualified or why

19   you don't think the person's testimony is relevant and so

20   forth and highlight it, that's fine, but we're not going to do

21   a whole round of in limine motions for a bench hearing.

22        You can make a record if you want, but we're going to

23   cut that out as far as delaying the hearing.  I'll consider

24   all objections.  If I agree with you, it will go into the

25   opinion.  If I don't agree with you, it will go into the

1   opinion and I'll give you my reasons.

2         That should take at least some of the paper off this

3   case.  Instead, cover it in your brief to me as to what you

4   think you can prove and what you can't prove and what the

5   other side can prove and what the other side can't prove.

6         My preliminary view is, you make the in limine motion

7   to me, I'm going to rule on.  I'm already going to know the

8   evidence that I'm ruling on and then I'm going to have to hear

9   the evidence anyway.  That just seems, to me, to put an

10  unnecessary step in there.

11        Every party will be able to make appropriate arguments.

12  I'll be aware of it before the hearing, I'll hear the

13  arguments during the hearing, and when I issue an opinion, I

14  will also address those arguments.  I just want to make sure

15  that once we start we keep going through the hearing and get

16  the testimony in.

17        I'm contemplating a hearing on May 10th and then

18  work -- and before we get to the numbers, because I know there

19  are disputes as to the numbers, closing fact discovery on

20  March 5th and then experts -- plaintiff's experts on

21  March 22nd, defendants' experts on March 29th, any reply

22  April 1st.

23        Again, to give you those dates, March 10th start the

24  hearing -- May 10th start the hearing, March 5th close fact

25  discovery with the clear proviso that if there's difficulties

1   with third parties for any reason, obviously including the

2   pandemic.  But even if there's not a pandemic-related issue,

3   if there's a problem in getting information from the third

4   parties, let me know two weeks before that close date so we

5   can adjust that.  I'm willing to be flexible here.

6        I don't necessarily agree or disagree with defendants

7   or plaintiffs on this issue.  I just want to know who is

8   having trouble and what's the reason they're having trouble

9   producing information and then we can deal with those issues.

10       If it becomes too much of a problem, they're going to

11  have to come before me and I'm going to ask them the same

12  question as to what the difficulty is with production.

13       So let's talk first about the dates, and then I'll talk

14  to you about the other issues that came up.  It's not what

15  either party proposed, but I'm trying to give consideration

16  and work in some extra time from the beginning because of the

17  pandemic, realizing I may have to work in more time or other

18  issues.

19       Let me hear first from the FTC as to the proposed date

20  of May 10th.  If you object, other than the fact that it's not

21  the date you propose, can you give me your reasons why that's

22  an unworkable date.

23        MR. LASKEN:  Your Honor, we have no objection to

24  May 10th.  I think we would want to address, kind of, the

25  expert piece, and I can give you more information on what

1  actually happens in that piece in a case like this, but the

2  May 10th date is fine with us.

3       THE COURT:  Defendants, I know you don't want that

4  date, you want about a month later, but besides that, any

5  objections if I set it down May 10th for the start of the

6  preliminary injunction hearing?

7       MR. SAINT-ANTOINE:  This is Paul Saint-Antoine, and

8  we appreciate the Court striving to reconcile the competing

9  interests.

10      I think the only thing we would ask for clarification

11 is do we have an opportunity to come back to Your Honor in the

12 coming weeks if there are problems meeting our discovery

13 requests where we think we need --

14      THE COURT:  Absolutely.  The answer to your question

15 is you can always come back.  Just give me the reasons.

16 Everybody try to be reasonable.

17      If there's a real reason, you know, you're going to get

18 a sympathetic ear.  If it's just, well -- I won't give you

19 some of the reasons that I've heard recently, but if it's not

20 a reason backed up of what's happening in the case, you're

21 less likely to get a sympathetic ear.

22      MR. SAINT-ANTOINE:  Understood.

23      MR. KESSLER:  Your Honor, this is Mr. Kessler.

24      THE COURT:  Mr. Kessler, yes.

25      MR. KESSLER:  The May 10th date works for us.  We

1  appreciate the Court's consideration, and we will only come

2  back on that date if it turns out that we do run into those

3  insurmountable problems, but we appreciate the Court finding a

4  way to give us some extra time, which we will try to meet.

5          THE COURT:  All right.  We'll set down 5/10 with the

6  understanding that this may be a very fluid situation for a

7  number of reasons, chief among them the pandemic.

8          Now let's talk about the close of fact discovery before

9  I get to the expert issue.

10         Again, it's kind of between the two parties' dates, but

11 I was proposing March 5th.  That would be the first Friday in

12 March.  It's two weeks later than what the FTC had originally

13 requested.

14         Let me start with the FTC as far as March 5th for close

15 of fact discovery.

16         MR. LASKEN:  We have no objection to that date,

17 Your Honor.  This is Jonathan Lasken.

18         THE COURT:  Then I'll go in order for the defendants.

19     Mr. Saint-Antoine?

20     MR. SAINT-ANTOINE:  Yes, Your Honor, very similar

21 view.  Again, we appreciate the Court trying to strike the

22 right balance, and as long as we have an opportunity to come

23 back and address what you described as a fluid situation,

24 we'll take it from there.

25         THE COURT:  Okay.  I certainly understand things

1  could arise, particularly during this time.

2       Mr. Kessler, with that proviso in mind that if you have

3  good cause you can always come before me, is March 5th

4  acceptable?

5       MR. KESSLER:  Yes, Your Honor.  The only thing I

6  would ask is that I think there would still be room with

7  Your Honor's new trial date to advance it one week to

8  March 12th.

9       I don't know what other dates Your Honor has in mind,

10 but I think even that one additional date could be very

11 helpful in getting this resolved and I think it would fit in

12 with the schedule.  But if Your Honor concludes that it should

13 be March 5th, we'll certainly work within that.

14       THE COURT:  Before I consider that, let me ask

15 Mr. Lasken.

16       Mr. Lasken, what did you want to raise with me as far

17 as the expert issues? because I'm going to have to fit that

18 into the scheduling.  Let me understand those issues.

19       MR. LASKEN:  Sure.  So, often in these cases we

20 actually do the expert report and the briefing simultaneously

21 so the first thing is I noted from your schedule I think you

22 were putting the expert reports in front of the briefing, is

23 my guess, but the thing I wanted to raise was these are often

24 quite lengthy, what we receive from the defendant, and the

25 case that defendants reference, leaving aside the nursing home

1    piece, we got 454 pages of report involving numerous data runs

2    in a past case, advocates that they have referenced, that was

3    337.

4         I don't think we're going to be able to respond to that

5    in two days, but I do think that that can overlap with the

6    briefing, and that's traditionally how we've done it.  I think

7    it would be very hard for us to respond to their disclosures

8    that fast just given the nature of the reports in a case like

9    this.

10        THE COURT:  Let me ask you this:  I know that the FTC

11   investigated this matter and I know based on the proposed

12   scheduling order one of the areas the parties agreed upon is

13   that the defendants would not have to provide additional

14   information that they have already provided.

15        Given the fact that the FTC does have certain

16   information already, how long after the close of fact

17   discovery would the FTC need to submit its experts' reports?

18        MR. LASKEN:  Often, Your Honor, it's very close to

19   the day that fact discovery closes that we submit them and

20   also the brief, for that matter.

21        The only challenge here is -- you know, in *Jefferson*,

22   the case defendants referenced, some of the depositions ran

23   over, so it's hard for us to actually submit that if we don't

24   have all the fact evidence in.  But assuming the fact evidence

25   is in, a week would be plenty, from our perspective.

1          THE COURT:  Okay.  So if I gave the parties an extra

2     week on fact discovery, which I always prefer to have a

3     little bit more breathing room, not as a judge but for the

4     parties.  If that was March 12th, I could do the FTC, the

5     expert brief due on the 19th.

6          The one area, before I get to the experts, is was the

7     FTC's position -- I saw sequential, so you're anticipating

8     your brief's opposition reply?  Did I read that wrong?  Or

9     were you anticipating both sides submit their expert briefs

10    simultaneously?

11         MR. LASKEN:  This is Jonathan Lasken again.

12         Our position was simultaneous, especially at this

13    point.  We think with the schedule compressed, that will save

14    time, you know, and give everyone a longer time to respond to

15    what the other side actually puts together.

16         We were simultaneous on expert reports.  On the

17    briefing we were sequential.

18         THE COURT:  Okay.  Now, let me ask you as far as

19    simultaneous on the expert reports, the FTC's view is

20    simultaneous submissions of the expert reports and then there

21    will just be one opposition -- one set of opposition reports

22    filed.

23         Is that what you're indicating?

24         MR. LASKEN:  Correct.  So instead of having a back

25    and forth on expert reports with two periods we'd have just

1    one longer period and everyone can respond to each other.

2         THE COURT:  All right.  Let me hear from the

3    defendants, because I know that at least the way I read it

4    they were anticipating a different sequence.

5         MR. SAINT-ANTOINE:  So, Your Honor, this is Paul

6    Saint-Antoine on behalf of Hackensack.

7         We have proposed the traditional sequencing in part

8    because it's the plaintiff's burden to find a relevant market

9    and to establish the likelihood of anti-competitive facts.

10        With a proposal of simultaneous expert reports, you

11   create the prospect of the two sides talking past each other,

12   where our own experts don't have an opportunity to evaluate

13   what the plaintiffs think the market realities are.

14        THE COURT:  All right.  Let me hear from Mr. Kessler.

15        MR. KESSLER:  Yes, that's our concern, Your Honor.

16   In fact, since the plaintiff -- since the FTC wants to have an

17   opportunity to do a sequential briefing schedule and it was

18   mentioned that they were thinking of doing the briefing

19   simultaneously with the experts, which I think is possible to

20   do, it would seem to us that they should go hand in hand.

21        In other words, at least for my client, if you're

22   going to do sequential briefing, then you would do sequential

23   experts at the same time so that you could have the FTC file

24   its motion papers with their experts and then we would file

25   our opposition with our experts and then they could file their

1    reply with any reply experts.  That puts it all together in a

2    way that avoids us talking past each other.

3        That is the concern.  For us to do expert reports that

4    say, well, we think the FTC's expert is arguing this and here

5    is why they're wrong, only to find out they're not arguing

6    that at all, they're arguing something slightly different,

7    doesn't seem to be efficient for the Court and would end up,

8    you know, I think more disrupting the orderly presentation of

9    the case rather than advancing it.

10       MR. SAINT-ANTOINE:  Your Honor, this is Paul

11   Saint-Antoine.

12       I concur with that framework, and certainly I think it

13   would help on the overall schedule.  What I would hope that

14   would also accomplish is to create a little bit more of a gap

15   between the submission of the plaintiff's expert report and

16   our opposition report since we will be evaluating their

17   economic and other expert issues for the first time.

18       THE COURT:  Right.  That I understand.  Let me ask

19   Mr. Lasken.

20       Mr. Lasken, if we close fact discovery on the 12th and

21   you believe you're able to get your expert report on the 19th,

22   would that also give you sufficient time for your opening

23   brief?

24       MR. LASKEN:  Yes, Your Honor, assuming that the

25   evidence is in, you know, just the caveat I want to make.

1   It's a big assumption but assuming it's in.

2           I do want to say, Your Honor, the FTC has expressed --

3   we're flexible on this.  We think simultaneous is the most

4   efficient, but our big concern with sequential is, given the

5   volume of material that we're going to get, we need an

6   adequate time to respond.

7           That's our primary concern with sequential.  The briefs

8   will be 50 -- whatever number of pages Your Honor orders.

9   This is hundreds of pages and a ton of metric work, and that's

10  our only concern here.

11          THE COURT:  All right.  Trying to take into account

12  the work that goes into the briefing along with submitting the

13  expert reports, if we close discovery on March 12th, what if I

14  give the FTC until March 24th, okay, so that will expand it

15  from the 19th and give you to the middle of the following

16  week, give the defendants two full weeks to submit their --

17  that would be April 7th to submit their opposition, both

18  briefing and their opposition experts, and then give the FTC a

19  full week to do their reply which would be the 14th of April.

20          Let's ask the FTC first.  Is that proposal acceptable?

21          MR. LASKEN:  So, Your Honor, if I could suggest a

22  slight tweak to it?

23          THE COURT:  Sure.

24          MR. LASKEN:  There actually are some issues the

25  defendant carry the burden on such as efficiencies, and so we

1   actually I think would need less time for our opening set of

2   papers and would find that time important for reply.

3        Often, for example, the amount in the CMSO that we sent

4   to the Court was even time on the sequential exchange, 14 days

5   each.  I would just ask that we move it all up a little bit

6   and give us, you know, more like 14 days to reply.  17 would

7   be ideal but 14 we could live with.

8        THE COURT:  Let me make that change and then I want

9   talk to defendants.

10       It will be 3/19 still for your initial briefing

11  submission.  I'll give the defendants two full weeks to

12  April 2nd, and then I would give the FTC two weeks until

13  April 16th.

14       Let me ask defense counsel, starting with

15  Mr. Saint-Antoine.

16       Would that be acceptable?

17       MR. SAINT-ANTOINE:  I think we're getting, you know,

18  in the right ballpark given the overall schedule, Your Honor.

19  I do think that -- what I thought I heard from Mr. Lasken was

20  he didn't need as much time between the close of fact

21  discovery and his initial report.

22       THE COURT:  You heard him right.  That's why I moved

23  it back from March 24th to March 19th.  I gave him a week.

24       MR. SAINT-ANTOINE:  I guess I would hope we could

25  have perhaps until April 12th instead of the 9th.  If I

1 understand, Your Honor was proposing the 9th for the

2 defendants' opening report.  That would give us that

3 additional weekend.

4 　　　　　THE COURT:  Actually, I was proposing April 2nd,

5 which is two weeks.

6 　　　　　MR. SAINT-ANTOINE:  So it would be the 5th.

7 　　　　　THE COURT:  I can move yours to the 5th, and then

8 I can move the FTC to the 19th.

9 　　　　　MR. KESSLER:  Your Honor --

10 　　　　　THE COURT:  I'm sorry, Mr. Kessler.  Go ahead before

11 I give the dates out again.

12 　　　　　MR. KESSLER:  Your Honor, again, I'm going to

13 advocate if it's possible to give us until the 9th, and the

14 reason for that is, just like the FTC needs time to study the

15 very limited issue on which we have the burden of proof

16 regarding efficiencies, we are going to have to have our

17 experts evaluate all of their analyses we're going to see for

18 the first time.

19 　　　　So, if it's possible to get three weeks to do that and

20 we'll do our briefing, as well, I think that would work in the

21 schedule again because the FTC can have the additional time

22 and then we'll still get this to Your Honor significantly in

23 advance of the hearing dates for Your Honor to live with that.

24 I hope you'll be able to give us the three weeks, if possible.

25 　　　　　THE COURT:  If I give you the three weeks, then I'm

 1   going to give the FTC the 17 days they asked for which would

 2   bring them to the 28th.

 3         If the parties need the time, I'd rather have you --

 4   I know you're all going to be working, but if you need a few

 5   extra days to do a better work product and represent your

 6   clients, I think it makes sense.

 7         Let me ask, then, the FTC with this time frame and see

 8   if there's any objections.

 9         MR. LASKEN:  We don't have an objection, but let me

10   just ask to make one request.  Our brief will cite the expert

11   reports, so if possible, can we just move all the briefs back

12   one day from when the reports are due so we can get the

13   citations in?

14         THE COURT:  Yes.  I don't have any issue with that.

15   You want to do expert reports on the 19th, and then your brief

16   would be on 3/22.  Opposition expert reports on the 9th,

17   opposition briefs on the 12th, and then FTC reply expert

18   report on the 28th and reply brief on the 29th.

19         MR. LASKEN:  Yes, Your Honor, for the FTC.

20         We'll depose -- we obviously have to depose the

21   experts, but I believe there should be time for that in those

22   10 days, especially without *Daubert*s being filed in advance.

23         THE COURT:  To be clear on *Daubert*, if you think it

24   needs to be in writing, that's fine.  If you think you can do

25   it verbally, that's fine, too.

1      I'm not going to preclude anybody from making an

2  appropriate argument as to why I should not consider an

3  expert's testimony.  I just don't want to go through whole

4  separate rulings on in limines and *Dauberts* when I think I can

5  handle that simultaneously with the actual hearing as far as

6  hearing the arguments, understanding them, and then reserving

7  on them until I do the opinion.

8          MR. LASKEN:  Understood, Your Honor, yes.  Jonathan

9  Lasken for the FTC.

10         THE COURT:  Okay.  Will that provide the defense --

11  does that schedule work for the defense?

12         MR. SAINT-ANTOINE:  Your Honor, this is Paul

13  Saint-Antoine.

14      We will certainly work with it.  I think whatever

15  experts we have they will naturally want more time, but we'll

16  have to work with the schedule.

17         THE COURT:  Okay.

18         MR. KESSLER:  Your Honor, we'll do our best to make

19  the schedule work, Your Honor.  Thank you.

20         THE COURT:  That leads us now to -- before we get to

21  the number of depositions, it leads us to the preliminary

22  witness list and the final witness list.  I know we have other

23  issues, as well.  I'm trying to deal with the big issues.

24      As far as the preliminary fact witness list, plaintiffs

25  propose no more than 10 individuals appear on the other sides'

1  individual fact witness list but each side may supplement

2  their list by adding up to 5, so that's a total of 15.

3       Defendants' position is 25 on the preliminary fact

4  witness list and then supplement up to 5.  So we have the

5  difference between a total of 15 -- potential 15 and 30.

6       I'd like to discuss this in context with the final

7  witness list, as well, and that's the difference between 10

8  for plaintiff and 20 for defendants.

9       What I'd like the parties -- when you address these

10  issues, I understand that it's a useful measuring stick that

11  both sides have pointed to prior cases and what was used in

12  those particular cases, but when you do that, please also talk

13  about how you see this particular case playing out and why you

14  think your number is correct.

15       I appreciate the analogy to other cases, but I'd also

16  like to know a little bit more as to why you believe it's

17  appropriate in this case.

18       I'll start with the FTC, preliminary witnesses and

19  final witnesses.

20          MR. LASKEN:  Sure, Your Honor.

21       So, in terms of the preliminary witness list, you know,

22  as you know we've had an investigation so we have an idea of

23  how many, you know, people we would call.  We know it's less

24  than 15, but we understand the need to make those lists

25  larger.

1        Our particular proposal here is based on

2   *Hershey-Pinnacle*, which also had 15 witnesses on the

3   preliminary fact witness list, and we think that's a very

4   similar case.

5        It was a single-product market, single-geographic

6   market, non-urban, you know, suburban in this case, area and

7   that ended up with at the trial 14 total witnesses, including

8   experts.

9        In addition, we've agreed to a six-day hearing, so we

10  don't see any realistic way that we would ever get anywhere

11  close to 30 witnesses.  So, you know, I guess I'm a little

12  hesitant to completely lay out exactly who our witnesses would

13  be, but I think we anticipate somewhere in the neighborhood of

14  8 witness at the end of the day, Your Honor, so that's why

15  we're proposing 10 per side for final and 15 preliminary in

16  this case consistent with past cases that have been similar.

17       Our concern is kind of twofold with this.  One is, if

18  they're on the witness list, we need a deposition of them

19  because we don't control any of these witnesses.  We don't

20  have executives in play and so forth.  Our feeling is that,

21  you know, having these very large witness lists is going to

22  result in potentially a surprise for us at the hearing.

23       One final point I want to make is I think that the

24  defendants mentioned they're contemplating a lot of witnesses

25  who are not in the market, you know, New York City and Hudson

1   County.  We don't see that necessary as part of the case, to

2   sort of blanket providers in New York City with subpoenas.

3        The reality is we don't view those witnesses as

4   credible replacements in the event of a small price increase,

5   which is what we're talking about.  Especially during the

6   pandemic, we should make an effort to tailor discovery towards

7   the witnesses who we think are going to be called.

8            THE COURT:  Okay.  All right.

9        Mr. Saint-Antoine?

10           MR. SAINT-ANTOINE:  So, Your Honor, a couple of

11  thoughts in response to Mr. Lasken's point.

12       First, as he pointed out, we are differently situated.

13  The plaintiff has had nearly a year of pre-complaint discovery

14  that it's taken and it was substantial, Your Honor;

15  10 investigative hearings, 4 of which were third parties.

16  They have gotten 7 declarations and discovery, either

17  testimony or documents, from 13 third parties.

18       I think it's important to point out they have

19  identified 32 entities on their initial disclosures which

20  encompasses 46 individuals, so even by their own standards

21  this is a significant case.

22       Also another -- I understand that the plaintiff wants

23  to view the market as small but that goes to a merits issue.

24  We don't think -- it's a critical issue.  We don't think that

25  the market is Bergen County.

1          My one reference point, New York Presbyterian Hospital

2     is closer to Englewood, just across the George Washington

3     Bridge, than the flagship Hackensack Hospital.  I know

4     Mr. Lasken references New York hospitals.

5          We're not contemplating taking discovery of every

6     New York hospital, but there are some, in our view, that are

7     definitely within the market.

8          This case, because of the nature of the transaction,

9     has at least four categories of relevant witnesses.  There are

10    the party witnesses themselves, so for the combination of

11    Hackensack and Englewood already adds several witnesses to our

12    contemplated lists.

13         Then, given the nature of competition in the healthcare

14    context, there are two levels of competitors.  There are the

15    insurance providers, the payors, and that could be both

16    insurance companies like Horizon Blue Cross but it could also

17    be self-insured employers who also have a stake in the

18    transaction and both are relevant sources of discovery.

19         Then you have the competing providers which have

20    relevant information about the marketplace.  Are they or are

21    they not competing with Hackensack and Englewood and are they

22    or are they not potential members of any insurance network?

23         When you add in those categories, you quickly get up in

24    terms of the numbers as you go into discovery, and we simply

25    don't know.  We don't have the advantage that the FTC has of

1   communicating with these third parties for nearly a year.

2       Putting that aside, we also don't have the identity of

3   interest.  They want to keep this small for the sake of the

4   merits, and we want to develop the market realities consistent

5   with our view of the market.

6       THE COURT:  Who were the primary -- I know that

7   you've indicated the two types of payors; the insurance

8   providers, either government or private, and self-insurance

9   employers.

10      What type of payors dominate in this particular

11  transaction?

12      MR. SAINT-ANTOINE:  The largest one is Horizon Blue

13  Cross, Your Honor, the largest commercial payor.  In fact,

14  they're actually supportive of the transaction.  They have

15  gone on record in support of it.

16      But the FTC has already obtained declarations from

17  other payors such as Cigna.  Aetna is another payor.  These

18  are -- given the nature of competition, these are -- I don't

19  think there's any disagreement from FTC these are the

20  customers.  The line of competition are the insurance payors.

21      And we contemplate that the FTC will rely upon their

22  testimony in support of their case, and we are very interested

23  in probing their testimony and exploring their declarations.

24      THE COURT:  You said --

25      MR. LASKEN:  May I respond briefly, Your Honor?

```
 1        THE COURT:  Absolutely.  Let me just ask one last
 2  question.
 3        There are no big government payors in this case, then?
 4  It's all primary private insurance?
 5        MR. SAINT-ANTOINE:  Their market appears to be
 6  commercial insurance, Your Honor.  They have also raised some
 7  allegations about Medicare Advantage programs, but those are
 8  sponsored by private insurers.
 9        MR. KESSLER:  Your Honor, if I may, just before the
10  FTC goes so they can then respond to both of our comments, if
11  that's all right with Your Honor?
12        THE COURT:  Sure.
13        MR. KESSLER:  Two things I'd like to add.  First of
14  all, with respect to the trial witness list, you should note
15  that our proposal includes experts in our 20 witnesses per
16  side proposal.
17        That's important because it may very well be that
18  defendants will be calling four or five experts in this case
19  through the trial and they will be extremely important.
20        The reason for that, Your Honor, is that this is not
21  just an issue of price effects, which are important, and that
22  will be addressed at the trial; but this is also an issue of
23  other competitive effects of this merger regarding quality of
24  care, capacity utilization, how healthcare is delivered in
25  this market, as well as efficiencies.
```

1          Your Honor is going to have to get expert testimony on

2     all of these issues from defendants' point of view, so even

3     before we go too far, we may use 5 of the 20 for experts, at

4     least from our perspective, and that's not uncommon in terms

5     of other cases that have had these complex issues.

6          The second part of this is, while we appreciate that

7     the FTC would like this market to be Bergen County alone,

8     the reality is that this is an urban area where the

9     interconnection between Hudson County and Bergen County and

10    parts of Manhattan and the flow of patients in healthcare is

11    quite significant and probably the most important issue

12    Your Honor is going to have to address.

13         The fact that Bergen County, which goes back to the

14    1600s, has a particular political scope doesn't tell you

15    anything as to whether or not that would be equivalent to the

16    economic scope of competition for evaluating this merger.

17         This involves the whole future of our client, how

18    they're going to continue and to provide healthcare in this

19    market and survive and grow, and so it's very important that

20    we be able to call enough witnesses from third parties,

21    whether they're payors or whether they're hospitals; and we're

22    going to need hospitals in Bergen County, Hudson County, and

23    Manhattan, we're quite sure, in terms of gathering the

24    evidence.

25         We won't have them all testify at trial.  Some of that

1  evidence we could submit through depositions, some of it we

2  could submit through our experts, but that's why we need the

3  30 to start, to be able to go in there and determine who might

4  have this evidence, and we haven't had all the investigation.

5       Then eventually we'll cut it down and make sure our

6  witnesses fit within the five or six days of trial that we've

7  been discussing.

8       Thank you, Your Honor, for giving me a chance to add in

9  some additional perspective.  Thank you.

10          THE COURT:  Okay.

11      Mr. Larsen -- I'm sorry.  I was thinking of my Court

12  Reporter, Ms. Larsen.  I meant to say "Mr. Lasken."

13          MR. LASKEN:  That's fine, Your Honor.  I've been

14  called much worse.

15      We agree the focus is on the insurers, and we think

16  other than Horizon, who is actually a joint venture partner

17  with Hackensack, they're going to hear pretty much uniform

18  testimony about concerns with this transaction and what

19  Hackensack has done in the past with the leverage it already

20  has and what it may do in the future with that leverage.

21      We agree that's where the focus is.  We don't think

22  that justifies a 30-person witness list, but we agree with

23  that.

24      The point that Mr. Kessler made I actually think is

25  important and it's a point that I want to flag, which is, if

1  they are putting on 4 to 5 experts, that will use most of

2  their time at the hearing and they know who those witnesses

3  are, which means that on their final witness list proposal

4  they are going to have 15 witnesses for 2 to 3 people who will

5  actually be called.

6       From our perspective, that is going to impede our

7  ability to properly prepare for trial.  That's exactly --

8  our concern is that the list we get will not be a fair

9  approximation of who is expected to be called and so we will

10 not be in a position to prepare appropriately for those

11 witnesses.

12      On the 30 witnesses per side, the only thing I want

13 to say is Hackensack, you know, competes in this market.

14 Hackensack knows who their competitors are or they should.  I

15 don't think that -- although we certainly have had an

16 investigation, the vast majority of the material from the

17 investigation, I think all than -- less than maybe a half of a

18 percent of the documents came from the defendants so they

19 obviously have that information.

20      They don't need to go fishing through the files of

21 every hospital in Hudson County and New York City to try to

22 find out who competes with them.  If they think they are

23 competing with people, I think they can tailor it to the

24 people who they are competing with or that they believe

25 they're competing with.

1        I don't think that's unreasonable.  And especially, as

2   I said, in a pandemic, you know, we would suggest that sort of

3   containing the case to a reasonable level while permitting

4   them discovery that they need in these markets is the right

5   way to do this.

6        MR. SAINT-ANTOINE:  Your Honor, this is Paul

7   Saint-Antoine.

8        Can I just follow up on that last point?

9        THE COURT:  Sure.

10        MR. SAINT-ANTOINE:  You know, we do have a sense of

11   who our competitors are, and then there's a significant

12   difference of view between us and the FTC on that issue.  The

13   question is, do we have an opportunity to take and present

14   evidence to establish our view about the broad range of viable

15   competitors?

16        Because we're competitors, we don't have access,

17   obviously, to these other health systems' internal

18   documentations and we don't speak with them about competitive

19   issues that go to the core of this case.

20        It's going to be up to the attorneys using appropriate

21   discovery tools to get that evidence so that the Court will

22   have the benefit of evidence to decide that issue about

23   whether we're right or whether the FTC is right about who are

24   the group of viable competitors in this.

25        THE COURT:  Okay.  Let me ask the FTC.  I understand

1    you're saying the vast majority of information -- documents

2    I'll say, whether it's the electronic form or otherwise that

3    you received -- came from the defendants.

4         Are you also turning over documents or ESI from who you

5    believe to be the competitors in this case?  In other words,

6    have you already received that information?

7         MR. LASKEN:  Yes, Your Honor, the FTC have already

8    turned over its files.  We turned that over on December 16th,

9    so defendants have had that for two weeks.  They have had the

10   declarations, the documents, the data.  They have what we have

11   and they have had it for a couple weeks now.

12        The only other thing I do want to mention, I forgot to

13   say this, our initial disclosures are a list of every person

14   we ever talked to in the investigation.  The defendants have

15   listed 16 executives on their initial disclosures.

16        I don't know that I would equate initial disclosures to

17   a witness list under the circumstances.  I doubt they intend

18   to call 16 executives.  They are just different, in my mind.

19        THE COURT:  So your Rule 26 disclosures, FTC I mean,

20   included everybody you spoke to whether you actually

21   considered their testimony to be favorable or neutral or

22   otherwise?

23        MR. LASKEN:  Correct.  Parenthetically, Your Honor,

24   we also sometimes take testimony from people -- we're doing an

25   investigation in this case.  We're not prosecuting a case.  We

1    sometimes clear a merger.

2         It's not as if we spent a year building a case against

3    the defendants.  We spent a year investigating a merger to

4    decide whether or not we should challenge it.

5         For example, Horizon is on our initial disclosures and,

6    as the defendants just told you, Horizon supports that.  It's

7    not as if our investigation is one-sided discovery.  Our

8    investigation is trying to understand the market and whether

9    the merger is a good thing or a bad thing.

10        THE COURT:  I'm just trying to get to the point as to

11   whether you disclosed -- you answered the question.  You

12   disclosed everybody you came across in the investigation as

13   opposed to normally Rule 26 you have to disclose what's in

14   your possession that you believe goes to help your case, not

15   necessarily anticipate what the other side is going to do.

16        So you gave full disclosure as to everybody you

17   spoke to.

18        MR. SAINT-ANTOINE:  Your Honor, I want to point one

19   thing out.  This is Paul Saint-Antoine.

20        When we're talking about the size of the preliminary

21   witness list and the final witness list, the initial

22   disclosures on the part of the Federal Trade Commission don't

23   include any of the party witnesses, so to the extent we're

24   talking about the size of our list, we're talking about a

25   reasonable number of party witnesses of which there may be

1  several and then we're adding on top of that the third

2  parties.  That's where the FTC's list on top of party

3  witnesses becomes a reference point.

4      The preliminary witness list is framed in that term

5  because it is preliminary.  We won't be calling everybody

6  that's been disclosed by the plaintiff at trial, but we won't

7  know who are the relevant and appropriate sources of

8  information until we take appropriate discovery.

9      THE COURT:  I'll tell you what, why don't we do this

10  with the witness lists.  Why don't we revisit this issue after

11  fact discovery closes on March 12th.

12      Does that make more sense as to when you're going to

13  have to disclose?  Because you're going to have your discovery

14  then and you should be in a much better position.

15      I understand both sides' concerns I think.  I

16  understand on the one hand there's the argument that the FTC

17  has been investigating this, they have a leg up.  It's not

18  like normal civil litigation.

19      I also understand there is a dispute as to the size of

20  the market and defendants understandably don't want to at this

21  stage stop any of their -- foreclose any potential arguments.

22      But also I understand what the FTC is saying, that

23  given the amount of time we're going to have for the hearing,

24  it's going to be unlikely, particularly if you call several

25  experts, that -- the defendants call several experts that

cument 57   Filed 01/07/21   Page 48 of 93 PageID: 412

48

```
 1   they're going to be able to call that many witnesses.  And
 2   they're worried about, my words, gamesmanship; that there's
 3   going to be a number of people on the witness list who they're
 4   going to prepare for who the other side really does not have
 5   the intention of calling but may call and out of abundance of
 6   caution decide to.
 7        But does it make sense to finish fact discovery and
 8   then we will set up a preliminary fact witness list and then a
 9   final witness list?
10        MR. LASKEN:  So, Your Honor, this is Jonathan Lasken
11   from the FTC.
12        THE COURT:  Yes.
13        MR. LASKEN:  I think that makes sense on the final
14   witness list.  I think the concern with the preliminary is we
15   would not know who to depose or we'd have to make a very large
16   set of depositions under those circumstances.
17        I think we need some sort of preliminary witness list,
18   but I think it definitely makes sense to defer the final one
19   until after fact discovery and we can get a better sense then
20   of the amount.
21        THE COURT:  Let me hear from the defendants on that
22   point.
23        MR. SAINT-ANTOINE:  I think this is a point where we
24   have a similar view, I think.  Certainly I understand the
25   logic of what Your Honor is proposing on the final witness
```


*United States District Court*
*Newark, New Jersey*

1  list.

2       I do think generally speaking we would be in a better

3  position to identify who we need and the number of people we

4  contemplate after the close of fact discovery, so to the

5  extent Your Honor is proposing deferring the final witness

6  list until after the fact discovery closure, that makes

7  eminent sense to us.

8        MR. KESSLER:  Your Honor, this is Mr. Kessler.

9       I would agree.  I think we're all in agreement to do

10  the final trial witness list after discovery, and no one, I

11  think, has an interest in making that list any longer than

12  will be needed.  We will have a limited amount of time at

13  trial, and I think that's very reasonable.

14       To the extent we all agree there should be some

15  limitation to guide us on how many people to depose and who to

16  depose, I would suggest that the larger number we suggested is

17  the right way to handle that.

18       It was actually suggested that there be no limits, but

19  we agree there should be some guidance and we think that the

20  number we suggested would give the parties the necessary

21  guidance.

22       Again, no one wants to take unnecessary depositions,

23  but the reality is there are a large number of insurers,

24  healthcare providers, et cetera, who we have to take in order

25  to then decide who goes on the trial witness list.  We're just

1 not going to know in advance without doing that type of

2 discovery.

3        THE COURT:  This is just for preliminary fact

4 witnesses.  That is not -- I know an expert witness can

5 conceivably also be a fact witness, but this is just for fact

6 witnesses we're talking about; right?

7        MR. SAINT-ANTOINE:  Yes, Your Honor.

8        MR. LASKEN:  That's right, Your Honor.

9        THE COURT:  Okay.  So it's 15 versus 30.  I

10 understand the FTC's concerns.  I'm going to give more,

11 though, than the FTC is requesting, not the full 30.

12        I think at this stage defendants have a right to seek

13 what they believe to be pertinent evidence.  We will certainly

14 tighten it up for trial and I'll talk to the parties.

15        At that point if the parties are convinced, you know,

16 we're calling so many experts and we're calling so many

17 experts, we can work back as to how much time they're going to

18 have, but at this stage I don't want to unnecessarily

19 hamstring the defendants.

20        I'm going to come up with a different number but I

21 want -- I know defendants are also -- I don't anticipate that

22 they're going to want to take depositions for the sake of

23 taking depositions.

24        What I will say at this point is -- it's not an even

25 number but disclosure witnesses it will be 17 each and then

1  you can also supplement it with 5 for a total of 22.  I do

2  think that it will give defendants more flexibility, but I'm

3  also cognizant that you're never going to be able to take that

4  many depositions, I don't think.  I shouldn't say "never," but

5  it will be very difficult to do this.

6       I'm asking both parties to work in good faith, but I'm

7  also trying to work in the uncertainty that the defendants

8  face at this point and to the FTC, as well.  I would believe

9  the FTC would be in a much better position right now to

10  understand exactly how they intend to prosecute this case from

11  a civil sense.  So we'll do 17 and 5 for a total of 22.

12       MR. SAINT-ANTOINE:  Your Honor, this is Paul

13  Saint-Antoine.

14       Can I raise a related issue to the preliminary witness

15  list?

16       THE COURT:  Sure.

17       MR. SAINT-ANTOINE:  We find ourselves on -- you know,

18  when we come up with a list, we're going to identify third

19  parties where we're confident, based on what we know, that

20  they're a good target of discovery, but we won't necessarily

21  know who the individual person within that corporate entity or

22  that healthcare system is the right person to testify at

23  trial.

24       Normally what would happen is we would serve a 30(b)(6)

25  deposition notice on that entity, they would tender somebody

 1    who is knowledgeable, and it would be in the course of that

 2    deposition that we would know who the appropriate hearing

 3    witness would be.  Oftentimes it's the 30(b)(6) deponent

 4    himself or herself but not always the case.

 5         What we would like the opportunity to do is -- in the

 6    first instance, whenever our preliminary witness list is due,

 7    be able to identify an entity, and then at some point after we

 8    take the 30(b)(6) deposition substitute the name of the entity

 9    with name of an actual person so the FTC would know who the

10    hearing witness would be.

11         Again, it would often be the same 30(b)(6) deponent but

12    not necessarily 100 percent of the time.

13          THE COURT:  Before I ask the FTC for their position

14    on that -- because I know they wanted natural persons.  Before

15    I do, I encourage everybody to take a look at the new

16    amendment to 30(b)(6).

17         I think it will be very helpful, particularly in this

18    case, where you have a meet-and-confer component now.  I guess

19    nationwide there were too many shenanigans being pulled with

20    30(b)(6) witnesses.

21         Take a look at that amendment that just recently came

22    into effect because it should be -- particularly if you're on

23    a tight time frame.  Not only do you have to follow it because

24    it's the rule, but it should be very helpful so that you're

25    getting the right person and asking about the right topics.

1   That's just an aside.

2        Let me hear from the FTC.  I know you wanted natural

3   persons.  Defendants say, well, we may not know who the

4   natural person is within an entity at this point.

5            MR. LASKEN:  Yes, Your Honor.  This is Jonathan

6   Lasken.

7        My experience with this is slightly different from

8   Mr. Saint-Antoine.  The process he described I think takes a

9   bit of time and, you know, in a 30(b)(6) setting we can't bind

10  the fact witness.  We then have to go back and re-depose the

11  fact witness to actually know what they're going to say or

12  we'd need more time.

13       My experience with this is they should have an idea of

14  who it is because it's the person they negotiate with.  And if

15  they're wrong, we'll work in good faith with them to get the

16  right person and the entity is going to tell them because the

17  third party doesn't want to waste their time either.

18       I guess our view or my view -- and this is my time in

19  private practice, not just my time in the Government -- is

20  that we should work in good faith to get the witnesses who

21  have the evidence, including the evidence they want to put in

22  to the Court.

23       But, you know, we don't know how to depose a 30(b)(6)

24  or a corporate representative on their witness list in a way

25  that lets us know what's going to be said at trial.

1        I guess that's a way of saying I don't think we're

2   really in that different of spots.  I just would ask that they

3   make a good-faith effort to identify the person rather than

4   just listing a corporation because that puts us in a bit of a

5   difficult spot ourselves in terms of making sure we have a

6   deposition in the time frame for the hearing.

7        MR. SAINT-ANTOINE:  There's a natural incentive if we

8   can, Your Honor, to identify a natural person because we don't

9   want to take both a 30(b)(6) and a natural person's deposition

10  separately.

11       I'm not as confident as Mr. Lasken that we are going to

12  know for the third parties who the appropriate witness would

13  be.  That's why -- we understand we want to give disclosure,

14  but we think that that disclosure should be after the

15  30(b)(6).

16       THE COURT:  Let me ask you folks something.  I know

17  what you mean when you say "natural person, 30(b)(6)" but in

18  reality a 30(b)(6) is a natural person.  The difference being

19  that, if a person is called, generally he or she can only

20  testify based on his or her personal knowledge.  A 30(b)(6) is

21  a unique creature in that those answers will bind the entity

22  itself.

23       Is that what defendants want in this case?  Do you want

24  competitors or -- whatever entity it is, do you want the

25  entity, somebody making statements on behalf of the entity?

1          MR. KESSLER:  So, Your Honor, this is Mr. Kessler.

2     I think the answer is it will depend.

3          THE COURT:  Okay.

4          MR. KESSLER:  Let me give you an example.  When we're

5     going to be deposing a competitor, for understandable reasons

6     they may not be as forthcoming to their competitor, and then

7     we get their documents and do a 30(b)(6) deposition and in the

8     course of that deposition we find identified in the documents

9     a person who has written to some degree about the competition

10    between that entity, either my client or Hackensack or both.

11         And it appears we then learn through the 30(b)(6)

12    deposition that that would be a very knowledgeable person

13    while we were not able to identify that person prior to the

14    30(b)(6) deposition and we just didn't have the way to know

15    that until the deposition itself took place.

16         In other instances it may be that we'll be relying on a

17    third party just to verify their records and their reports or

18    other things, and we may conclude that's all we need and the

19    30(b)(6) witness will be totally appropriately within that

20    institution.

21         That's all we're saying.  The FTC wants us to say we'll

22    work in good faith.  Of course we'll work in good faith.

23         We will identify if there's any additional natural

24    person as soon as it's reasonable to do so.  That's all we

25    need in terms of the order.

1           THE COURT:  I'll give the defendants the flexibility

2     on this issue.  It's implicit that you will work in good

3     faith, but I can understand why limiting it at this point

4     without knowing more -- truthfully, your last point is what I

5     anticipate being more of an issue, Mr. Kessler, than the

6     pandemic, and that is competitor, underline the word

7     "competitor," trying to get information.

8           Although, I was not a member of the antitrust bar so

9     maybe you have better relationships for these types of issues

10    that come up.  I can certainly see it being more of an issue

11    of a competitor disclosing information.

12          I'm going to give the defendants the flexibility for a

13    30(b)(6) opportunity if necessary.  Obviously, please work in

14    good faith.

15          MR. LASKEN:  Your Honor --

16          THE COURT:  Go ahead, Mr. Lasken.  Also, when you

17    answer this question, Mr. Lasken, please let me know what's

18    your proposal for disclosing the preliminary fact witness

19    list.

20          MR. LASKEN:  I'm sorry, Your Honor.  I didn't follow

21    the second part.  You mean the date to disclose it or how we

22    disclose it?

23          THE COURT:  The date to disclose it.

24          MR. LASKEN:  Okay.  So the one thing I was going to

25    say, Your Honor, is we would just ask if they are going to

1  split entities that we have an opportunity to depose whoever

2  the witness is, no matter when they disclose the actual

3  witness.  That would be our only concern.  That's the only

4  thing we would ask.

5       Obviously, if it isn't working out that way, I would

6  ask that the Court allow us to come back to the Court to ask

7  for extra depositions or whatever is necessary to give us an

8  opportunity with the actual witness.

9           THE COURT:  That's fair enough, yes.  I have a

10  feeling the other side is going to want to depose them,

11  as well.  This goes without saying.

12       Except for changing dates that we're going to set

13  forth, to the extent the parties reach an agreement as to what

14  they're exchanging and whether they want to do an additional

15  deposition, if you reach an agreement, I'm fine.

16       If you need to change dates, you need to contact me and

17  I'll hear you and I'll listen to you with an ear towards

18  what's the reason for it.  If both sides are in agreement --

19  if you do a 30(b)(6) and both sides agree we need to depose

20  this person, if you agree, you don't have to come back to

21  court for that.

22           MR. LASKEN:  So, Your Honor, thank you for that.  I

23  think that our suggestion would be on the dates -- we're ready

24  to go.  From our perspective, the sooner the better.  If we're

25  going to especially permit non-natural person, we would

```
1   suggest something like January 8th for the first list of
2   17 and then January 22 for the additional 5.
3       That way everyone can get discovery going out to these
4   folks because we'll know where we are rather than sending
5   discovery broader than that.  That would be our suggestion.
6       THE COURT:  Do defendants have any objection to those
7   dates; January 8 for the initial 17 and then January 22nd for
8   the additional 5 if necessary?
9       MR. KESSLER:  Your Honor, this is Mr. Kessler.
10      I think the first designation date is fine.  I think we
11  want to leave a little bit more flexibility for the additional
12  five because that we may actually learn of through our
13  contacts with the third parties themselves.
14      I would suggest that we move back the date for the
15  five, you know, another week on that.
16      THE COURT:  To January 29th?
17      MR. KESSLER:  If that's acceptable to my
18  co-defendant.
19      THE COURT:  Let me hear first from Mr. Saint-Antoine,
20  and then I'll go back to Mr. Lasken.
21      MR. SAINT-ANTOINE:  Yes, Your Honor, again, with the
22  same sort of general sense as Mr. Kessler.  Although I think
23  for the initial date of January 8th I would ask for just a few
24  more days.
25      Early next week I think would be very doable for the
```

1    initial date.  So maybe instead of -- the 8th is Friday, maybe

2    the 12th.

3          THE COURT:  Let me ask the FTC.  If we did initial

4    disclosures, would that be acceptable, January 12th?  I know

5    you're ready to go and could probably do them today, but

6    January 12th and then January 29th for the additional five?

7          MR. LASKEN:  Sure, Your Honor.  This is John Lasken

8    for the FTC.  Yes, Your Honor, that's fine with us.

9          THE COURT:  Okay.  The next issue, going through the

10   list, is deposition times.  So the deposition -- I'm not so

11   sure that these numbers are different but let me check.

12         Plaintiff's position, 5 depositions per side in

13   addition to persons who appear on the witness list or are

14   declarants or affiants; defendants' position, any 30 persons

15   who appear plus 5 additional.

16         We have a number of 22 that are going to be disclosed

17   potentially, 17 I would assume for sure, at least from the

18   defendants.  This is my biggest concern, is just giving you

19   sufficient time to get your depositions done.

20         Let me hear from the FTC first in light of the changes

21   that I've made.

22         What's your view as to the number of depositions?

23         MR. LASKEN:  So, Your Honor, our view is that the way

24   to do the number is to basically depose everyone who is listed

25   as a potential witness, you know, plus the 5, plus anyone who

1    has submitted a declaration or affidavit.

2         I guess that would make it -- these categories overlap,

3    right? so I don't want to say 22 plus declarants because most

4    declarants will be on someone's witness list, right?  Probably

5    22 plus 5 and then there will be overlap on the witness list

6    as well, I expect.

7         We end up putting on our case through hostile witnesses

8    and third parties, so it will be something even less than

9    that.  Our main concern and we think the most efficient way to

10   do it and the way we have been doing it recently in cases,

11   actually including in *Jefferson*, as appears in the *Jefferson*

12   CMSO, is we're going to depose the people who might testify,

13   and that's basically the way we propose the limit.

14        So I guess that's a long way of saying I could make up

15   a number but most of the people --

16        THE COURT:  No, no.  I understand there may be

17   overlap, but you're saying 22, that would be the people on the

18   preliminary witness list and also declarants or affiants.  Or

19   do you also want to work in an additional 5 from that number?

20        MR. LASKEN:  We'd like to have the additional 5.

21   Often those become 30(b)(6)'s or other things so we usually do

22   the extra 5 just in case because there could be witnesses who

23   come up, you know.  This is a flexibility provision.  This is

24   what we would tend to go with.

25        THE COURT:  That's fine.  I think that given -- that

1   seems to work with defendants' view.

2        I know you wanted 30 originally on the preliminary fact

3   witness, but given that we're doing 22, are defendants in

4   agreement persons on the preliminary witness list, declarants,

5   affiants, and an additional 5?

6        MR. SAINT-ANTOINE:  This is Paul Saint-Antoine,

7   Your Honor.

8        Yes, with just one proviso, which is I would say less

9   of a concern with the smaller preliminary witness list.  We

10  had proposed exactly what Your Honor described, but then as

11  sort of a safety net a cap on the number of depositions which

12  was equal to the total number on the preliminary witness list.

13       So in that case it would be 22, just to avoid the

14  prospect that one side or the other would notice both the

15  parties on their own witness list plus the parties on the

16  other sides' witness list which would, in our view, amount to

17  an inordinate number of depositions.  And we did have that

18  experience in a prior case.

19       It's less of a concern with a smaller preliminary

20  witness list, but that was the source of the proposal.

21       THE COURT:  All right.  Let me ask Mr. Kessler first.

22  I understand your concern.  I'll get back to the FTC on that.

23       Mr. Kessler, are you in agreement with that view?

24       MR. KESSLER:  Yes.  I think that both parties would

25  be held by some limitation so that, you know, 22 doesn't

```
 1    become 44, which is really not practical in terms of the time
 2    that we have in any event.
 3           THE COURT:  So, Mr. Lasken, are you -- so the
 4    question would be 5 plus persons on the witness list but
 5    limited to 22 and then declarants or affiants.
 6           It just makes clear that when you look at folks who are
 7    solely on the preliminary fact witness list you've got 22 that
 8    you can take.  I assume you'll primarily be taking the other
 9    sides' 22, but do you have any issue with that?
10           MR. LASKEN:  Yes, Your Honor, this is John Lasken.
11           That's kind of the problem, right?  They have clients
12    so they don't need to depose their own executives, but our
13    witness list might include their executives who they haven't
14    listed on their witness list who have to go on as hostile
15    witnesses because of documents they have offered or whatever.
16           The third parties, again, they are not our clients.
17    While I expect that they will notice everyone on our witness
18    list other than their own executives, I don't know that, so
19    that puts me in a position of -- you know, that, to me, is
20    unfair because we then are basically bound to only depose the
21    people on their list.
22           When, as a practical matter, because of our
23    positioning, you know, some of the people on our list may be
24    their own executives, and I think we should be able to have
25    depositions of those people.
```

```
 1          THE COURT:  So you're suggesting more of 5 plus

 2  witness list, declarants, affiants, and representatives of the

 3  defendants?  You'd want to have that included?

 4          MR. LASKEN:  So I think we're just basically saying

 5  anyone on a witness list should be deposed, is sort of what

 6  we're saying there.  The cap -- I guess that would mean a cap

 7  of 44, Your Honor, but it's not really going to be 44.

 8          You know, the third parties, again, they're not our

 9  witnesses.  Some of them -- I think we referenced one in our

10  letter who submitted a declaration for us and a letter of

11  support for the client.  That person may be on the witness

12  list, but we would need a deposition of them because we

13  can't -- we don't have access to them in that way.

14          There's no one on my witness list that I can look at

15  and say I don't need testimony from them because they're my

16  client.  And I would say, you know, we do try to work around

17  this with the defendants by including provisions that would

18  say where we have testimony from people we're going to treat

19  that as equivalent to a deposition, whether it's a declaration

20  or an investigational hearing, which is the depositions

21  essentially that are taken during the investigative process.

22          The defendants refused those provisions saying they're

23  going to object to all of that later on admissibility and

24  weight.  And so I now need that testimony in the case.

25          For me, that's the problem that I face and --
```

 1          MR. SAINT-ANTOINE:  This is Paul Saint-Antoine.  Can

 2    I make a suggestion?

 3          What I'm hearing in part is Mr. Lasken just expressing

 4    concern about sort of a scenario where he doesn't think he has

 5    an opportunity to take enough depositions, and we're

 6    expressing a concern about the prospect that we may face too

 7    many.  It seems like both sides in some sense are anticipating

 8    a problem that might not arise.

 9          I think what I would propose is maybe this is one issue

10    where we might be better off if we just reserve an opportunity

11    to come back to Your Honor if it in fact becomes a problem.

12          THE COURT:  Yes.  I'm not going to do it on the

13    witness list.  I understand this is where the FTC is at a

14    disadvantage.  They have the advantage of the investigation

15    but they have the disadvantage that they're an agency and, as

16    he said, none of the witnesses except for the expert witnesses

17    really, they're all for third parties.

18          Okay.  I'm going to leave it as is, understanding the

19    parties' concerns.  If it becomes an issue, just give me a

20    call and we'll discuss it.  Okay?

21          MR. LASKEN:  Yes, Your Honor.  Thank you.

22          MR. SAINT-ANTOINE:  Thank you, Your Honor.

23          THE COURT:  Now, the deposition time split.  The only

24    real difference here that I saw was that defendants wanted to

25    have more time in the deposition with parties who gave

1    affidavits of support for the FTC.

2         Let me ask the FTC.  That kind of makes sense.  First

3    of all, an even split of time but if a third party provided a

4    declaration or letter in support, in favor of the merger or

5    against the merger, it can go both ways, from my

6    understanding, as to what the evidence is.

7         Then, if it's against the plaintiff's position, then

8    the plaintiff will have more time during the deposition.  If

9    it's against the defendants' position, then the defendants

10   will have more time in the deposition.

11        MR. LASKEN:  So, Your Honor, this is Jonathan Lasken

12   for the FTC.

13        The thing I would say is it's not so much an affidavit

14   of support.  Some of them express views on the merger.  As we

15   referenced in one case, we received testimony from someone who

16   gave defendants a letter of support.

17        A letter of support for defendants is an unsworn letter

18   basically saying they like the merger.  An affidavit for us is

19   kind of a set of market facts that a defendant has put down on

20   our paper for our review.  When I say "our review," I mean our

21   review in deciding whether or not to challenge the

22   transaction.

23        I think that's the challenge.  How would you understand

24   whether or not these people are supporting us, right? quote,

25   unquote, supporting us?  That brings us to them being third

1   parties and the fact that we're going to be told we can't use

2   this evidence or it should be given little weight.  When I say

3   "we," they're going to tell you that, and I wouldn't presume

4   on how you're going to rule.

5          So that kind of comes back to if I can't use what

6   I've got, how does that help me when I get to the actual

7   deposition, right?  I need it all again essentially, which is

8   not highly efficient.

9          I'm not going to presume nor am I asking Your Honor to

10  decide today, you know, that type of a question.  That's the

11  challenge from our perspective and why we think it should be

12  an even split.

13            MR. KESSLER:  Your Honor, this is Mr. Kessler.

14         I think the answer to this is -- and this is what

15  marries the concerns -- is that if you have a declaration from

16  a witness or you have a transcript, you can present that as an

17  exhibit to the witness at the deposition fairly effectively

18  and get the witness to affirm that what was in their

19  declaration was truthful and accurate.

20         If that's adopted at the deposition well within

21  two hours but then give the other side the opportunity --

22  because it takes much longer, as Your Honor knows, when you're

23  in opposition to question the witness about what's in that

24  declaration or in that prior testimony.

25         The reason we have objected on admissibility grounds is

1   because the declarations and depositions so far have been

2   one-sided by the FTC.

3        In other words, they prepared their declarations, they

4   took their examinations, but we haven't had a chance to

5   develop the other side.

6        Similarly, if we have declarations, which they have,

7   from others, we only need a short amount of time to get the

8   witness to confirm what they put in the declarations and, you

9   know, any other cleanup beyond that, and then they could have

10  the five hours to cross-examine.

11       I just think it really is the most sensible use of the

12  time, and both sides should be able to deal with it very well.

13       THE COURT:  Mr. Lasken, I understand what you're

14  saying, that they're not our witnesses.  But at the end of the

15  day, if somebody gave you an affidavit or a declaration or a

16  certification, I would assume generally it's going to fall

17  into one of two -- well, maybe one of three categories;

18  helpful, not helpful, or neutral.

19       But if the information contained within it is

20  consistent with the FTC's theory of the case, doesn't it make

21  sense, then, to give defendants more of an opportunity to

22  explore during deposition?

23       Conversely, if the defendants have whatever it may be,

24  a letter or so forth in support, it would make sense to give

25  you, meaning the FTC, a longer opportunity to explore the

1   bases for that view.

2           MR. LASKEN:  So, Your Honor, I have two reactions to

3   that.  To give you another example, we have testimony from

4   Horizon, which you heard the defendants earlier say are

5   supporting them.

6           Again, it's the challenge of how do you apply that

7   to the actual bucket of people that we have, right?  So let me

8   say that, first off.

9           Second of all, if they really are supportive and they

10  adopt it, I think both sides have proposed unused time

11  reverting, and as a practical matter we're going to end up in

12  the same place because we're just going to allow the time to

13  revert.

14          I think it's a -- I guess my feeling is that this kind

15  of will work itself out on an even foot, but it will become

16  very complicated and contentious if we sort of try to classify

17  the witnesses.  I don't know if that makes any sense.

18          THE COURT:  It does.  I understand.

19          MR. SAINT-ANTOINE:  Your Honor, this is Paul

20  Saint-Antoine.

21          Mr. Lasken referenced, you know, the investigative

22  hearings.  I think it's really the declarants where we have,

23  we think, more of a compelling need for a disproportionate

24  amount of time.  And to Mr. Kessler's point, use that

25  declaration at the deposition in a fairly efficient way to

1    introduce the declarant's testimony.

2         He referenced the investigative hearings, but I really

3    think it's the declarants where it's the primary source of our

4    concern.

5         THE COURT:  Just so I'm understanding that correctly,

6    before I get to you, Mr. Kessler.

7         You said there were 10 hearings, 4 of those were from

8    third parties.  You're not talking about those.  You said in

9    addition there were 7 declarations?

10        Those are the declarants you're talking about?

11        MR. SAINT-ANTOINE:  Yes.

12        THE COURT:  You view all of them -- all 7 as being

13   contrary to your position?

14        MR. SAINT-ANTOINE:  I think that's right, Your Honor.

15   I think it's no coincidence.  Mr. Lasken said they have spoken

16   to over 30 entities and they have tendered a much smaller

17   group, 7, as declarants.

18        I think it's because they believe that that subset of

19   the 30 plus are the ones they think support their view.

20   That's what we want to explore.

21        MR. LASKEN:  Your Honor, can I respond to that

22   quickly?

23        THE COURT:  Sure.

24        MR. LASKEN:  That is absolutely not how we decide who

25   to get declarations from.  You should not interpret that

1    number that way.  It's people who have information that is

2    relevant to the assessment when we talk to them.

3         I would ask that you not adopt Mr. Saint-Antoine's

4    meaning of that number, and I would just flag, as we noted in

5    our letter, there is a declarant who actually wrote a letter

6    of support for the defendant.

7         I think, again, we're in this world, but maybe there is

8    some subset where we could agree with the defendants that

9    these are -- they could have some extra time or something like

10   that.

11        Again, I think this will work itself out when we get

12   to the depositions because of the practical matter of what

13   they're suggesting is going to happen.  We are simply going

14   to -- they're going to have more than 5 hours because the time

15   will revert.

16        MR. KESSLER:  Your Honor, this is Mr. Kessler.

17        While I would hope it would work itself out, the

18   problem is we're only likely to get one shot with these third

19   parties for one seven-hour period of time, and if it doesn't

20   work itself out, it's going to be very difficult to try to get

21   Your Honor or some magistrate on the phone to try to work it

22   out on the spot, so at least defendants would prefer that we

23   had some certainty, you know, about this before the

24   depositions.

25        THE COURT:  Okay.  You know what, I, believe it or

1  not, am convinced this will work itself out.  I am going to

2  give you each three and a half per deposition.  You don't have

3  to interrupt me during the deposition but if afterwards -- but

4  you could.  If you think that you need additional time and you

5  have a reason, I'll give it to you.  Okay?

6          MR. SAINT-ANTOINE:  Thank you, Your Honor.

7          THE COURT:  But I understand that in reality it's

8  really not going to serve somebody's purpose that if they have

9  what I consider to be a favorable witness, not because of bias

10 but because of the actual testimony, it generally doesn't

11 serve that party to go into great detail during the

12 deposition.  We'll do it three and a half.  I'm aware of the

13 issue.

14      Are there any other issues that we have not discussed?

15         MR. LASKEN:  Your Honor, I think there are some --

16         THE COURT:  I'm going to set aside 6 days with

17 18 hours each for each side instead of 15, just to give you

18 the extra time.

19         MR. LASKEN:  Your Honor, there are a couple other

20 issues in the CMSO.  There's paragraph 7 and paragraph 8,

21 which are provisions we suggested just because we find them

22 efficient, but I don't know that we would stand on those so I

23 think we could probably pull those out to just move us

24 forward.

25      The only one that would, I guess, maybe merit a brief

1    discussion is paragraph 25.  And I'll defer to my colleagues

2    on whether they want to talk about this more or not, which is

3    the privilege log issue.

4        In the investigation there is an instruction that

5    allows them to submit a partial log on a promise that if we

6    seek the full log in litigation they will provide it.  The

7    defendants have proposed an additional clause that would, I

8    guess, let them out of part of that promise for the purpose of

9    reaching a compromise on what privilege logs actually will be

10   produced here.

11       We -- for institutional reasons because people do take

12   advantage of that provision, we're not inclined to make a

13   compromise as to that promise because of our investigative

14   process.

15       Again, I defer to my colleagues on whether that's

16   something that we should continue discussing or whether that's

17   just a disagreement that may lead to no privilege log

18   agreement.

19           THE COURT:  All right.  Let me hear from the --

20           MR. SAINT-ANTOINE:  Your Honor, this is Paul

21   Saint-Antoine.  Let me just say this is the issue of the

22   privilege log.  What we proposed is that we would -- for all

23   of the individuals from Hackensack that had been identified on

24   our initial disclosures, and that comes to 10 persons, we

25   would provide a log of any privileged communications with

1  those individuals.

2      An unlimited privileged log becomes more of a concern

3  with the more compressed time for discovery.  We think it

4  would be very prejudicial to our ability to foresee if we were

5  devoting substantial time on a privilege log with respect to

6  individuals that really have nothing to do with the merits of

7  this case.

8      The number of individuals -- and one of my colleagues

9  can give you the exact number -- is far greater than 10 and

10  includes people that have nothing to do with the relevant

11  issues or testimony.  It would be a huge distraction to our

12  ability to get ready for the hearing.  That's why we proposed

13  this additional aspect to paragraph 25.

14      THE COURT:  Let me just ask, though.  The

15  privilege log was required based on the second request, so the

16  privilege log has not been completed yet?  It says the

17  request --

18      MR. LASKEN:  Essentially, Your Honor, yes.  So

19  there's a -- this is Jonathan Lasken.  I didn't mean to cut

20  you off.

21      THE COURT:  It's okay.  I just want to understand the

22  issue.

23      MR. LASKEN:  So, during the investigation, they would

24  have been required to produce a full log related to the

25  investigation.  We offer defendants -- again, we clear many

1    mergers.  Sometimes we challenge mergers and the parties do

2    not litigate.

3         We offer them the ability to submit less than a full

4    log on a promise that if we do actually have to litigate

5    against them we will receive the logs that we should have

6    received in the investigation.

7         The second request is the equivalent of the main

8    discovery request to the defendants in the investigation, and

9    so we don't have the full log in response to that.

10        MR. SAINT-ANTOINE:  They do have a log and I'm --

11   some of my colleagues are more in touch with the specifics,

12   Your Honor, but they do have a log.

13        The question is, in this context do they meet and

14   confer with us on a reasonable limitation on any logging

15   responsibilities, which is what happened in the earlier case

16   we talked about, the *Jefferson* case.  They did agree to a

17   limitation.

18        From our perspective, that becomes even more important

19   in this case where there's even less time to complete fact

20   discovery and we would be devoting resources to logging

21   individuals that are not going to be witnesses in the case.

22        THE COURT:  Does it make sense to -- let me just ask

23   the FTC.  I understand the FTC's concern.  They don't want to

24   get burned, which is understandable.

25        Does it make sense in the first instance to provide

1  names of the people who would otherwise be on the

2  privilege log other than 10 and then the FTC can look at it?

3  If there's an issue where the FTC believes they do want a

4  privilege log as to a particular person or persons, I'll hear

5  from you.

6          MR. LASKEN:  Your Honor, from our perspective, that

7  would be fine.  We have the institutional issue of releasing

8  people, but in the spirit of compromise I think we would work

9  with that.

10          THE COURT:  Does that work for the defendants?

11  You're not going to have to do a privilege log -- you'll have

12  to do a privilege log as to those persons identified, but you

13  don't have to do a privilege log for additional persons but

14  you have to tell the FTC who those persons are and what

15  position they hold within the organization.

16          MR. SAINT-ANTOINE:  I think that would work,

17  Your Honor.  I'll invite Mr. Vorrasi to comment.  He's closer

18  to the privilege log issue than I am.

19          THE COURT:  Mr. Vorrasi.

20          MR. VORRASI:  Good afternoon, Your Honor, this is Ken

21  Vorrasi.

22          Yes, that is workable for Defendant Hackensack, as

23  well.

24          THE COURT:  My compliments, Mr. Vorrasi.  The

25  privilege log is a thankless job but it's an important job.

1          We'll get the names and positions.  The FTC can take a

2     look at them.  If there's any issues, first please try to work

3     them out amongst yourselves.  If not, submit me a letter.

4     Okay?

5               MR. SAINT-ANTOINE:  Thank you, Your Honor.

6               MR. LASKEN:  Thank you, Your Honor.

7          Your Honor, this is the FTC.  I did have some non- --

8     very briefly, because I know we've kept you for quite a

9     while -- some non-CMSO issues I wanted to raise.

10              THE COURT:  Before we do that, I'm going to need

11    a Word copy of your proposed case management so I can

12    reconfigure it.

13         If the FTC -- it depends how quickly you want it

14    entered.  If the FTC has the information I put in, you're free

15    to do a revision, show defendants, and then send it to me and

16    I can sign it, if you think that will be quicker.  If not,

17    I'll just need a Word copy so we can make the changes.

18              MR. LASKEN:  Your Honor, we're happy to do that.  My

19    team will jump up and tell me if they disagree.

20              THE COURT:  We're not going to make Mr. Vorrasi do

21    that.  That would be too much.

22         Go ahead.  I'm sorry, Mr. Lasken.  You have other

23    issues.

24              MR. LASKEN:  Related to that, Your Honor, there's a

25    joint motion to open discovery in this case in front of the

```
 1  Court.  We were hoping that, given what we're all talking
 2  about, we could go ahead and start serving discovery requests
 3  after this call.
 4          THE COURT:  Yes.  You don't have to wait for me to
 5  enter the order for that.  You can start serving your written
 6  discovery requests.
 7          MR. LASKEN:  Then the second issue is, when we had
 8  filed the complaint, the Court ordered the clerk to unseal the
 9  complaint if no motion for protective order was filed within
10  10 days.  We wanted to flag that no motion has been filed.
11  We're able to file an unredacted version or just raise
12  generally that that's the status of that.
13          THE COURT:  So no motion -- Defendants, I assume
14  there was no motion because you don't oppose it being
15  unsealed.
16          MR. SAINT-ANTOINE:  That's right, Your Honor.  This
17  is Paul Saint-Antoine.
18          MR. KESSLER:  That is right for us, as well,
19  Your Honor.  Jeffrey Kessler speaking.
20          THE COURT:  So the complaint will be unsealed, the
21  full complaint.  Okay.
22          Anything else, Mr. Lasken?
23          MR. LASKEN:  So there's one really small point,
24  Your Honor.  We just do want to respond to Footnote 4 of the
25  defendants' letter saying the New Jersey Attorney General
```

1  supports the case.

2        The recommendation there is from something called a

3  Community Healthcare Protection Act which is to make sure the

4  assets are preserved.  It's not an antitrust review, and the

5  order itself withholds for information learned from other

6  cases like this one.

7        It's not a scheduling issue but since it appeared in

8  the scheduling letter, I did want to just, before we go too

9  far down the line, make clear what's going on with that.

10        THE COURT:  That's okay.  I'd only caution defendants

11  that Mr. Grewal is not an acting AG.  He's been AG almost

12  since the inception of this administration.  But I'm not

13  going to tell if you don't.  I didn't read that as a decision

14  on the merits relative to this case for the FTC.

15        MR. LASKEN:  Okay.  Thank you, Your Honor.  Nothing

16  further from us.  Thank you for the time today.

17        THE COURT:  My pleasure.

18        Anything else?  Let me start with Mr. Saint-Antoine.

19  Anything else?

20        MR. SAINT-ANTOINE:  I don't believe so, Your Honor,

21  on behalf of Hackensack.

22        THE COURT:  Mr. Kessler?

23        MR. KESSLER:  Nothing for us, Your Honor.  Thank you

24  so much for your time and helping us to work through these

25  issues.

1         THE COURT:  My pleasure.

2      Mr. Genova, welcome to the case.  Mr. Genova, that

3  means Mr. Porrino is no longer in the case; correct?

4         MR. GENOVA:  Mr. Porrino is no longer in the case.

5  He was so offended by the reference to acting that he just

6  didn't want to have anything do with anything.

7         THE COURT:  He was not acting, either.  Okay.

8      All right, folks, you can start serving your written

9  discovery now.  I will look for the revised scheduling case

10  management order.  I will enter it.  If there's any issues,

11  just let me know.  Okay?

12         MR. LASKEN:  Thank you, Your Honor.

13         MR. SAINT-ANTOINE:  Thank you.

14         MR. KESSLER:  Thank you.

15        (Which were all the proceedings had in

16          the foregoing matter on said day.)

17                    *        *        *

18

19

20

21

22

23

24

25

1          FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE

2

3     I, **Lisa A. Larsen, RPR, RMR, CRR, FCRR,** Official Court

4   Reporter of the United States District Court for the District

5   of New Jersey, do hereby certify that the foregoing

6   proceedings are a true and accurate transcript of the

7   testimony as taken stenographically by and before me at the

8   time, place, and on the date hereinbefore set forth.

9     I further certify that I am neither related to any of the

10  parties by blood or marriage, nor do I have any interest in

11  the outcome of the above matter.

12

13

14

15          */S/Lisa A. Larsen, RPR, RMR, CRR, FCRR*

16          Official U.S. District Court Reporter ~

17

18          DATED this January 6, 2021

19

20

21

22

23

24

25

## /

**/S/Lisa** [2] - 1:23, 80:15

## 0

**07102** [2] - 1:11, 2:12
**07932** [1] - 2:3

## 1

**10** [10] - 33:21, 34:24, 35:6, 36:14, 37:14, 69:6, 72:24, 73:8, 75:1, 77:9
**100** [1] - 52:12
**10166** [1] - 2:15
**10th** [7] - 21:16, 21:22, 21:23, 22:19, 22:25, 23:4, 23:24
**1100** [1] - 2:6
**12th** [10] - 25:7, 27:3, 29:19, 30:12, 31:24, 33:16, 47:11, 59:1, 59:3, 59:5
**13** [1] - 37:16
**14** [4] - 31:4, 31:6, 31:7, 36:6
**14th** [1] - 30:18
**15** [9] - 35:1, 35:4, 35:23, 36:1, 36:14, 43:4, 50:9, 71:16
**1500** [1] - 2:6
**15th** [4] - 6:3, 9:12, 10:2, 11:13
**16** [2] - 45:15, 45:18
**1600s** [1] - 41:14
**16th** [2] - 31:13, 45:8
**17** [7] - 31:6, 32:25, 50:25, 51:11, 58:1, 58:6, 59:16
**18** [1] - 71:16
**19th** [6] - 27:4, 29:20, 30:14, 31:22, 32:7, 33:14
**1st** [1] - 21:21

## 2

**2** [1] - 43:4
**20** [3] - 35:7, 40:14, 41:3
**20-18140** [1] - 3:8
**200** [1] - 2:15
**20005** [1] - 2:7
**202)326-2604** [1] - 1:21
**202)842-8800** [1] - 2:8
**2021** [4] - 1:11, 3:3,

6:3, 80:18
**20580** [1] - 1:20
**210-hour** [1] - 8:19
**21st** [7] - 9:11, 9:14, 10:3, 10:4, 10:19, 13:8, 14:15
**22** [13] - 51:1, 51:11, 58:1, 59:15, 60:2, 60:4, 60:16, 61:2, 61:12, 61:24, 62:4, 62:6, 62:8
**22nd** [2] - 21:20, 58:6
**24th** [2] - 30:13, 31:22
**25** [3] - 35:2, 71:25, 73:12
**26** [2] - 45:19, 46:13
**28th** [2] - 33:1, 33:17
**29th** [4] - 21:20, 33:17, 58:15, 59:5
**2:20-cv-18140-JMV** [1] - 1:5
**2nd** [2] - 31:12, 32:3

## 3

**3** [5] - 9:5, 9:8, 10:11, 11:20, 43:4
**3/19** [1] - 31:10
**3/22** [1] - 33:15
**30** [11] - 19:18, 35:4, 36:10, 42:3, 43:12, 50:9, 50:11, 59:13, 61:1, 69:15, 69:18
**30(b)(6** [17] - 51:24, 52:3, 52:8, 52:11, 52:19, 53:8, 53:22, 54:8, 54:16, 54:17, 54:19, 55:6, 55:10, 55:13, 55:18, 56:12, 57:18
**30(b)(6)** [2] - 52:16, 54:14
**30(b)(6)s** [1] - 60:20
**30-person** [1] - 42:22
**31st** [1] - 4:20
**32** [1] - 37:18
**337** [1] - 26:2

## 4

**4** [6] - 1:11, 3:3, 37:14, 43:1, 69:6, 77:23
**44** [3] - 61:25, 63:5
**45** [1] - 4:15
**454** [1] - 25:25
**46** [1] - 37:19
**494** [1] - 2:11

## 5

**5** [21] - 35:1, 35:3, 41:2, 43:1, 51:1, 51:11, 58:1, 58:7, 58:13, 59:11, 59:14, 59:24, 60:4, 60:18, 60:19, 60:21, 61:4, 62:3, 62:24, 70:13, 80:18
**5/10** [1] - 24:4
**50** [1] - 30:7
**533-0777** [1] - 2:13
**5th** [8] - 21:19, 21:23, 24:10, 24:13, 25:2, 25:12, 32:5, 32:6

## 6

**6** [1] - 71:15
**600** [2] - 1:19, 2:3
**630)338-5069** [1] - 1:24
**6th** [1] - 9:25

## 7

**7** [5] - 37:15, 69:8, 69:11, 69:16, 71:19
**732)778-8578** [1] - 2:16
**7th** [1] - 30:16

## 8

**8** [3] - 36:13, 58:6, 71:19
**8th** [3] - 57:25, 58:22, 58:25

## 9

**973** [1] - 2:13
**973)549-7000** [1] - 2:4
**9th** [4] - 31:24, 31:25, 32:12, 33:15

## A

**abandoned** [1] - 13:19
**abbreviated** [1] - 7:12
**ability** [5] - 11:21, 43:7, 73:3, 73:11, 74:2
**able** [16] - 7:11, 9:12, 18:2, 21:10, 26:3, 29:20, 32:23, 41:20, 42:3, 48:1, 51:3, 52:7, 55:12, 62:22, 67:11, 77:10

**absolutely** [3] - 23:13, 39:25, 69:23
**abundance** [1] - 48:5
**acceptable** [5] - 25:3, 30:20, 31:15, 58:16, 59:3
**accepting** [1] - 18:13
**access** [2] - 44:16, 63:11
**accommodate** [2] - 12:23, 13:13
**accomplish** [1] - 29:13
**account** [1] - 30:10
**accurate** [2] - 66:18, 80:6
**Act** [1] - 78:2
**acting** [3] - 78:10, 79:4, 79:6
**action** [1] - 7:8
**ACTION** [1] - 1:4
**actual** [8] - 9:6, 34:4, 52:9, 57:1, 57:7, 66:5, 68:6, 71:9
**add** [4] - 18:11, 38:22, 40:12, 42:8
**adding** [2] - 35:1, 47:1
**addition** [3] - 36:8, 59:12, 69:8
**additional** [20] - 18:14, 25:9, 26:12, 32:2, 32:20, 42:9, 55:22, 57:13, 58:1, 58:7, 58:10, 59:5, 59:14, 60:18, 60:19, 61:4, 71:3, 72:6, 73:12, 75:12
**address** [6] - 4:22, 13:3, 15:24, 21:13, 22:23, 24:22, 35:8, 41:12
**addressed** [2] - 4:19, 40:21
**adds** [1] - 38:10
**adequate** [1] - 30:5
**adjust** [1] - 22:4
**administration** [2] - 18:25, 78:11
**administrative** [8] - 7:8, 13:9, 13:11, 13:20, 13:24, 13:25, 14:4, 14:18
**admissibility** [2] - 63:22, 66:24
**adopt** [2] - 68:9, 70:2
**adopted** [1] - 66:19
**advance** [4] - 25:6, 32:22, 33:21, 50:1
**advancing** [1] - 29:8
**Advantage** [1] - 40:6

**advantage** [4] - 11:25, 38:24, 64:13, 72:11
**advocate** [1] - 32:12
**advocates** [1] - 26:1
**Aetna** [1] - 39:16
**affiants** [5] - 59:13, 60:17, 61:4, 62:4, 62:25
**affidavit** [4] - 59:25, 65:12, 65:17, 67:14
**affidavits** [1] - 64:25
**affirm** [1] - 66:17
**afternoon** [7] - 3:4, 3:14, 3:16, 3:20, 3:23, 4:6, 75:19
**afterwards** [2] - 9:7, 71:2
**AG** [1] - 78:10
**agency** [1] - 64:14
**agenova@**
  **genovaburns.com**
  [1] - 2:12
**agree** [19] - 8:5, 10:14, 17:20, 18:6, 18:7, 20:4, 20:23, 20:24, 22:5, 42:15, 42:21, 42:22, 49:9, 49:14, 49:19, 57:18, 57:19, 70:7, 74:15
**agreed** [3] - 10:13, 26:11, 36:8
**agreement** [8] - 5:17, 49:9, 57:12, 57:14, 57:17, 61:3, 61:22, 72:17
**agrees** [2] - 13:7, 14:10
**ahead** [7] - 7:8, 17:9, 20:16, 32:9, 56:15, 76:21, 77:1
**aligned** [1] - 12:16
**ALJ** [10] - 6:2, 7:22, 8:7, 8:9, 8:10, 8:12, 8:19, 8:23, 10:6, 11:23
**ALL** [1] - 1:15
**allegations** [1] - 40:6
**allow** [2] - 57:5, 68:11
**allows** [1] - 72:4
**almost** [1] - 78:10
**alone** [1] - 41:7
**Amato** [2] - 2:23, 4:4
**amendment** [2] - 52:16, 52:20
**amicably** [1] - 18:16
**amount** [13] - 4:12, 6:9, 8:10, 10:10, 12:10, 20:10, 31:3, 47:23, 48:20, 49:12, 61:15, 67:6, 68:22

**analogy** [1] - 35:14
**analyses** [1] - 32:16
**ancillary** [1] - 6:16
**ANGELO** [1] - 2:11
**Angelo** [1] - 3:24
**answer** [7] - 6:13,
8:16, 16:25, 23:13,
55:1, 56:16, 66:13
**answered** [1] - 46:11
**answers** [1] - 54:20
**anti** [1] - 28:8
**anti-competitive** [1] -
28:8
**anticipate** [9] - 12:17,
12:23, 16:6, 18:11,
18:14, 36:12, 46:15,
50:21, 56:4
**anticipating** [5] -
19:24, 27:6, 27:8,
28:3, 64:6
**antitrust** [2] - 56:7,
78:3
**Antoine** [24] - 3:17,
5:8, 9:19, 14:5,
15:11, 18:10, 23:6,
24:18, 28:5, 29:10,
31:15, 34:12, 37:8,
44:7, 46:19, 51:13,
53:7, 58:18, 61:5,
63:25, 68:19, 72:20,
77:16, 78:17
**ANTOINE** [47] - 2:2,
3:16, 3:21, 5:7, 5:24,
9:18, 10:9, 11:3,
11:14, 12:12, 15:10,
18:9, 23:6, 23:21,
24:19, 28:4, 29:9,
31:16, 31:23, 32:5,
34:11, 37:9, 39:11,
40:4, 44:6, 44:10,
46:18, 48:23, 50:7,
51:12, 51:17, 54:6,
58:20, 61:5, 63:25,
64:21, 68:18, 69:10,
69:13, 71:5, 72:19,
74:9, 75:15, 76:4,
77:15, 78:19, 79:12
**Antoine's** [1] - 70:2
**Antoine@**
**faegredrinker.com**
[1] - 2:4
**anyway** [1] - 21:8
**appeal** [3] - 11:23,
11:24, 13:22
**appealed** [1] - 14:5
**appeals** [3] - 11:24,
13:17, 14:6
**appear** [3] - 34:24,
59:12, 59:14
**appearance** [1] - 3:25

**appearances** [1] - 3:9
**appeared** [4] - 1:21,
2:9, 2:17, 78:6
**apply** [1] - 68:5
**appreciate** [8] - 12:13,
15:4, 23:7, 23:25,
24:2, 24:20, 35:14,
41:6
**approach** [1] - 18:7
**appropriate** [9] - 7:6,
21:10, 34:1, 35:16,
44:20, 47:7, 47:8,
52:2, 54:11
**appropriately** [2] -
43:10, 55:18
**approximation** [1] -
43:9
**April** [8] - 9:25, 21:21,
30:16, 30:18, 31:12,
31:13, 31:24, 32:3
**area** [4] - 16:14, 27:5,
36:5, 41:8
**areas** [1] - 26:11
**arguing** [4] - 10:20,
29:3, 29:4, 29:5
**argument** [3] - 20:3,
34:1, 47:16
**arguments** [5] - 21:10,
21:12, 21:13, 34:5,
47:21
**arise** [4] - 16:9, 18:8,
24:25, 64:7
**aside** [4] - 25:24, 39:1,
52:25, 71:15
**aspect** [1] - 73:12
**assessment** [1] - 70:1
**assets** [1] - 78:3
**assume** [4] - 59:16,
62:7, 67:15, 77:12
**assuming** [3] - 26:23,
29:23, 29:25
**assumption** [2] -
17:25, 29:25
**attachments** [2] -
4:15, 4:16
**attempt** [1] - 18:15
**Attorney** [1] - 77:24
**attorneys** [1] - 44:20
**authorizes** [1] - 7:3
**Avenue** [2] - 1:19,
2:15
**average** [1] - 8:11
**avoid** [1] - 61:12
**avoids** [1] - 29:1
**aware** [3] - 16:25,
21:11, 71:11

## B

**backed** [1] - 23:19

**bad** [1] - 46:9
**balance** [2] - 11:16,
24:21
**ballpark** [1] - 31:17
**bar** [1] - 56:7
**based** [7] - 10:20,
11:5, 26:10, 35:25,
51:19, 54:19, 73:14
**bases** [1] - 67:25
**basis** [1] - 13:23
**become** [3] - 60:20,
61:25, 68:14
**becomes** [6] - 22:9,
47:3, 64:10, 64:18,
73:1, 74:17
**beginning** [1] - 22:15
**behalf** [9] - 1:21, 2:9,
2:17, 3:18, 5:8, 9:19,
28:5, 54:24, 78:20
**believes** [1] - 75:2
**bench** [1] - 20:20
**benefit** [1] - 44:22
**Bergen** [4] - 19:6,
37:24, 41:7, 41:9,
41:13, 41:22
**best** [1] - 34:17
**better** [8] - 33:4,
47:14, 48:19, 49:2,
51:9, 56:8, 57:23,
64:9
**between** [10] - 11:16,
17:18, 24:9, 29:14,
31:19, 35:4, 35:6,
41:9, 44:12, 55:9
**beyond** [1] - 67:8
**bias** [1] - 71:8
**BIDDLE** [2] - 2:2, 2:5
**Biddle** [1] - 3:17
**big** [4] - 29:25, 30:3,
34:22, 40:2
**biggest** [1] - 59:17
**bind** [2] - 53:8, 54:20
**bit** [8] - 12:22, 27:2,
29:13, 31:5, 35:15,
53:8, 54:3, 58:10
**blanket** [1] - 37:1
**blood** [1] - 80:10
**Blue** [2] - 38:15, 39:11
**Bohl** [2] - 2:20, 3:12
**bound** [1] - 62:19
**Bowne** [2] - 2:20, 3:11
**breadth** [1] - 6:4
**breathing** [1] - 27:2
**Bridge** [1] - 38:2
**brief** [8] - 21:2, 26:19,
27:4, 29:22, 33:9,
33:14, 33:17, 71:24
**brief's** [1] - 27:7
**briefing** [11] - 25:19,
25:21, 26:5, 27:16,

28:16, 28:17, 28:21,
30:11, 30:17, 31:10,
32:19
**briefly** [3] - 17:8,
39:24, 76:7
**briefs** [5] - 20:16,
27:8, 30:6, 33:10,
33:16
**bring** [1] - 33:1
**brings** [1] - 65:24
**broad** [1] - 44:14
**Broad** [1] - 2:11
**broader** [3] - 9:1,
17:11, 58:4
**bucket** [1] - 68:6
**build** [1] - 19:25
**building** [1] - 46:2
**built** [1] - 11:25
**burden** [4] - 12:1,
28:7, 30:25, 32:14
**BUREAU** [1] - 1:18
**burned** [1] - 74:23
**BURNS** [1] - 2:10
**Burns** [1] - 3:24
**BY** [5] - 1:18, 2:2, 2:5,
2:10, 2:14

## C

**California** [1] - 15:6
**Campus** [1] - 2:3
**cap** [3] - 61:10, 63:4
**capacity** [1] - 40:23
**Caputo** [2] - 2:21, 3:12
**care** [2] - 14:11, 40:23
**carry** [1] - 30:25
**case** [66] - 3:7, 4:17,
7:12, 9:13, 10:13,
13:15, 14:24, 15:1,
15:9, 15:13, 15:14,
15:18, 16:5, 16:7,
17:11, 21:2, 22:25,
23:19, 25:24, 26:1,
26:7, 26:21, 29:8,
35:12, 35:16, 36:3,
36:5, 36:15, 36:25,
37:20, 38:7, 39:21,
40:2, 40:17, 44:3,
44:19, 45:5, 45:25,
46:2, 46:14, 51:10,
52:4, 52:17, 54:22,
60:6, 60:21, 61:12,
61:17, 63:23, 65:14,
67:19, 73:6, 74:14,
74:15, 74:18, 74:20,
76:10, 76:24, 77:25,
78:13, 79:1, 79:2,
79:3, 79:8
**cases** [12] - 9:21, 11:5,
11:8, 13:15, 25:18,

35:10, 35:11, 35:14,
36:15, 41:4, 60:9,
78:5
**categories** [4] - 38:8,
38:22, 60:1, 67:16
**Cathleen** [2] - 2:21,
3:12
**causing** [1] - 17:2
**caution** [2] - 48:6,
78:9
**caveat** [1] - 29:24
**certain** [1] - 26:14
**certainly** [10] - 18:1,
19:21, 24:24, 25:12,
29:11, 34:13, 43:15,
48:24, 50:13, 56:9
**certainty** [1] - 70:22
**CERTIFICATE** [1] -
80:1
**certification** [1] -
67:15
**certify** [2] - 80:5, 80:9
**cetera** [1] - 49:24
**CFR** [3] - 8:14, 9:6, 9:9
**challenge** [7] - 26:20,
46:4, 65:20, 65:22,
66:10, 68:5, 73:25
**chance** [2] - 42:8, 67:3
**change** [2] - 31:8,
57:15
**changes** [2] - 59:19,
76:16
**changing** [1] - 57:11
**Chappell** [1] - 7:10
**check** [1] - 59:10
**chief** [1] - 24:6
**Christopher** [2] - 2:21,
3:12
**Cigna** [1] - 39:16
**circumstances** [6] -
12:15, 12:22, 18:1,
19:22, 45:17, 48:16
**citation** [1] - 9:6
**citations** [1] - 33:12
**cite** [1] - 33:9
**City** [3] - 36:24, 37:1,
43:21
**civil** [3] - 3:7, 47:18,
51:11
**Civil** [1] - 8:24
**CIVIL** [1] - 1:4
**clarification** [1] - 23:9
**clarifies** [1] - 14:19
**clarify** [1] - 17:16
**classify** [1] - 68:15
**clause** [1] - 72:6
**cleanup** [1] - 67:8
**clear** [7] - 4:8, 21:24,
33:22, 46:1, 62:5,
73:24, 78:8

**clerk** [1] - 77:7
**client** [5] - 28:20, 41:17, 55:9, 63:9, 63:14
**clients** [3] - 33:5, 62:10, 62:15
**close** [17] - 11:6, 11:9, 11:21, 13:23, 14:8, 21:23, 22:3, 24:7, 24:13, 26:15, 26:17, 29:19, 30:12, 31:19, 36:10, 49:4
**closely** [1] - 20:6
**closer** [2] - 38:1, 75:16
**closes** [2] - 26:18, 47:11
**closing** [3] - 11:11, 11:18, 21:18
**closure** [1] - 49:6
**CMSO** [5] - 5:2, 31:3, 60:11, 71:19, 76:8
**co** [1] - 58:17
**co-defendant** [1] - 58:17
**cognizant** [1] - 51:3
**coincidence** [1] - 69:14
**colleagues** [4] - 71:25, 72:14, 73:7, 74:10
**combination** [1] - 38:9
**coming** [1] - 23:11
**comment** [1] - 75:16
**comments** [1] - 40:9
**commercial** [2] - 39:12, 40:5
**commission** [2] - 11:23, 14:5
**Commission** [2] - 3:6, 46:22
**COMMISSION** [2] - 1:3, 1:18
**commissioners** [1] - 6:15
**common** [1] - 10:21
**common-sense** [1] - 10:21
**communicating** [1] - 38:25
**communications** [1] - 72:25
**Community** [1] - 78:2
**companies** [1] - 38:15
**compare** [1] - 8:23
**compel** [1] - 18:17
**compelling** [1] - 68:22
**competes** [2] - 43:13, 43:22
**competing** [6] - 23:7,

38:18, 38:20, 43:23, 43:24, 43:25
**COMPETITION** [1] - 1:18
**competition** [5] - 38:12, 39:17, 39:19, 41:16, 55:8
**competitive** [4] - 11:18, 28:8, 40:22, 44:18
**competitor** [5] - 55:4, 55:5, 56:5, 56:6, 56:10
**competitors** [8] - 38:13, 43:14, 44:11, 44:15, 44:16, 44:24, 45:5, 54:23
**complaint** [2] - 37:12, 77:7, 77:8, 77:19, 77:20
**complete** [2] - 14:10, 74:18
**completed** [1] - 73:15
**completely** [2] - 18:6, 36:11
**complex** [1] - 41:4
**complicated** [1] - 68:15
**compliments** [1] - 75:23
**comply** [1] - 18:3
**component** [1] - 52:18
**compressed** [4] - 14:12, 14:14, 27:12, 73:2
**compromise** [3] - 72:8, 72:12, 75:7
**compromised** [1] - 11:19
**conceivably** [1] - 50:5
**concern** [21] - 13:3, 15:24, 28:14, 29:2, 30:3, 30:6, 30:9, 36:16, 43:8, 48:14, 57:2, 59:17, 60:8, 61:8, 61:18, 61:21, 64:3, 64:5, 69:3, 73:1, 74:22
**concerns** [9] - 12:24, 15:22, 18:15, 20:16, 42:18, 47:15, 50:10, 64:18, 66:14
**conclude** [1] - 55:17
**concludes** [2] - 25:11
**concur** [1] - 29:11
**confer** [3] - 18:15, 52:18, 74:13
**conference** [1] - 3:1
**Conference** [1] - 1:6
**CONFERENCE** [1] -

1:15
**confident** [2] - 51:19, 54:10
**confirm** [1] - 67:7
**conflicting** [1] - 12:6
**consider** [4] - 20:22, 25:13, 34:1, 71:8
**consideration** [2] - 22:14, 23:25
**considered** [1] - 45:21
**consistent** [4] - 9:21, 36:15, 39:3, 67:19
**Cont'd** [1] - 2:1
**contact** [1] - 57:15
**contacts** [1] - 58:11
**contained** [1] - 67:18
**containing** [1] - 44:3
**contemplate** [2] - 39:20, 49:4
**contemplated** [2] - 15:15, 38:11
**contemplating** [6] - 11:22, 16:5, 18:13, 21:16, 36:23, 38:4
**contentious** [1] - 68:15
**context** [4] - 12:18, 35:5, 38:13, 74:12
**continue** [2] - 41:18, 72:15
**contrary** [1] - 69:12
**contrast** [1] - 11:12
**control** [1] - 36:18
**conversely** [1] - 13:21, 16:12, 67:22
**convinced** [2] - 50:15, 70:25
**copy** [2] - 76:10, 76:16
**core** [1] - 44:19
**corporate** [2] - 51:21, 53:23
**corporation** [1] - 54:3
**correct** [6] - 5:21, 20:2, 27:23, 35:13, 45:23, 79:2
**correctly** [1] - 69:4
**Counsel** [1] - 4:6
**counsel** [8] - 3:11, 3:15, 3:25, 4:7, 6:21, 9:10, 9:20, 31:14
**County** [11] - 19:7, 36:25, 37:24, 41:7, 41:9, 41:13, 41:22, 43:21
**couple** [6] - 8:15, 17:10, 19:14, 37:9, 45:11, 71:18
**course** [4] - 15:13, 52:1, 55:7, 55:21
**COURT** [115] - 1:1,

1:13, 3:4, 3:14, 3:20, 3:22, 4:6, 5:4, 5:11, 5:15, 5:22, 6:2, 8:5, 8:22, 9:8, 9:24, 10:16, 11:13, 12:5, 13:5, 14:21, 16:8, 17:9, 17:24, 18:19, 18:21, 19:20, 23:2, 23:13, 23:23, 24:4, 24:17, 24:24, 25:13, 26:9, 26:25, 27:17, 28:1, 28:13, 29:17, 30:10, 30:19, 30:23, 31:8, 31:21, 32:3, 32:6, 32:9, 32:24, 33:13, 33:22, 34:9, 34:16, 34:19, 37:7, 39:5, 39:23, 39:25, 40:11, 42:10, 44:9, 44:25, 45:19, 46:10, 47:9, 48:12, 48:21, 50:3, 50:9, 51:16, 52:13, 54:15, 55:2, 55:25, 56:15, 56:22, 57:8, 58:5, 58:15, 58:18, 59:2, 59:8, 60:15, 60:24, 61:20, 62:2, 62:24, 64:11, 64:22, 67:12, 68:17, 69:4, 69:11, 69:22, 70:24, 71:6, 71:15, 72:18, 73:13, 73:20, 74:21, 75:9, 75:18, 75:23, 76:9, 76:19, 77:3, 77:12, 77:19, 78:9, 78:16, 78:21, 78:25, 79:6, 80:1
**Court** [22] - 10:12, 11:10, 15:12, 16:1, 17:16, 17:20, 18:16, 23:7, 24:2, 24:20, 29:6, 31:4, 42:11, 44:21, 53:21, 57:5, 76:25, 77:7, 80:3, 80:4, 80:16
**court** [4] - 11:24, 13:17, 14:6, 57:20
**Court's** [1] - 23:25
**Courthouse** [1] - 1:10
**courts** [1] - 13:13
**cover** [1] - 21:2
**COVID-19** [1] - 16:14
**create** [2] - 28:10, 29:13
**created** [1] - 15:24
**creature** [1] - 54:20
**credible** [1] - 37:3
**critical** [3] - 15:1, 15:2, 37:23
**Cross** [2] - 38:15,

39:12
**cross** [2] - 14:24, 67:9
**cross-examine** [1] - 67:9
**CRR** [3] - 1:23, 80:3, 80:15
**current** [2] - 12:20, 16:3
**customers** [1] - 39:19
**cut** [3] - 20:22, 42:5, 73:18

**D**

**Dahlquist** [2] - 2:24, 4:4
**data** [2] - 25:25, 45:10
**date** [31] - 4:23, 5:15, 9:12, 9:24, 9:25, 10:2, 10:3, 10:19, 11:13, 12:10, 22:3, 22:18, 22:20, 22:21, 23:1, 23:3, 23:24, 24:1, 24:15, 25:6, 25:9, 56:20, 56:22, 58:9, 58:13, 58:22, 58:25, 80:8
**DATED** [1] - 80:18
**dates** [12] - 4:11, 12:6, 21:22, 22:12, 24:9, 25:8, 32:10, 32:22, 57:11, 57:15, 57:22, 58:6
**Daubert** [4] - 20:9, 20:12, 20:15, 33:22
**Dauberts** [2] - 33:21, 34:3
**David** [2] - 2:24, 4:3
**days** [11] - 19:18, 26:4, 31:4, 31:6, 32:25, 33:4, 33:21, 42:6, 58:23, 71:15, 77:9
**DC** [2] - 1:20, 2:7
**deal** [5] - 16:14, 16:22, 22:8, 34:22, 67:11
**dealing** [4] - 14:23, 15:2, 15:6, 18:7
**December** [2] - 4:20, 45:8
**decide** [8] - 11:5, 13:16, 44:22, 46:4, 48:6, 49:25, 66:9, 69:23
**deciding** [1] - 65:20
**decision** [10] - 5:19, 8:12, 10:7, 11:10, 11:15, 11:22, 13:10, 15:14, 19:23, 78:12
**decisions** [1] - 19:3

**declarant** [1] - 70:4
**declarant's** [1] - 68:25
**declarants** [11] - 59:13, 60:2, 60:3, 60:17, 61:4, 62:4, 62:25, 68:21, 69:2, 69:9, 69:16
**declaration** [9] - 59:25, 63:8, 63:18, 65:3, 66:14, 66:18, 66:23, 67:14, 68:23
**declarations** [10] - 37:15, 39:15, 39:22, 45:10, 66:25, 67:2, 67:5, 67:7, 69:8, 69:24
**Defendant** [3] - 2:9, 2:17, 75:21
**defendant** [5] - 25:23, 30:25, 58:17, 65:18, 70:5
**defendants** [65] - 5:22, 7:5, 7:19, 8:3, 10:3, 10:11, 11:16, 12:7, 14:21, 14:22, 15:8, 17:11, 17:22, 22:5, 23:2, 24:17, 25:24, 26:12, 26:21, 28:2, 30:15, 31:9, 31:11, 35:7, 36:23, 40:17, 43:18, 45:3, 45:9, 45:14, 46:3, 46:6, 47:20, 47:25, 48:21, 50:12, 50:19, 50:21, 51:2, 51:7, 53:2, 54:22, 55:25, 56:11, 58:5, 59:17, 61:2, 63:1, 63:15, 63:21, 64:23, 65:8, 65:15, 65:16, 67:20, 67:22, 68:3, 70:7, 70:21, 72:6, 73:24, 74:7, 75:9, 76:14, 78:9
**Defendants** [2] - 1:8, 77:12
**defendants'** [8] - 21:20, 32:1, 35:2, 41:1, 59:13, 60:25, 65:8, 77:24
**defense** [4] - 9:10, 31:14, 34:9, 34:10
**defer** [3] - 48:18, 71:25, 72:14
**deferring** [1] - 49:5
**definitely** [2] - 38:6, 48:18
**degree** [1] - 55:8
**delay** [6] - 7:6, 13:9, 14:18, 17:2, 17:5,

19:19
**delaying** [1] - 20:22
**delivered** [1] - 40:23
**denial** [1] - 13:22
**denied** [1] - 11:8
**denies** [1] - 13:21
**deponent** [2] - 52:3, 52:11
**depose** [14] - 33:19, 48:15, 49:15, 49:16, 53:9, 53:22, 56:25, 57:9, 57:18, 59:23, 60:11, 62:11, 62:19
**deposed** [1] - 63:3
**deposing** [1] - 55:4
**deposition** [29] - 16:20, 36:17, 51:25, 52:2, 52:8, 54:5, 54:8, 55:6, 55:7, 55:11, 55:13, 55:14, 57:14, 59:9, 63:10, 63:17, 64:22, 64:24, 65:7, 65:9, 66:6, 66:16, 66:19, 67:21, 68:24, 71:1, 71:2, 71:11
**depositions** [23] - 4:12, 9:2, 16:2, 26:21, 34:20, 42:1, 48:16, 49:22, 50:22, 50:23, 51:4, 57:6, 59:11, 59:18, 59:21, 61:10, 61:16, 62:23, 63:19, 64:4, 66:25, 70:11, 70:23
**described** [3] - 24:22, 53:7, 61:9
**designation** [1] - 58:9
**detail** [1] - 71:10
**determine** [2] - 17:1, 42:3
**develop** [2] - 39:3, 67:4
**developed** [1] - 8:2
**devoting** [2] - 73:4, 74:19
**difference** [5] - 35:4, 35:6, 44:12, 54:17, 64:23
**different** [8] - 8:20, 28:3, 29:5, 45:18, 50:20, 53:6, 54:1, 59:10
**differently** [1] - 37:11
**difficult** [4] - 12:18, 51:5, 54:4, 70:19
**difficulties** [1] - 21:24
**difficulty** [2] - 19:24, 22:11
**disadvantage** [2] -

64:13, 64:14
**disagree** [4] - 8:8, 16:10, 22:5, 76:18
**disagreement** [2] - 39:18, 72:16
**disagreements** [1] - 4:12
**disclose** [6] - 46:13, 47:13, 56:20, 56:21, 56:22, 57:1
**disclosed** [4] - 46:11, 46:12, 47:6, 59:15
**disclosing** [2] - 56:10, 56:17
**disclosure** [4] - 46:16, 50:25, 54:12, 54:13
**disclosures** [10] - 26:6, 37:18, 45:13, 45:15, 45:16, 45:19, 46:5, 46:22, 59:3, 72:23
**discovery** [52] - 8:22, 9:13, 10:10, 12:10, 12:19, 14:10, 14:13, 15:15, 15:17, 15:23, 16:5, 17:17, 19:11, 21:18, 21:24, 23:11, 24:7, 24:14, 26:16, 26:18, 27:1, 29:19, 30:12, 31:20, 37:5, 37:12, 37:15, 38:4, 38:17, 38:23, 44:4, 44:21, 46:7, 47:8, 47:11, 47:13, 48:7, 48:19, 49:4, 49:6, 49:10, 50:2, 51:20, 58:2, 58:4, 73:2, 74:7, 74:19, 76:24, 77:1, 77:5, 79:8
**discuss** [2] - 35:5, 64:19
**discussed** [1] - 71:13
**discussing** [2] - 42:7, 72:15
**discussion** [1] - 71:25
**disproportionate** [1] - 68:22
**dispute** [1] - 47:19
**disputes** [3] - 4:9, 17:14, 21:18
**disrupting** [1] - 29:7
**distinguishable** [1] - 9:22
**distraction** [1] - 73:10
**District** [5] - 3:3, 15:19, 80:4, 80:16
**DISTRICT** [3] - 1:1, 1:1, 1:13
**diverting** [1] - 15:22
**doable** [1] - 58:24

**Docket** [1] - 4:15
**documentations** [1] - 44:18
**documents** [10] - 16:20, 16:22, 37:16, 43:18, 45:1, 45:4, 45:10, 55:6, 55:7, 62:14
**dominate** [1] - 39:9
**done** [5] - 6:23, 6:25, 26:5, 42:19, 59:18
**Donovan** [2] - 2:22, 4:4
**doubt** [1] - 45:17
**down** [5] - 23:4, 24:4, 42:5, 65:18, 78:8
**DRINKER** [2] - 2:2, 2:3
**Drinker** [1] - 3:17
**Drive** [1] - 2:3
**drop** [1] - 16:18
**drop-off** [1] - 16:18
**due** [4] - 18:3, 27:4, 33:11, 52:6
**during** [13] - 14:12, 16:13, 16:18, 20:13, 21:12, 24:25, 37:4, 63:19, 65:7, 67:21, 71:2, 71:10, 73:22
**duties** [1] - 18:3

## E

**ear** [3] - 23:17, 23:20, 57:16
**early** [1] - 58:24
**Eastern** [1] - 15:19
**economic** [2] - 29:16, 41:16
**effect** [2] - 19:17, 52:21
**effective** [1] - 19:17
**effectively** [1] - 66:16
**effects** [2] - 40:20, 40:22
**efficiencies** [3] - 30:25, 32:15, 40:24
**efficiency** [1] - 4:2
**efficient** [8] - 19:13, 19:16, 29:6, 30:3, 60:8, 66:7, 68:24, 71:21
**effort** [2] - 37:5, 54:2
**Einstein** [2] - 15:19, 16:7
**either** [11] - 5:4, 7:25, 14:8, 17:24, 20:12, 22:14, 37:15, 39:7, 53:16, 55:9, 79:6
**electronic** [1] - 45:2
**emblematic** [1] - 16:6

**emergency** [1] - 14:15
**Emily** [2] - 2:20, 3:11
**eminent** [1] - 49:7
**employers** [2] - 38:16, 39:8
**encompasses** [1] - 37:19
**encourage** [1] - 52:15
**end** [6] - 5:2, 29:6, 36:13, 60:6, 67:13, 68:10
**ended** [1] - 36:6
**ENGLEWOOD** [1] - 1:7
**Englewood** [14] - 2:17, 2:22, 2:23, 2:23, 2:24, 2:24, 3:6, 3:22, 5:4, 5:12, 6:1, 38:1, 38:10, 38:20
**enter** [2] - 77:4, 79:9
**entered** [4] - 3:24, 5:16, 13:18, 76:13
**entire** [2] - 13:16, 20:15
**entities** [2] - 15:5, 17:15, 37:18, 56:25, 69:15
**entity** [11] - 51:21, 51:25, 52:7, 52:8, 53:3, 53:15, 54:20, 54:23, 54:24, 55:9
**Entry** [1] - 4:15
**envision** [1] - 18:1
**equal** [1] - 61:11
**equate** [1] - 45:16
**equivalent** [3] - 41:15, 63:17, 74:6
**ESI** [1] - 45:4
**especially** [5] - 27:11, 33:21, 37:4, 44:1, 57:24
**ESQ** [5] - 1:19, 2:2, 2:6, 2:11, 2:14
**Esq** [8] - 2:20, 2:20, 2:21, 2:22, 2:23, 2:23, 2:24, 2:24
**Esq.,FTC** [1] - 2:21
**essentially** [3] - 63:19, 66:6, 73:17
**establish** [2] - 28:8, 44:14
**et** [1] - 49:24
**evaluate** [2] - 28:11, 32:16
**evaluating** [2] - 29:15, 41:16
**event** [2] - 37:3, 62:1
**eventually** [1] - 42:5
**evidence** [17] - 20:3, 21:7, 21:8, 26:23,

29:24, 41:24, 42:1, 42:4, 44:14, 44:21, 44:22, 50:13, 53:20, 65:5, 66:1
**exact** [1] - 73:8
**exactly** [5] - 13:11, 36:11, 43:7, 51:10, 61:9
**examinations** [1] - 67:3
**examine** [1] - 67:9
**example** [6] - 4:12, 9:2, 31:3, 46:5, 55:3, 68:2
**except** [2] - 57:11, 64:15
**exception** [1] - 9:22
**exchange** [2] - 6:10, 31:4
**exchanging** [1] - 57:13
**excuse** [1] - 11:14
**executives** [7] - 36:19, 45:15, 45:18, 62:11, 62:12, 62:17, 62:22
**exerts'** [1] - 26:16
**exhibit** [1] - 66:16
**expand** [1] - 30:13
**expansion** [1] - 19:2
**expect** [3] - 13:12, 60:5, 62:16
**expected** [1] - 43:9
**expedited** [3] - 13:23, 14:8, 19:10
**experience** [3] - 53:6, 53:12, 61:17
**expert** [25] - 22:23, 24:8, 25:16, 25:19, 25:21, 27:4, 27:8, 27:15, 27:18, 27:19, 27:24, 28:9, 29:2, 29:3, 29:14, 29:16, 29:20, 30:12, 33:9, 33:14, 33:15, 33:16, 40:25, 50:4, 64:15
**expert's** [1] - 34:2
**experts** [24] - 21:19, 21:20, 27:5, 28:11, 28:18, 28:22, 28:23, 28:24, 28:25, 30:17, 32:16, 33:20, 34:14, 36:7, 40:14, 40:17, 41:3, 42:2, 43:1, 47:25, 50:16, 50:17
**explain** [1] - 11:17
**explained** [1] - 14:6
**explore** [4] - 18:12, 67:21, 67:24, 69:19
**exploring** [1] - 39:22
**express** [1] - 65:13
**expressed** [1] - 30:1
**expressing** [2] - 64:2, 64:4
**extent** [4] - 46:23, 49:5, 49:14, 57:12
**extra** [8] - 22:15, 24:3, 26:25, 33:4, 57:6, 60:21, 70:8, 71:17
**extremely** [3] - 12:18, 19:10, 40:18

## F

**face** [5] - 18:13, 19:9, 51:8, 63:24, 64:5
**fact** [40] - 6:24, 14:10, 15:4, 21:18, 21:23, 22:19, 24:7, 24:14, 26:14, 26:15, 26:18, 26:23, 27:1, 28:15, 29:19, 31:19, 34:23, 34:25, 35:2, 36:2, 39:12, 41:13, 47:11, 48:7, 48:8, 48:19, 49:4, 49:6, 50:3, 50:5, 53:9, 53:10, 56:17, 61:1, 62:6, 64:10, 65:25, 74:18
**facts** [2] - 28:8, 65:18
**FAEGRE** [2] - 2:2, 2:5
**Faegre** [1] - 3:17
**fair** [2] - 43:8, 57:8
**fairly** [2] - 66:16, 68:24
**faith** [9] - 18:2, 51:6, 53:14, 53:19, 54:2, 55:21, 56:2, 56:13
**fall** [1] - 67:15
**familiar** [1] - 14:1
**far** [14] - 4:10, 8:9, 19:12, 19:23, 20:22, 24:13, 25:15, 27:17, 34:4, 34:23, 41:2, 66:25, 73:8, 78:8
**fast** [1] - 26:7
**favor** [1] - 65:3
**favorable** [2] - 45:21, 71:8
**FCRR** [3] - 1:23, 80:3, 80:15
**FEDERAL** [3] - 1:3, 1:18, 80:1
**Federal** [5] - 1:10, 3:5, 8:24, 10:12, 46:22
**few** [2] - 33:3, 58:22
**field** [1] - 16:17
**file** [4] - 28:22, 28:23, 28:24, 77:10
**filed** [5] - 27:21, 33:21, 77:7, 77:8, 77:9
**files** [2] - 43:20, 45:8

**fill** [1] - 10:24
**final** [13] - 34:21, 35:5, 35:18, 36:14, 36:22, 43:3, 46:21, 48:9, 48:13, 48:18, 48:25, 49:5, 49:10
**fine** [5] - 5:13, 20:19, 23:1, 33:23, 33:24, 42:13, 57:14, 58:9, 59:7, 60:24, 75:6
**finish** [1] - 48:7
**first** [23] - 6:14, 8:5, 14:6, 20:8, 22:12, 22:18, 24:10, 25:20, 29:16, 30:19, 32:17, 37:11, 40:12, 52:6, 57:25, 58:9, 58:18, 59:19, 61:20, 65:1, 68:7, 74:24, 76:1
**fishing** [1] - 43:20
**fit** [3] - 25:10, 25:16, 42:6
**five** [5] - 40:17, 42:6, 58:10, 59:5, 67:9
**flag** [4] - 17:15, 42:25, 70:3, 77:9
**flagship** [1] - 38:2
**flexibility** [5] - 51:2, 55:25, 56:11, 58:10, 60:22
**flexible** [2] - 22:4, 30:2
**Florham** [1] - 2:3
**flow** [1] - 41:10
**fluid** [2] - 24:5, 24:22
**focus** [2] - 42:15, 42:21
**folks** [8] - 8:17, 14:23, 15:1, 17:19, 54:15, 58:3, 62:5, 79:7
**follow** [3] - 44:8, 52:22, 56:19
**followed** [3] - 11:22, 11:23
**following** [1] - 30:14
**foot** [1] - 68:14
**Footnote** [1] - 77:23
**FOR** [1] - 1:1
**force** [1] - 42:8
**foreclose** [1] - 47:21
**foregoing** [2] - 79:15, 80:5
**foresee** [2] - 19:21, 73:3
**forgot** [1] - 45:12
**form** [1] - 45:2
**forth** [11] - 4:13, 5:14, 6:22, 9:3, 16:16, 20:19, 27:24, 36:19, 57:12, 67:23, 80:8
**forthcoming** [1] - 55:5

**forward** [2] - 13:24, 71:23
**FOUNDATION** [1] - 1:7
**Foundation** [2] - 2:18, 3:7
**four** [2] - 38:8, 40:17
**frame** [1] - 33:6, 52:22, 54:5
**framed** [1] - 47:4
**framework** [1] - 29:11
**Frank** [1] - 1:10
**free** [1] - 76:13
**Friday** [2] - 24:10, 58:25
**front** [4] - 17:17, 17:21, 25:21, 76:24
**front-line** [1] - 17:17
**FTC** [79] - 2:20, 2:20, 2:21, 3:9, 3:11, 4:25, 5:20, 6:5, 10:1, 12:1, 13:9, 13:13, 13:24, 14:4, 14:18, 19:3, 22:18, 24:11, 24:13, 26:9, 26:14, 26:16, 27:3, 28:15, 28:22, 30:1, 30:13, 30:17, 30:19, 31:12, 32:7, 32:13, 32:20, 32:25, 33:6, 33:16, 33:18, 34:8, 35:17, 38:24, 39:15, 39:18, 39:20, 40:9, 41:7, 44:12, 44:23, 44:25, 45:7, 45:19, 47:16, 47:22, 48:11, 50:11, 51:8, 51:9, 52:9, 52:13, 53:1, 55:20, 59:2, 59:7, 59:19, 61:21, 64:12, 64:25, 65:1, 65:11, 67:1, 67:24, 74:22, 75:1, 75:2, 75:13, 75:25, 76:6, 76:12, 76:13, 78:13
**FTC's** [7] - 27:6, 27:18, 29:3, 47:2, 50:10, 67:19, 74:22
**full** [17] - 9:15, 9:16, 10:5, 11:1, 11:23, 13:20, 14:5, 30:15, 30:18, 31:11, 46:16, 50:11, 72:5, 73:23, 74:2, 74:8, 77:20
**future** [2] - 41:17, 42:20

## G

**gamesmanship** [1] - 48:2

**gap** [1] - 29:13
**gathering** [1] - 41:23
**general** [1] - 58:21
**General** [1] - 77:24
**generally** [6] - 9:21, 49:2, 54:18, 67:15, 71:9, 77:11
**GENOVA** [4] - 2:10, 2:11, 3:23, 79:3
**Genova** [4] - 3:24, 79:1
**geographic** [1] - 36:4
**George** [1] - 38:1
**given** [16] - 6:4, 12:20, 15:8, 16:3, 19:8, 26:7, 26:14, 30:3, 31:17, 38:12, 39:17, 47:23, 60:24, 61:2, 66:1, 76:25
**good-faith** [1] - 54:2
**government** [2] - 39:7, 40:2
**Government** [1] - 53:18
**great** [1] - 71:10
**greater** [1] - 73:8
**Grewal** [1] - 78:10
**grounds** [3] - 20:12, 20:13, 66:24
**group** [2] - 44:24, 69:16
**grow** [1] - 41:19
**guess** [13] - 16:23, 25:22, 31:23, 36:10, 52:18, 53:17, 53:25, 60:1, 60:13, 63:4, 68:13, 71:24, 72:7
**guidance** [2] - 49:19, 49:21
**guide** [1] - 49:15

## H

**Hackensack** [20] - 2:9, 3:6, 3:15, 3:18, 5:4, 5:8, 9:19, 15:2, 28:5, 38:2, 38:10, 38:20, 42:17, 42:19, 43:13, 43:14, 55:9, 72:22, 75:21, 78:20
**HACKENSACK** [1] - 1:6
**half** [3] - 43:17, 71:1, 71:11
**hamstring** [1] - 50:19
**hand** [4] - 8:4, 28:19, 47:16
**handle** [2] - 34:4, 49:17
**happy** [2] - 7:5, 76:17

**hard** [2] - 26:6, 26:22
**head** [1] - 8:15
**health** [3] - 14:11, 14:14, 44:17
**HEALTH** [1] - 1:6
**Health** [2] - 2:9, 3:6
**healthcare** [14] - 12:17, 12:19, 15:4, 15:15, 15:24, 16:2, 16:12, 16:17, 38:12, 40:23, 41:10, 41:18, 49:24, 51:22
**Healthcare** [3] - 2:18, 3:7, 78:2
**HEALTHCARE** [1] - 1:7
**hear** [13] - 21:7, 21:11, 22:18, 28:1, 28:13, 42:17, 48:21, 53:1, 57:16, 58:18, 59:19, 72:18, 75:3
**heard** [4] - 23:18, 31:18, 31:21, 68:3
**hearing** [46] - 4:23, 5:16, 5:19, 6:6, 6:14, 6:18, 7:7, 7:12, 7:24, 8:19, 9:11, 9:17, 10:18, 10:23, 11:2, 11:15, 12:9, 13:8, 13:9, 13:12, 19:14, 20:11, 20:13, 20:15, 20:20, 20:22, 21:11, 21:12, 21:14, 21:16, 21:23, 23:5, 32:22, 34:4, 34:5, 36:8, 36:21, 43:2, 47:23, 52:2, 52:10, 54:5, 63:18, 64:2, 73:11
**hearings** [5] - 11:1, 37:14, 68:21, 69:1, 69:6
**Heather** [2] - 2:23, 4:3
**held** [4] - 3:1, 5:19, 11:19, 61:24
**help** [3] - 29:12, 46:14, 66:5
**helpful** [5] - 25:10, 52:17, 52:23, 67:17
**helping** [1] - 78:23
**hereby** [1] - 80:5
**hereinbefore** [1] - 80:8
**herself** [1] - 52:4
**Hershey** [1] - 36:1
**Hershey-Pinnacle** [1] - 36:1
**hesitant** [1] - 36:11
**highlight** [1] - 20:19
**highlighted** [1] - 4:20
**highly** [1] - 66:7

**himself** [1] - 52:4
**hold** [3] - 7:21, 10:16, 75:14
**holds** [1] - 9:12
**home** [1] - 25:24
**homes** [2] - 17:13, 17:14
**Honor** [136] - 3:10, 3:13, 3:16, 3:23, 4:2, 4:5, 4:24, 5:7, 5:21, 5:25, 6:1, 6:11, 6:13, 7:11, 8:2, 8:13, 9:18, 10:9, 11:3, 11:5, 11:14, 12:12, 13:2, 13:7, 13:10, 13:21, 14:9, 15:10, 15:25, 17:8, 18:6, 18:9, 18:20, 19:12, 22:22, 23:10, 23:22, 24:16, 24:19, 25:4, 25:8, 25:11, 26:17, 28:4, 28:14, 29:9, 29:23, 30:1, 30:7, 30:21, 31:17, 31:25, 32:8, 32:11, 32:21, 32:22, 33:18, 34:7, 34:11, 34:17, 34:18, 35:19, 36:13, 37:9, 37:13, 39:12, 39:24, 40:5, 40:8, 40:10, 40:19, 40:24, 41:12, 42:8, 42:13, 44:6, 45:7, 45:23, 46:18, 48:10, 48:25, 49:5, 49:8, 50:7, 50:8, 51:12, 53:4, 54:7, 54:25, 56:14, 56:19, 56:24, 57:21, 58:8, 58:20, 59:6, 59:7, 59:22, 61:6, 61:9, 62:9, 63:5, 64:10, 64:20, 64:21, 65:10, 66:8, 66:12, 66:21, 68:1, 68:18, 69:13, 69:20, 70:15, 70:20, 71:5, 71:14, 71:18, 72:19, 73:17, 74:11, 75:5, 75:16, 75:19, 76:4, 76:5, 76:6, 76:17, 76:23, 77:15, 77:18, 77:23, 78:14, 78:19, 78:22, 79:11
**Honor's** [1] - 25:6
**HONORABLE** [2] - 1:13, 3:2
**hope** [6] - 14:19, 29:12, 31:23, 32:23, 70:16
**hoping** [1] - 76:25
**Horizon** [5] - 38:15,

39:11, 42:16, 46:6, 68:3
**Horizontal** [1] - 46:5
**hospital** [4] - 15:13, 18:25, 38:5, 43:21
**Hospital** [2] - 37:25, 38:2
**hospitals** [6] - 17:19, 19:4, 19:6, 38:3, 41:21, 41:22
**hostile** [2] - 60:6, 62:13
**hot** [1] - 15:5
**hour** [1] - 70:18
**hours** [4] - 66:20, 67:9, 70:13, 71:16
**Hudgens** [2] - 2:24, 4:4
**Hudson** [5] - 19:7, 36:24, 41:9, 41:22, 43:24
**huge** [1] - 73:10
**hundreds** [1] - 30:8

### I

**i.e** [1] - 15:6
**idea** [2] - 35:21, 53:12
**ideal** [1] - 31:7
**identified** [5] - 9:22, 37:18, 55:7, 72:23, 75:11
**identify** [8] - 4:1, 49:3, 51:18, 52:7, 54:2, 54:7, 55:12, 55:22
**identity** [1] - 39:1
**immediately** [3] - 11:9, 18:17, 19:12
**impacts** [1] - 15:9
**impede** [1] - 43:6
**implicit** [1] - 56:1
**important** [13] - 9:23, 10:15, 12:8, 31:2, 37:17, 40:16, 40:18, 40:20, 41:11, 41:19, 42:25, 74:17, 75:24
**Inc** [3] - 2:9, 2:18, 3:6
**INC** [2] - 1:7, 1:7
**incentive** [1] - 54:6
**inception** [1] - 78:11
**inclined** [1] - 72:11
**include** [3] - 4:16, 46:23, 62:12
**included** [2] - 45:20, 63:1
**includes** [2] - 40:14, 73:9
**including** [5] - 21:25, 36:6, 53:20, 60:10, 63:15

**increase** [1] - 37:3
**indefinite** [1] - 10:14
**indicate** [1] - 18:23
**indicated** [1] - 39:6
**indicating** [2] - 19:22, 27:22
**individual** [2] - 34:25, 51:21
**individuals** [7] - 34:24, 37:19, 72:22, 72:25, 73:5, 73:7, 74:20
**inefficient** [1] - 7:24
**information** [19] - 6:4, 6:9, 14:25, 22:2, 22:8, 22:24, 26:13, 26:15, 38:19, 43:19, 45:1, 45:6, 47:8, 56:6, 56:10, 67:18, 69:25, 76:13, 78:4
**initial** [13] - 31:10, 31:20, 37:18, 45:13, 45:15, 45:16, 46:5, 46:21, 58:6, 58:22, 58:25, 59:2, 72:23
**injunction** [30] - 5:19, 6:8, 6:16, 7:1, 7:17, 7:20, 8:1, 8:4, 9:11, 9:17, 10:8, 10:18, 10:23, 10:25, 11:2, 11:4, 11:8, 12:2, 12:3, 12:9, 13:8, 13:10, 13:16, 13:18, 13:22, 14:7, 20:11, 23:5
**inordinate** [1] - 61:16
**inpatient** [1] - 17:12
**instance** [2] - 52:6, 74:24
**instances** [2] - 6:24, 55:15
**instead** [5] - 21:2, 27:23, 31:24, 58:25, 71:16
**institution** [1] - 55:19
**institutional** [2] - 72:10, 75:6
**institutions** [1] - 14:11
**instruction** [1] - 72:3
**insurance** [8] - 38:14, 38:15, 38:21, 39:6, 39:7, 39:19, 40:3, 40:5
**insured** [1] - 38:16
**insurers** [4] - 17:19, 40:7, 42:15, 49:23
**insurmountable** [1] - 24:2
**intend** [2] - 45:17, 51:10

**intention** [3] - 13:6, 17:17, 48:5
**interconnection** [1] - 41:9
**interest** [5] - 11:18, 11:19, 39:2, 49:11, 80:10
**interested** [1] - 39:21
**interests** [2] - 12:15, 23:8
**internal** [1] - 44:17
**interpret** [1] - 69:24
**interrogatories** [1] - 9:3
**interrupt** [1] - 71:2
**introduce** [1] - 68:24
**inundated** [2] - 18:16, 19:18
**investigated** [1] - 26:10
**investigating** [2] - 46:3, 47:17
**investigation** [15] - 35:21, 42:4, 43:16, 43:17, 45:14, 45:25, 46:7, 46:8, 46:12, 64:13, 72:3, 73:22, 73:24, 74:5, 74:7
**investigational** [1] - 63:18
**investigative** [5] - 37:14, 63:20, 68:20, 69:1, 72:12
**invite** [1] - 75:16
**involved** [4] - 15:9, 17:12, 19:1, 19:6
**involves** [1] - 41:17
**involving** [1] - 25:25
**issue** [34] - 5:10, 10:9, 12:21, 21:12, 22:1, 22:6, 24:8, 32:14, 33:13, 37:22, 37:23, 40:20, 40:21, 41:11, 44:12, 44:22, 47:10, 51:14, 56:1, 56:4, 56:9, 59:8, 62:8, 64:8, 64:18, 71:12, 72:2, 72:20, 73:21, 75:2, 75:6, 75:17, 77:6, 78:6
**issues** [34] - 4:18, 4:19, 4:22, 5:6, 5:13, 10:7, 14:24, 16:9, 16:11, 16:15, 18:8, 19:2, 22:8, 22:13, 22:17, 25:16, 25:17, 29:16, 30:24, 34:22, 35:9, 40:25, 41:5, 44:19, 56:8, 71:13, 71:19, 73:10, 76:1,

76:8, 76:22, 78:24, 79:9

**itself** [8] - 54:21, 55:14, 68:14, 70:10, 70:16, 70:19, 70:25, 78:4

## J

**January** [12] - 1:11, 3:3, 57:25, 58:1, 58:6, 58:15, 58:22, 59:3, 59:5, 80:18
**Jefferson** [6] - 15:19, 16:7, 26:20, 60:10, 74:15
**Jefferson-Einstein** [2] - 15:19, 16:7
**JEFFREY** [1] - 2:14
**Jeffrey** [5] - 2:23, 4:2, 4:4, 5:12, 77:18
**JERSEY** [1] - 1:1
**Jersey** [4] - 1:11, 16:1, 77:24, 80:5
**JKessler@winston. com** [1] - 2:16
**jlasken@ftc.gov** [1] - 1:20
**Joanna** [2] - 2:24, 4:4
**job** [2] - 75:24
**JOHN** [2] - 1:13, 3:2
**John** [2] - 59:6, 62:9
**joining** [1] - 3:18
**joint** [4] - 4:14, 4:16, 42:16, 76:24
**JONATHAN** [1] - 1:19
**Jonathan** [12] - 3:10, 4:24, 5:20, 6:11, 18:7, 24:16, 27:10, 34:7, 48:10, 53:4, 65:10, 73:18
**JUDGE** [1] - 1:13
**Judge** [4] - 3:3, 3:4, 7:10, 17:4
**judge** [3] - 13:11, 14:1, 27:2
**jump** [2] - 8:18, 76:18
**June** [13] - 6:3, 9:11, 9:12, 9:14, 10:2, 10:3, 10:4, 10:19, 11:5, 11:13, 11:15, 13:8, 14:15
**justifies** [1] - 42:22

## K

**keep** [2] - 21:14, 39:2
**Ken** [2] - 3:18, 75:19
**KENNETH** [1] - 2:6
**kenneth.vorrasi@**

**faegredrinker.com** [1] - 2:7
**kept** [1] - 76:7
**Kerry** [2] - 2:22, 4:4
**KESSLER** [27] - 2:14, 5:12, 6:1, 13:2, 13:6, 18:20, 18:22, 23:22, 23:24, 25:4, 28:14, 32:8, 32:11, 34:17, 40:8, 40:12, 49:8, 54:25, 55:3, 58:8, 58:16, 61:23, 66:12, 70:15, 77:17, 78:22, 79:13
**Kessler** [23] - 4:3, 5:12, 13:2, 18:22, 19:20, 23:22, 23:23, 25:1, 28:13, 32:9, 42:24, 49:8, 54:25, 56:4, 58:8, 58:21, 61:20, 61:22, 66:12, 69:5, 70:15, 77:18, 78:21
**Kessler's** [1] - 68:23
**kind** [8] - 22:23, 24:9, 36:16, 62:10, 65:1, 65:18, 66:4, 68:13
**knowing** [1] - 56:3
**knowledge** [1] - 54:19
**knowledgeable** [2] - 52:1, 55:11
**knows** [2] - 43:14, 66:21

## L

**Lamberg** [2] - 2:23, 4:3
**large** [5] - 15:3, 19:5, 36:20, 48:15, 49:23
**larger** [3] - 12:10, 35:24, 49:16
**largest** [2] - 39:11, 39:12
**Larsen** [5] - 1:23, 42:11, 42:12, 80:3, 80:15
**LASKEN** [57] - 1:19, 3:10, 4:24, 5:20, 6:11, 8:13, 8:25, 17:8, 17:10, 18:6, 22:22, 24:15, 25:18, 26:17, 27:10, 27:23, 29:23, 30:21, 30:24, 33:8, 33:18, 34:7, 35:19, 39:24, 42:13, 45:7, 45:23, 48:10, 48:13, 50:8, 53:4, 56:14, 56:19, 56:23, 57:21, 59:6, 59:22,

60:19, 62:9, 63:2, 64:20, 65:10, 68:1, 69:20, 69:23, 71:14, 71:18, 73:17, 73:22, 75:5, 76:5, 76:17, 76:23, 77:6, 77:22, 78:14, 79:11
**Lasken** [32] - 3:10, 4:24, 5:20, 6:12, 18:7, 24:16, 25:14, 25:15, 27:10, 29:18, 29:19, 31:18, 34:8, 38:3, 42:12, 48:10, 53:5, 54:10, 56:15, 56:16, 58:19, 59:6, 62:2, 62:9, 64:2, 65:10, 67:12, 68:20, 69:14, 73:18, 76:21, 77:21
**Lasken's** [1] - 37:10
**last** [5] - 7:15, 11:10, 39:25, 44:8, 56:3
**Lautenberg** [1] - 1:10
**law** [2] - 13:11, 13:25
**lay** [1] - 36:11
**lead** [1] - 72:16
**leads** [2] - 34:19, 34:20
**learn** [2] - 55:10, 58:11
**learned** [1] - 78:4
**least** [9] - 14:19, 17:21, 21:1, 28:2, 28:20, 38:8, 41:3, 59:16, 70:21
**leave** [3] - 14:17, 58:10, 64:17
**leaving** [1] - 25:24
**leg** [1] - 47:17
**lengthy** [1] - 25:23
**less** [9] - 23:20, 31:1, 35:22, 43:17, 60:7, 61:7, 61:18, 74:2, 74:18
**letter** [15] - 4:14, 4:20, 5:14, 63:8, 65:3, 65:15, 65:16, 67:23, 70:4, 76:2, 77:24, 78:7
**level** [2] - 18:25, 44:3
**levels** [1] - 38:13
**leverage** [3] - 17:18, 42:19, 42:20
**light** [2] - 6:9, 59:19
**likelihood** [1] - 28:8
**likely** [4] - 13:18, 13:23, 23:20, 70:17
**limine** [4] - 20:8, 20:13, 20:20, 21:5
**limines** [1] - 34:3

**limit** [2] - 9:1, 60:12
**limitation** [4] - 49:15, 61:24, 74:13, 74:16
**limited** [3] - 32:14, 49:12, 62:4
**limiting** [1] - 56:2
**limits** [1] - 49:18
**Lindsey** [2] - 2:20, 3:12
**line** [6] - 3:11, 17:17, 17:21, 18:25, 39:19, 78:8
**Lisa** [1] - 80:3
**lisalarsen25@gmail. com** [1] - 1:24
**list** [60] - 34:21, 34:23, 34:25, 35:1, 35:3, 35:6, 35:20, 36:2, 36:17, 40:13, 42:22, 43:3, 43:8, 45:13, 45:17, 46:21, 46:24, 47:2, 47:4, 48:3, 48:8, 48:9, 48:14, 48:17, 49:1, 49:6, 49:10, 49:11, 49:25, 51:15, 51:18, 52:6, 53:23, 56:18, 57:25, 59:9, 59:12, 60:3, 60:5, 60:17, 61:3, 61:8, 61:11, 61:14, 61:15, 61:19, 62:3, 62:6, 62:12, 62:13, 62:17, 62:20, 62:21, 62:25, 63:3, 63:10, 63:12, 64:12
**listed** [3] - 45:15, 59:23, 62:13
**listen** [1] - 57:16
**listing** [1] - 54:3
**lists** [4] - 35:23, 36:20, 38:11, 47:10
**litigate** [2] - 74:1, 74:3
**litigation** [2] - 47:18, 72:5
**live** [2] - 31:7, 32:22
**LLC** [1] - 2:10
**LLP** [3] - 2:2, 2:5, 2:14
**local** [1] - 3:25
**log** [22] - 72:2, 72:4, 72:5, 72:16, 72:21, 72:24, 73:1, 73:4, 73:14, 73:15, 73:23, 74:3, 74:8, 74:9, 74:11, 75:1, 75:3, 75:10, 75:11, 75:12, 75:17, 75:24
**logging** [2] - 74:13, 74:19
**logic** [1] - 48:25
**logs** [2] - 72:8, 74:4

**look** [9] - 9:7, 9:9, 52:15, 52:20, 62:5, 63:12, 75:1, 76:1, 79:8
**lose** [2] - 11:25, 13:17

## M

**magistrate** [1] - 70:20
**main** [2] - 60:8, 74:6
**major** [1] - 19:3
**majority** [2] - 43:16, 45:1
**management** [3] - 4:17, 76:10, 79:9
**Manhattan** [3] - 19:7, 41:10, 41:23
**March** [17] - 21:19, 21:20, 21:22, 21:23, 24:10, 24:11, 24:13, 25:2, 25:7, 25:12, 27:3, 30:12, 30:13, 31:22, 47:11
**market** [19] - 17:12, 28:7, 28:12, 36:4, 36:5, 36:24, 37:22, 37:24, 38:6, 39:3, 39:4, 40:4, 40:24, 41:7, 41:19, 43:13, 46:8, 47:20, 65:18
**marketplace** [1] - 38:19
**markets** [1] - 44:4
**marriage** [1] - 80:10
**marries** [1] - 66:14
**material** [2] - 30:4, 43:16
**matter** [15] - 3:5, 4:2, 4:10, 7:4, 12:3, 13:16, 16:7, 26:10, 26:19, 57:1, 62:20, 68:10, 70:11, 79:15, 80:11
**mean** [8] - 4:11, 13:17, 45:19, 54:16, 56:20, 63:4, 65:19, 73:18
**meaning** [2] - 67:24, 70:3
**means** [3] - 17:13, 43:3, 79:2
**meant** [1] - 42:12
**measuring** [1] - 35:9
**Medicare** [1] - 40:6
**meet** [4] - 18:14, 24:3, 52:18, 74:12
**meet-and-confer** [1] - 52:18
**meeting** [1] - 23:11
**member** [1] - 56:7
**members** [1] - 38:21

**mention** [1] - 45:12
**mentioned** [2] - 28:17, 36:23
**merge** [2] - 7:13, 7:14
**merger** [16] - 7:21, 9:21, 11:8, 12:17, 13:15, 14:13, 15:13, 40:22, 41:16, 46:1, 46:3, 46:9, 65:3, 65:4, 65:13, 65:17
**mergers** [2] - 73:25
**Meridian** [2] - 2:9, 3:6
**MERIDIAN** [1] - 1:6
**merits** [13] - 6:15, 6:18, 7:2, 7:9, 7:15, 8:3, 8:19, 11:22, 37:22, 39:3, 71:24, 73:5, 78:13
**message** [1] - 12:7
**metric** [1] - 30:8
**MICHAEL** [2] - 1:13, 3:2
**middle** [2] - 14:14, 30:14
**midst** [1] - 14:22
**might** [7] - 5:2, 5:9, 42:3, 60:11, 62:12, 64:7, 64:9
**mind** [5] - 8:18, 20:16, 25:1, 25:8, 45:18
**minimize** [1] - 12:24
**minor** [1] - 4:19
**minute** [2] - 6:25, 7:15
**month** [1] - 23:3
**months** [4] - 8:15, 8:17, 12:3, 19:14
**most** [8] - 18:23, 30:2, 41:11, 43:1, 60:2, 60:8, 60:14, 67:10
**motion** [11] - 12:25, 15:18, 15:20, 15:21, 21:5, 28:23, 76:24, 77:8, 77:9, 77:12, 77:13
**motions** [5] - 18:16, 18:17, 20:9, 20:20
**move** [7] - 13:9, 31:5, 32:6, 32:7, 33:10, 58:13, 71:22
**moved** [1] - 31:21
**MR** [131] - 3:10, 3:16, 3:21, 3:23, 4:24, 5:7, 5:12, 5:20, 5:24, 6:1, 6:11, 8:13, 8:25, 9:18, 10:9, 11:3, 11:14, 12:12, 13:2, 13:6, 15:10, 17:8, 17:10, 18:6, 18:9, 18:20, 18:22, 22:22, 23:6, 23:21, 23:22,

23:24, 24:15, 24:19, 25:4, 25:18, 26:17, 27:10, 27:23, 28:4, 28:14, 29:9, 29:23, 30:21, 30:24, 31:16, 31:23, 32:5, 32:8, 32:11, 33:8, 33:18, 34:7, 34:11, 34:17, 35:19, 37:9, 39:11, 39:24, 40:4, 40:8, 40:12, 42:13, 44:6, 44:10, 45:7, 45:23, 46:18, 48:10, 48:13, 48:23, 49:8, 50:7, 50:8, 51:12, 51:17, 53:4, 54:6, 54:25, 55:3, 56:14, 56:19, 56:23, 57:21, 58:8, 58:16, 58:20, 59:6, 59:22, 60:19, 61:5, 61:23, 62:9, 63:2, 63:25, 64:20, 64:21, 65:10, 66:12, 68:1, 68:18, 69:10, 69:13, 69:20, 69:23, 70:15, 71:5, 71:14, 71:18, 72:19, 73:17, 73:22, 74:9, 75:5, 75:15, 75:19, 76:4, 76:5, 76:17, 76:23, 77:6, 77:15, 77:17, 77:22, 78:14, 78:19, 78:22, 79:3, 79:11, 79:12, 79:13

**N**

**name** [3] - 4:7, 52:8, 52:9
**names** [2] - 74:25, 75:25
**nationwide** [1] - 52:18
**natural** [10] - 52:14, 53:1, 53:3, 54:6, 54:7, 54:8, 54:16, 54:17, 55:22, 57:24
**naturally** [1] - 34:14
**nature** [4] - 26:7, 38:7, 38:12, 39:17
**nearly** [3] - 8:6, 37:12, 38:25
**necessarily** [6] - 10:10, 17:25, 22:5, 46:15, 51:20, 52:12
**necessary** [6] - 12:19, 36:25, 49:20, 56:12, 57:6, 58:7
**need** [37] - 9:8, 9:16, 10:6, 17:1, 17:3, 18:24, 23:12, 26:16,

30:4, 31:1, 31:19, 33:2, 33:3, 35:23, 36:17, 41:22, 42:2, 43:20, 44:4, 48:17, 49:3, 53:11, 55:17, 55:24, 57:15, 57:18, 62:11, 63:10, 63:13, 63:23, 66:6, 67:6, 68:22, 71:3, 76:9, 76:16
**needed** [3] - 16:20, 16:22, 49:12
**needing** [1] - 8:4
**needs** [3] - 6:17, 32:13, 33:23
**negotiate** [1] - 53:13
**negotiations** [1] - 17:18
**neighborhood** [1] - 36:12
**net** [2] - 16:9, 61:10
**network** [1] - 38:21
**neutral** [2] - 45:21, 67:17
**never** [3] - 13:19, 51:3, 51:4
**NEW** [1] - 1:1
**new** [2] - 25:6, 52:16
**New** [11] - 1:11, 2:15, 16:1, 36:24, 37:1, 37:25, 38:3, 38:5, 43:21, 77:24, 80:5
**Newark** [3] - 1:11, 2:12, 3:24
**next** [2] - 58:24, 59:8
**NJ** [2] - 2:3, 2:12
**non** [4] - 36:5, 57:24, 76:6, 76:8
**non-CMSO** [1] - 76:8
**non-natural** [1] - 57:24
**non-urban** [1] - 36:5
**none** [1] - 64:15
**normal** [4] - 8:10, 8:11, 12:14, 47:18
**normally** [2] - 46:13, 51:24
**note** [1] - 40:13
**noted** [2] - 25:20, 70:3
**nothing** [4] - 73:5, 73:9, 78:14, 78:22
**notice** [3] - 51:25, 61:13, 62:16
**number** [30] - 3:7, 4:13, 9:2, 16:12, 19:5, 19:8, 24:6, 30:7, 34:20, 35:13, 46:25, 48:3, 49:3, 49:16, 49:20, 49:23, 50:20, 50:25, 59:15,

59:21, 59:23, 60:14, 60:18, 61:10, 61:11, 61:16, 69:25, 70:3, 73:7, 73:8
**NUMBER** [1] - 1:4
**numbers** [4] - 21:17, 21:18, 38:23, 59:10
**numerous** [1] - 25:25
**nursing** [3] - 17:13, 17:14, 25:24
**NW** [2] - 1:19, 2:6
**NY** [1] - 2:15

**O**

**object** [2] - 22:19, 63:22
**objected** [1] - 66:24
**objection** [5] - 20:12, 22:22, 24:15, 33:8, 58:5
**objections** [8] - 15:17, 15:21, 16:6, 18:11, 18:13, 20:23, 23:4, 33:7
**obstacle** [2] - 11:10, 18:5
**obtained** [1] - 39:15
**obvious** [2] - 6:19, 19:8
**obviously** [8] - 17:22, 21:25, 33:19, 43:18, 43:19, 44:17, 56:12, 57:4
**OF** [2] - 1:1, 1:18
**offended** [1] - 79:4
**offer** [2] - 73:24, 74:2
**offered** [1] - 62:14
**Office** [1] - 1:10
**OFFICIAL** [1] - 80:1
**Official** [2] - 80:3, 80:16
**officials** [1] - 19:1
**often** [6] - 25:18, 25:22, 26:17, 31:3, 52:11, 60:20
**oftentimes** [1] - 52:3
**on-the-line** [1] - 18:25
**once** [2] - 6:21, 21:14
**one** [43] - 4:23, 5:1, 6:24, 9:22, 15:12, 17:12, 25:6, 25:9, 26:11, 27:5, 27:20, 27:25, 33:9, 33:11, 36:16, 36:22, 37:25, 39:11, 39:25, 46:7, 46:18, 47:16, 48:18, 49:10, 49:22, 56:23, 61:7, 61:13, 63:7, 63:12, 64:8, 65:14,

67:1, 67:16, 70:17, 70:18, 71:24, 73:7, 77:22, 78:5
**one-sided** [2] - 46:7, 67:1
**ones** [1] - 69:18
**open** [1] - 76:24
**opening** [3] - 29:21, 31:1, 32:1
**opinion** [4] - 20:24, 20:25, 21:12, 34:6
**opportunity** [14] - 23:10, 24:21, 28:11, 28:16, 44:13, 52:5, 56:12, 56:25, 57:7, 64:4, 64:9, 66:20, 67:20, 67:24
**oppose** [1] - 77:13
**opposed** [1] - 46:13
**opposing** [1] - 12:6
**opposite** [1] - 16:15
**opposition** [10] - 27:7, 27:20, 28:24, 29:15, 30:16, 30:17, 33:15, 33:16, 66:22
**order** [14] - 4:17, 4:18, 4:21, 5:14, 14:17, 18:17, 24:17, 26:11, 49:24, 55:24, 77:4, 77:8, 78:4, 79:9
**ordered** [1] - 77:7
**orderly** [2] - 19:15, 29:7
**orders** [1] - 30:7
**organization** [2] - 15:3, 75:14
**originally** [2] - 24:11, 61:1
**otherwise** [3] - 45:2, 45:22, 74:25
**ourselves** [2] - 51:17, 54:4
**outcome** [1] - 80:11
**overall** [3] - 5:9, 29:12, 31:17
**overlap** [4] - 26:4, 60:1, 60:4, 60:16
**own** [6] - 28:11, 37:19, 61:14, 62:11, 62:17, 62:22

**P**

**pages** [3] - 25:25, 30:7, 30:8
**pandemic** [25] - 12:20, 14:22, 14:24, 15:2, 15:14, 15:24, 16:3, 16:10, 16:13, 16:18, 16:22, 16:23, 16:24,

17:1, 17:2, 17:5,
18:3, 19:25, 22:1,
22:16, 24:6, 37:5,
44:2, 56:5
**pandemic-related** [1]
- 22:1
**paper** [2] - 21:1, 65:19
**papers** [2] - 28:23,
31:2
**paperwork** [1] - 16:23
**paragraph** [4] - 71:19,
71:25, 73:12
**parenthetically** [1] -
45:23
**Park** [2] - 2:3, 2:15
**Part** [4] - 9:5, 9:8,
10:11, 11:20
**part** [7] - 28:6, 36:25,
41:6, 46:22, 56:20,
64:2, 72:7
**partial** [1] - 72:4
**particular** [7] - 11:9,
35:11, 35:12, 35:25,
39:9, 41:14, 75:3
**particularly** [5] - 15:5,
24:25, 47:24, 52:17,
52:21
**parties** [49] - 4:10,
4:22, 5:17, 6:5, 6:9,
7:13, 8:8, 8:12, 11:9,
12:24, 13:1, 14:8,
15:22, 17:4, 18:12,
19:19, 21:25, 22:3,
26:11, 26:25, 27:3,
33:2, 35:8, 37:14,
37:16, 38:25, 41:20,
47:2, 49:20, 50:14,
50:15, 51:6, 51:19,
54:11, 57:12, 58:12,
60:7, 61:14, 61:23,
62:15, 63:6, 64:16,
64:24, 65:25, 69:7,
70:18, 73:25, 80:10
**PARTIES** [1] - 1:15
**parties'** [2] - 24:9,
64:18
**partner** [2] - 3:18,
42:16
**parts** [2] - 6:14, 41:10
**party** [16] - 12:19,
15:15, 18:15, 18:24,
19:5, 19:24, 21:10,
22:14, 38:9, 46:23,
46:25, 47:2, 53:16,
55:16, 65:2, 71:10
**past** [5] - 26:1, 28:10,
29:1, 36:15, 42:19
**patients** [2] - 14:12,
41:10
**PAUL** [1] - 2:2

**Paul** [17] - 3:17, 5:8,
9:18, 15:10, 18:9,
23:6, 28:4, 29:9,
34:11, 44:6, 46:19,
51:12, 61:5, 63:25,
68:18, 72:19, 77:16
**Paul.Saint** [1] - 2:4
**Paul.Saint-Antoine
@faegredrinker.
com** [1] - 2:4
**payor** [2] - 39:12,
39:16
**payors** [7] - 38:14,
39:6, 39:9, 39:16,
39:19, 40:2, 41:21
**Pennsylvania** [2] -
1:19, 15:20
**people** [26] - 15:9,
16:16, 17:21, 18:4,
35:22, 43:4, 43:23,
43:24, 45:24, 48:3,
49:3, 49:15, 60:11,
60:14, 60:16, 62:20,
62:21, 62:23, 63:16,
65:23, 68:6, 69:25,
72:10, 73:9, 74:25,
75:7
**per** [5] - 36:14, 40:14,
43:12, 59:11, 71:1
**percent** [2] - 43:18,
52:12
**perhaps** [1] - 31:24
**period** [4] - 14:13,
14:14, 27:25, 70:18
**periods** [1] - 27:24
**permit** [1] - 57:24
**permitting** [1] - 44:3
**person** [24] - 16:19,
16:21, 20:17, 45:13,
51:21, 51:22, 52:9,
52:24, 53:3, 53:13,
53:15, 54:2, 54:7,
54:16, 54:17, 54:18,
55:8, 55:11, 55:12,
55:23, 57:19, 57:24,
63:9, 75:3
**person's** [2] - 20:18,
54:8
**personal** [1] - 54:19
**persons** [11] - 52:14,
53:2, 59:12, 59:13,
61:3, 62:3, 72:24,
75:3, 75:11, 75:12,
75:13
**perspective** [12] - 5:3,
5:21, 7:23, 17:22,
26:24, 41:3, 42:9,
43:6, 57:23, 66:10,
74:17, 75:5
**pertinent** [1] - 50:13

**phone** [4] - 17:6, 20:7,
70:20
**piece** [3] - 22:24,
22:25, 25:25
**Pinnacle** [1] - 36:1
**place** [8] - 5:18, 6:4,
7:5, 10:17, 15:13,
55:14, 68:11, 80:8
**places** [2] - 6:20, 6:21
**plaintiff** [7] - 9:20,
28:15, 35:7, 37:12,
37:21, 47:6, 65:6
**Plaintiff** [2] - 1:4, 1:21
**plaintiff's** [5] - 21:19,
28:7, 29:14, 59:11,
65:6
**plaintiffs** [4] - 12:16,
22:6, 28:12, 34:23
**play** [1] - 36:19
**playing** [2] - 19:22,
35:12
**plays** [1] - 19:21
**pleasure** [2] - 78:16,
78:25
**plenty** [1] - 26:24
**plus** [9] - 59:14, 59:24,
60:2, 60:4, 61:14,
62:3, 62:24, 69:18
**point** [26] - 15:12,
15:25, 17:16, 27:12,
36:22, 37:10, 37:17,
37:25, 41:1, 42:24,
42:25, 44:8, 46:10,
46:18, 47:3, 48:22,
48:23, 50:15, 50:24,
51:8, 52:7, 53:3,
56:2, 56:3, 68:23,
77:22
**pointed** [2] - 35:10,
37:11
**political** [1] - 41:14
**position** [16] - 20:4,
27:6, 27:11, 35:2,
43:10, 47:14, 49:3,
51:9, 52:13, 59:11,
59:13, 62:18, 65:6,
65:8, 69:12, 75:14
**positioning** [1] - 62:21
**positions** [1] - 75:25
**possession** [1] -
46:14
**possible** [6] - 12:24,
28:18, 32:12, 32:18,
32:23, 33:10
**Post** [1] - 1:10
**potential** [4] - 35:4,
38:21, 47:21, 59:24
**potentially** [2] - 36:21,
59:16
**practical** [9] - 13:14,

14:2, 14:3, 14:10,
14:16, 61:25, 62:20,
68:10, 70:11
**practice** [2] - 12:25,
15:18, 15:20, 15:21,
53:18
**practicing** [1] - 16:13
**practitioners** [2] -
16:12, 19:1
**pre** [1] - 37:12
**pre-complaint** [1] -
37:12
**preclude** [2] - 16:4,
33:25
**prefer** [2] - 27:1, 70:21
**prejudicial** [1] - 73:3
**preliminary** [56] -
5:18, 6:8, 6:16, 7:1,
7:16, 7:20, 7:25, 8:1,
8:4, 9:11, 9:17, 10:7,
10:17, 10:22, 10:25,
11:2, 11:4, 12:2,
12:3, 12:9, 13:8,
13:10, 13:16, 13:18,
13:21, 14:7, 20:5,
20:8, 20:11, 21:5,
23:5, 34:20, 34:23,
35:2, 35:17, 35:20,
36:2, 36:14, 46:20,
47:4, 47:5, 48:8,
48:14, 48:17, 50:3,
51:14, 52:6, 56:17,
60:17, 61:1, 61:3,
61:8, 61:11, 61:18,
62:6
**preparation** [1] - 4:14
**prepare** [3] - 43:7,
43:10, 48:4
**prepared** [1] - 67:2
**Presbyterian** [1] -
37:25
**present** [3] - 12:22,
44:13, 66:15
**PRESENT** [1] - 1:15
**presentation** [1] -
29:7
**preserved** [1] - 78:3
**pressures** [1] - 17:2
**presume** [2] - 66:2,
66:8
**pretty** [1] - 42:17
**price** [2] - 37:3, 40:20
**primarily** [1] - 62:7
**primary** [4] - 30:6,
39:5, 40:3, 69:2
**private** [4] - 39:7,
40:3, 40:7, 53:18
**privilege** [14] - 72:2,
72:8, 72:16, 72:21,
73:4, 73:14, 73:15,

75:1, 75:3, 75:10,
75:11, 75:12, 75:17,
75:24
**privileged** [2] - 72:24,
73:1
**pro** [1] - 11:18
**pro-competitive** [1] -
11:18
**probing** [1] - 39:22
**problem** [8] - 19:8,
22:2, 22:9, 62:10,
63:24, 64:6, 64:10,
70:17
**problems** [3] - 6:20,
23:11, 24:2
**Procedure** [1] - 8:24
**proceeding** [12] -
5:13, 6:17, 7:2, 7:20,
8:9, 8:20, 9:2, 10:11,
11:4, 11:20, 14:19,
19:17
**proceedings** [6] -
7:24, 8:23, 13:16,
14:7, 79:14, 80:6
**PROCEEDINGS** [1] -
3:1
**process** [3] - 53:7,
63:20, 72:13
**produce** [1] - 73:23
**produced** [2] - 16:21,
72:9
**produces** [1] - 16:22
**producing** [1] - 22:8
**product** [2] - 33:4,
36:4
**production** [1] - 22:11
**programs** [1] - 40:6
**prohibition** [1] - 16:2
**promise** [4] - 72:4,
72:7, 72:12, 74:3
**proof** [1] - 32:14
**properly** [1] - 43:7
**proposal** [11] - 4:16,
7:19, 11:3, 28:9,
30:20, 35:25, 40:14,
40:15, 43:3, 56:17,
61:19
**propose** [5] - 9:10,
22:20, 34:24, 60:12,
64:8
**proposed** [13] - 4:20,
10:18, 19:9, 22:14,
22:18, 26:10, 28:6,
61:9, 68:9, 72:6,
72:21, 73:11, 76:10
**proposing** [9] - 7:7,
9:20, 12:17, 24:10,
31:25, 32:3, 36:14,
48:25, 49:5
**prosecute** [1] - 51:10

prosecuting [1] - 45:25

prospect [3] - 28:10, 61:13, 64:5

Protection [1] - 78:2

protective [2] - 18:17, 77:8

prove [5] - 20:2, 21:3, 21:4

provide [8] - 15:12, 15:25, 26:12, 34:9, 41:18, 72:5, 72:24, 74:24

provided [4] - 10:2, 14:23, 26:13, 65:2

providers [10] - 12:19, 15:16, 15:18, 16:3, 17:18, 37:1, 38:14, 38:18, 39:7, 49:24

provision [2] - 60:22, 72:11

provisions [3] - 63:15, 63:21, 71:20

proviso [3] - 21:24, 25:1, 61:7

public [1] - 14:12

pull [1] - 71:22

pulled [1] - 52:19

purpose [4] - 4:9, 71:7, 72:7

Purrino [2] - 79:2, 79:3

push [2] - 6:6, 6:8

put [8] - 5:5, 16:16, 19:13, 21:8, 53:20, 65:18, 67:7, 76:13

puts [4] - 27:14, 28:25, 54:3, 62:18

putting [6] - 12:1, 19:17, 25:21, 39:1, 43:1, 60:6

**Q**

qualified [1] - 20:17

quality [1] - 40:22

quicker [1] - 76:15

quickly [4] - 6:8, 38:22, 69:21, 76:12

quite [4] - 25:23, 41:11, 41:23, 76:7

quote [1] - 65:23

**R**

raise [6] - 5:2, 25:15, 25:22, 51:14, 76:8, 77:10

raised [3] - 13:3, 14:24, 40:5

ran [1] - 26:21

range [1] - 44:14

rather [4] - 29:8, 33:2, 54:2, 58:3

re [1] - 53:9

re-depose [1] - 53:9

reach [2] - 57:12, 57:14

reaching [1] - 72:8

reactions [1] - 68:1

read [3] - 27:7, 28:2, 78:12

ready [3] - 57:22, 59:4, 73:11

real [2] - 23:16, 64:23

realistic [1] - 36:9

realities [2] - 28:12, 39:3

reality [5] - 37:2, 41:8, 49:23, 54:17, 71:6

realizing [1] - 22:16

really [13] - 16:25, 48:4, 54:1, 61:25, 63:5, 64:16, 67:10, 68:8, 68:21, 69:1, 71:7, 73:5, 77:22

reason [12] - 7:18, 13:14, 14:1, 21:25, 22:7, 23:16, 23:19, 32:13, 40:19, 57:17, 66:24, 71:4

reasonable [6] - 23:15, 44:3, 46:25, 49:13, 55:23, 74:13

reasons [8] - 14:3, 20:25, 22:20, 23:14, 23:18, 24:6, 55:4, 72:10

REATH [2] - 2:2, 2:5

Reath [1] - 3:17

receive [2] - 25:23, 74:4

received [6] - 10:11, 16:7, 45:3, 45:6, 65:14, 74:5

recently [4] - 16:2, 23:18, 52:20, 60:9

recommendation [1] - 78:1

reconcile [1] - 23:7

reconfigure [1] - 76:11

record [13] - 3:5, 4:8, 5:5, 8:2, 9:15, 9:16, 10:6, 10:24, 11:6, 11:17, 20:1, 20:21, 39:14

records [1] - 55:16

reference [6] - 15:12, 15:25, 25:24, 37:25,

47:3, 79:4

referenced [9] - 7:4, 15:22, 17:11, 26:1, 26:21, 63:7, 65:14, 68:20, 69:1

references [1] - 38:3

refused [1] - 63:21

regarding [2] - 32:15, 40:22

registering [1] - 8:14

rehab [1] - 17:12

reinstated [1] - 16:1

related [9] - 5:1, 6:20, 16:15, 16:23, 22:1, 51:14, 73:23, 76:23, 80:9

relationships [1] - 56:8

relative [1] - 78:13

releasing [1] - 75:6

relevant [8] - 20:18, 28:7, 38:8, 38:17, 38:19, 47:7, 70:1, 73:9

rely [1] - 39:20

relying [1] - 55:15

rendered [1] - 5:19

replacements [1] - 37:3

reply [9] - 21:20, 27:7, 28:25, 30:18, 31:2, 31:6, 33:16, 33:17

report [9] - 4:16, 25:19, 25:25, 29:14, 29:15, 29:20, 31:20, 32:1, 33:17

Reporter [3] - 42:12, 80:4, 80:16

REPORTER'S [1] - 80:1

reports [16] - 25:21, 26:7, 26:16, 27:15, 27:18, 27:19, 27:20, 27:24, 28:9, 29:2, 30:12, 33:10, 33:11, 33:14, 33:15, 55:16

represent [1] - 33:4

representative [1] - 53:23

representatives [1] - 62:25

request [5] - 33:9, 73:14, 73:16, 74:6, 74:7

requested [1] - 24:12

requesting [1] - 50:11

requests [4] - 19:19, 23:12, 77:1, 77:5

required [2] - 73:14, 73:23

reserve [2] - 20:14, 64:9

reserving [1] - 34:5

resolution [2] - 11:20, 14:7

resolve [1] - 18:15

resolved [1] - 25:10

resources [2] - 15:23, 74:19

respect [3] - 9:23, 40:13, 73:4

respectfully [1] - 14:9

respond [12] - 15:23, 17:8, 17:9, 26:3, 26:6, 27:13, 27:25, 30:5, 39:24, 40:9, 69:20, 77:23

response [3] - 18:18, 37:10, 74:8

responsibilities [1] - 74:14

restraints [1] - 6:8

result [1] - 36:21

revert [2] - 68:12, 70:14

reverting [1] - 68:10

review [7] - 4:9, 4:14, 6:5, 65:19, 65:20, 78:3

revised [1] - 79:8

revision [1] - 76:14

revisit [1] - 47:10

RMR [1] - 1:23, 80:3, 80:15

roll [1] - 19:2

roll-out [1] - 19:2

room [2] - 25:5, 27:2

round [1] - 20:2

RPR [3] - 1:23, 80:3, 80:15

rule [4] - 7:11, 21:6, 52:23, 66:3

Rule [2] - 45:19, 46:13

rules [1] - 13:10

Rules [1] - 8:24

ruling [2] - 16:11, 21:7

rulings [1] - 34:3

run [2] - 19:4, 24:1

runs [1] - 25:25

**S**

safety [2] - 16:9, 61:10

Saint [25] - 3:17, 5:8, 9:19, 14:5, 15:11, 18:10, 23:6, 24:18, 28:5, 29:10, 31:15, 34:12, 37:8, 44:7, 46:19, 51:13, 53:7, 58:18, 61:5, 63:25,

68:19, 70:2, 72:20, 77:16, 78:17

SAINT [47] - 2:2, 3:16, 3:21, 5:7, 5:24, 9:18, 10:9, 11:3, 11:14, 12:12, 15:10, 18:9, 23:6, 23:21, 24:19, 28:4, 29:9, 31:16, 31:23, 32:5, 34:11, 37:9, 39:11, 40:4, 44:6, 44:10, 46:18, 48:23, 50:7, 51:12, 51:17, 54:6, 58:20, 61:5, 63:25, 64:21, 68:18, 69:10, 69:13, 71:5, 72:19, 74:9, 75:15, 76:4, 77:15, 78:19, 79:12

Saint-Antoine [24] - 3:17, 5:8, 9:19, 14:5, 15:11, 18:10, 23:6, 24:18, 28:5, 29:10, 31:15, 34:12, 37:8, 44:7, 46:19, 51:13, 53:7, 58:18, 61:5, 63:25, 68:19, 72:20, 77:16, 78:17

SAINT-ANTOINE [47] - 2:2, 3:16, 3:21, 5:7, 5:24, 9:18, 10:9, 11:3, 11:14, 12:12, 15:10, 18:9, 23:6, 23:21, 24:19, 28:4, 29:9, 31:16, 31:23, 32:5, 34:11, 37:9, 39:11, 40:4, 44:6, 44:10, 46:18, 48:23, 50:7, 51:12, 51:17, 54:6, 58:20, 61:5, 63:25, 64:21, 68:18, 69:10, 69:13, 71:5, 72:19, 74:9, 75:15, 76:4, 77:15, 78:19, 79:12

Saint-Antoine's [1] - 70:2

sake [2] - 39:2, 50:22

save [1] - 27:12

saw [2] - 27:6, 64:23

scenario [1] - 64:3

schedule [14] - 12:16, 14:16, 19:9, 19:15, 25:11, 25:20, 27:12, 28:16, 29:12, 31:17, 32:20, 34:10, 34:15, 34:18

scheduled [1] - 6:3

scheduling [9] - 4:10, 4:11, 4:21, 5:9, 25:17, 26:11, 78:6,

78:7, 79:8
**scope** [3] - 8:22, 41:14, 41:16
**second** [7] - 17:16, 41:6, 56:20, 68:8, 73:14, 74:6, 77:6
**see** [8] - 16:11, 19:20, 32:16, 33:6, 35:12, 36:9, 36:25, 56:9
**seek** [3] - 17:17, 50:12, 72:5
**seem** [2] - 28:19, 29:16
**self** [2] - 38:16, 39:7
**self-insurance** [1] - 39:7
**self-insured** [1] - 38:16
**send** [1] - 76:14
**sending** [1] - 58:3
**senior** [1] - 18:25
**sense** [23] - 5:9, 9:15, 10:5, 10:21, 10:23, 11:16, 33:5, 44:10, 47:12, 48:7, 48:13, 48:18, 48:19, 49:7, 51:11, 58:21, 64:6, 65:1, 67:20, 67:23, 68:16, 74:21, 74:24
**sensible** [2] - 14:16, 67:10
**sent** [1] - 31:3
**separate** [2] - 7:10, 34:3
**separately** [1] - 54:9
**sequence** [2] - 9:21, 28:3
**sequencing** [1] - 28:6
**sequential** [8] - 27:6, 27:16, 28:16, 28:21, 30:3, 30:6, 31:4
**serve** [5] - 12:25, 19:11, 51:24, 71:7, 71:10
**serving** [4] - 3:25, 77:1, 77:4, 79:7
**set** [12] - 5:14, 6:14, 23:4, 24:4, 27:20, 31:1, 48:8, 48:16, 57:11, 65:18, 71:15, 80:8
**setting** [1] - 53:8
**seven** [1] - 70:18
**seven-hour** [1] - 70:18
**several** [5] - 4:19, 38:10, 47:1, 47:24, 47:25
**shenanigans** [1] - 52:19
**short** [1] - 67:6
**shot** [1] - 70:17

**show** [2] - 11:17, 76:14
**side** [15] - 21:4, 27:14, 34:25, 36:14, 40:15, 43:12, 46:15, 48:4, 57:9, 59:11, 61:13, 66:20, 67:4, 71:16
**side's** [1] - 34:24
**sided** [2] - 46:7, 67:1
**sides** [8] - 27:8, 28:10, 35:10, 57:17, 57:18, 64:6, 67:11, 68:9
**sides'** [3] - 47:15, 61:15, 62:8
**sign** [1] - 76:15
**significant** [4] - 16:17, 37:20, 41:11, 44:11
**significantly** [2] - 11:25, 32:21
**similar** [6] - 8:25, 9:4, 24:19, 36:3, 36:15, 48:24
**similarly** [1] - 67:5
**simply** [4] - 7:3, 18:13, 38:23, 70:12
**simultaneous** [6] - 27:11, 27:15, 27:18, 27:19, 28:9, 30:2
**simultaneously** [4] - 25:19, 27:9, 28:18, 34:4
**single** [2] - 36:4
**single-geographic** [1] - 36:4
**single-product** [1] - 36:4
**situated** [1] - 37:11
**situation** [2] - 24:5, 24:22
**six** [2] - 36:8, 42:6
**six-day** [1] - 36:8
**size** [3] - 46:20, 46:24, 47:19
**slight** [1] - 30:22
**slightly** [2] - 29:5, 53:6
**small** [4] - 37:3, 37:22, 39:2, 77:22
**smaller** [4] - 17:14, 61:8, 61:18, 69:15
**solely** [1] - 62:6
**solutions** [1] - 18:12
**someone** [1] - 65:14
**sometimes** [3] - 45:24, 46:1, 73:25
**somewhere** [1] - 36:12
**soon** [1] - 55:23
**sooner** [1] - 57:23
**sorry** [4] - 32:9, 42:11,

56:19, 76:21
**sort** [12] - 6:13, 7:18, 7:21, 8:3, 37:1, 44:2, 48:17, 58:21, 61:10, 63:3, 64:3, 68:15
**sounds** [1] - 10:20
**source** [2] - 61:19, 69:2
**sources** [2] - 38:17, 47:7
**Southern** [1] - 15:6
**speaking** [2] - 49:2, 77:18
**specific** [1] - 8:16
**specifics** [1] - 74:10
**spent** [2] - 46:2, 46:3
**spirit** [1] - 75:7
**split** [4] - 56:25, 64:22, 65:2, 66:11
**spoken** [1] - 69:14
**sponsored** [1] - 40:7
**spot** [2] - 54:4, 70:21
**spots** [1] - 54:1
**Square** [1] - 1:10
**stage** [3] - 47:21, 50:12, 50:18
**stake** [1] - 38:16
**stand** [1] - 71:21
**standards** [1] - 37:19
**start** [17] - 5:6, 5:9, 9:19, 10:4, 10:19, 10:22, 21:14, 21:22, 21:23, 23:4, 24:13, 35:17, 42:3, 77:1, 77:4, 78:17, 79:7
**started** [1] - 10:16
**starting** [3] - 3:9, 4:23, 31:14
**statements** [1] - 54:24
**STATES** [2] - 1:1, 1:13
**States** [3] - 3:2, 15:5, 80:4
**status** [2] - 4:16, 77:11
**statute** [1] - 7:3
**stay** [4] - 5:18, 7:10, 10:14, 10:17
**stenographically** [1] - 80:7
**step** [1] - 21:9
**stick** [1] - 35:9
**still** [4] - 19:10, 25:5, 31:10, 32:21
**stipulated** [2] - 5:16, 5:18
**stop** [1] - 47:21
**Strawn** [3] - 4:1, 4:3
**STRAWN** [1] - 2:14
**Street** [2] - 2:6, 2:11
**strike** [1] - 11:16,

24:20
**striving** [1] - 23:7
**study** [1] - 32:13
**submission** [2] - 29:14, 31:11
**submissions** [1] - 27:19
**submit** [12] - 20:16, 26:16, 26:18, 26:22, 27:8, 30:15, 30:16, 42:1, 42:2, 72:4, 74:2, 76:2
**submitted** [4] - 4:15, 18:18, 59:25, 63:8
**submitting** [1] - 30:11
**subpoenas** [2] - 12:25, 37:1
**subset** [2] - 69:17, 70:7
**substance** [1] - 8:21
**substantial** [2] - 37:13, 73:4
**substantive** [1] - 4:11
**substitute** [1] - 52:8
**suburban** [1] - 36:5
**sufficient** [2] - 29:21, 59:18
**suggest** [5] - 30:21, 44:2, 49:16, 57:25, 58:13
**suggested** [4] - 49:16, 49:18, 49:20, 71:20
**suggesting** [1] - 16:4, 62:24, 70:12
**suggestion** [3] - 57:22, 58:4, 64:1
**Suite** [1] - 2:6
**supplement** [3] - 34:25, 35:3, 51:1
**support** [12] - 20:3, 39:14, 39:21, 63:9, 64:25, 65:3, 65:13, 65:15, 65:16, 67:23, 69:18, 70:5
**supporting** [3] - 65:23, 65:24, 68:4
**supportive** [2] - 39:13, 68:8
**supports** [2] - 46:6, 77:25
**Supreme** [1] - 16:1
**surge** [2] - 15:7, 19:2
**surgeries** [1] - 16:16
**surprise** [1] - 36:21
**survive** [1] - 41:19
**sustained** [1] - 13:22
**sympathetic** [2] - 23:17, 23:20
**system** [2] - 12:1, 51:22

**systems'** [1] - 44:17

**T**

**tailor** [2] - 37:5, 43:23
**target** [1] - 51:20
**team** [1] - 76:18
**telephone** [1] - 3:1
**Telephone** [1] - 1:6
**TELEPHONE** [1] - 1:15
**temporary** [1] - 6:7
**tend** [1] - 60:23
**tender** [1] - 51:25
**tendered** [1] - 69:15
**term** [1] - 47:4
**terms** [8] - 12:16, 35:20, 38:23, 41:4, 41:23, 54:4, 55:24, 61:25
**testify** [6] - 6:20, 17:13, 41:25, 51:22, 54:19, 60:11
**testimony** [20] - 20:18, 21:15, 34:2, 37:16, 39:21, 39:22, 40:25, 42:18, 45:21, 45:24, 63:13, 63:16, 63:23, 65:14, 66:23, 68:2, 68:25, 71:9, 73:10, 80:7
**thankless** [1] - 75:24
**THE** [114] - 1:1, 1:13, 3:4, 3:14, 3:20, 3:22, 4:6, 5:4, 5:11, 5:15, 5:22, 6:2, 8:5, 8:22, 9:8, 9:24, 10:16, 11:13, 12:5, 13:5, 14:21, 16:8, 17:9, 17:24, 18:19, 18:21, 19:20, 23:2, 23:13, 23:23, 24:4, 24:17, 24:24, 25:13, 26:9, 26:25, 27:17, 28:1, 28:13, 29:17, 30:10, 30:19, 30:23, 31:8, 31:21, 32:3, 32:6, 32:9, 32:24, 33:13, 33:22, 34:9, 34:16, 34:19, 37:7, 39:5, 39:23, 39:25, 40:11, 42:10, 44:9, 44:25, 45:19, 46:10, 47:9, 48:12, 48:21, 50:3, 50:9, 51:16, 52:13, 54:15, 55:2, 55:25, 56:15, 56:22, 57:8, 58:5, 58:15, 58:18, 59:2, 59:8, 60:15, 60:24, 61:20, 62:2,

62:24, 64:11, 64:22, 67:12, 68:17, 69:4, 69:11, 69:22, 70:24, 71:6, 71:15, 72:18, 73:13, 73:20, 74:21, 75:9, 75:18, 75:23, 76:9, 76:19, 77:3, 77:12, 77:19, 78:9, 78:16, 78:21, 78:25, 79:6

**themselves** [2] - 38:9, 58:12

**theory** [1] - 67:19

**therefore** [1] - 14:15

**thinking** [2] - 28:17, 42:11

**third** [31] - 12:19, 12:24, 13:1, 15:15, 15:22, 18:12, 18:15, 18:24, 19:5, 19:19, 19:24, 21:25, 22:2, 37:14, 37:16, 38:25, 41:20, 47:1, 51:18, 53:16, 54:11, 55:16, 58:12, 60:7, 62:15, 63:6, 64:16, 65:2, 65:24, 69:7, 70:17

**third-party** [5] - 12:19, 15:15, 18:15, 18:24, 19:5

**thoughts** [1] - 37:10

**three** [7] - 8:17, 32:18, 32:23, 32:24, 67:16, 71:1, 71:11

**tight** [1] - 52:22

**tighten** [1] - 50:14

**timing** [1] - 20:6

**today** [6] - 3:25, 4:7, 19:23, 59:4, 66:9, 78:15

**today's** [1] - 4:9

**together** [2] - 27:14, 28:25

**ton** [1] - 30:8

**took** [2] - 55:14, 67:3

**tools** [1] - 44:21

**top** [4] - 7:25, 8:14, 47:1, 47:2

**topics** [1] - 52:24

**total** [6] - 35:1, 35:4, 36:6, 51:1, 51:11, 61:11

**totally** [1] - 55:18

**touch** [1] - 74:10

**towards** [2] - 37:5, 57:16

**Trade** [2] - 3:5, 46:22

**TRADE** [2] - 1:3, 1:18

**traditional** [2] - 6:23, 28:6

**traditionally** [2] - 10:11, 26:5

**transaction** [12] - 10:14, 11:6, 11:10, 11:17, 11:19, 13:19, 38:7, 38:17, 39:10, 39:13, 42:18, 65:21

**transcript** [3] - 13:25, 66:15, 80:6

**treat** [1] - 63:17

**treated** [1] - 7:1

**tremendous** [1] - 20:10

**trial** [37] - 6:15, 6:18, 7:2, 7:8, 7:14, 7:24, 8:2, 8:19, 9:12, 9:15, 10:2, 10:5, 10:19, 10:23, 10:24, 11:1, 11:13, 11:22, 13:7, 13:20, 13:24, 14:4, 25:6, 36:6, 40:13, 40:18, 40:21, 41:25, 42:6, 43:7, 47:6, 49:10, 49:12, 49:25, 50:14, 51:23, 53:24

**TRO** [7] - 5:16, 5:18, 6:4, 7:5, 10:13, 10:17, 12:2

**Tronox** [2] - 7:4, 7:13

**trouble** [2] - 22:7

**true** [1] - 80:6

**truthful** [1] - 66:18

**truthfully** [1] - 56:3

**try** [8] - 23:15, 24:3, 43:21, 63:14, 68:15, 70:19, 70:20, 76:1

**trying** [15] - 6:9, 6:20, 6:21, 11:16, 14:11, 15:23, 17:7, 22:14, 24:20, 30:10, 34:22, 46:8, 46:10, 51:7, 56:6

**turned** [3] - 7:15, 45:8

**turning** [1] - 45:4

**turns** [1] - 24:1

**tweak** [1] - 30:22

**two** [24] - 5:1, 6:14, 6:20, 6:21, 6:24, 7:24, 11:1, 22:3, 24:9, 24:11, 26:4, 27:24, 28:10, 30:15, 31:11, 31:12, 32:4, 38:13, 39:6, 40:12, 45:9, 66:20, 67:16, 68:1

**Two** [1] - 1:10

**twofold** [1] - 36:16

**type** [4] - 14:25, 39:9, 50:1, 66:9

**types** [3] - 16:6, 39:6,

56:8

# U

**U.S** [1] - 80:16

**ultimately** [1] - 20:2

**uncertainty** [1] - 51:7

**uncommon** [1] - 41:4

**under** [5] - 11:3, 12:14, 12:21, 45:17, 48:16

**underline** [1] - 56:5

**understandable** [2] - 55:4, 74:23

**understandably** [1] - 47:20

**understood** [3] - 12:12, 23:21, 34:7

**unfair** [1] - 62:19

**uniform** [1] - 42:17

**unique** [2] - 16:10, 54:20

**United** [3] - 3:2, 15:5, 80:4

**UNITED** [2] - 1:1, 1:13

**unlikely** [2] - 17:20, 47:24

**unlimited** [1] - 73:1

**unnecessarily** [1] - 50:18

**unnecessary** [2] - 21:9, 49:22

**unprecedented** [1] - 15:7

**unquote** [1] - 65:24

**unreasonable** [1] - 44:1

**unredacted** [1] - 77:10

**unseal** [1] - 77:7

**unsealed** [2] - 77:14, 77:19

**unsworn** [1] - 65:16

**unused** [1] - 68:9

**unworkable** [2] - 8:7, 22:21

**up** [25] - 8:10, 11:20, 13:17, 20:9, 22:13, 23:19, 29:6, 31:5, 35:1, 35:3, 36:6, 38:22, 44:8, 44:20, 47:17, 48:8, 50:14, 50:20, 51:18, 56:9, 60:6, 60:13, 60:22, 68:10, 76:18

**upcoming** [1] - 6:3

**urban** [2] - 36:5, 41:8

**useful** [1] - 35:9

**utilization** [1] - 40:23

# V

**vaccinate** [1] - 14:12

**vaccine** [1] - 19:2

**value** [1] - 18:13

**vast** [2] - 43:16, 45:1

**VAZQUEZ** [1] - 1:13, 3:2

**Vazquez** [1] - 3:4

**venture** [1] - 42:16

**verbally** [1] - 33:24

**verify** [1] - 55:16

**version** [1] - 77:10

**versus** [1] - 50:9

**via** [1] - 3:1

**VIA** [1] - 1:15

**viable** [1] - 44:14, 44:24

**view** [28] - 6:23, 7:4, 7:18, 8:8, 12:5, 20:5, 20:8, 21:5, 24:20, 27:18, 37:2, 37:22, 38:5, 39:4, 41:1, 44:12, 44:14, 48:24, 53:17, 59:21, 59:22, 60:25, 61:15, 61:22, 67:25, 69:11, 69:18

**views** [1] - 65:13

**virtually** [1] - 13:15

**vis-á-vis** [1] - 8:24

**volume** [1] - 30:4

**VORRASI** [2] - 2:6, 75:19

**Vorrasi** [6] - 3:19, 75:16, 75:18, 75:20, 75:23, 76:19

**vs** [2] - 1:5, 3:6

# W

**wait** [6] - 7:5, 8:12, 9:14, 10:6, 19:20, 77:3

**wants** [6] - 9:25, 10:1, 28:15, 37:21, 49:22, 55:20

**Washington** [3] - 1:20, 2:7, 38:1

**waste** [1] - 53:16

**ways** [1] - 65:4

**week** [8] - 25:6, 26:24, 27:1, 30:15, 30:18, 31:22, 58:14, 58:24

**weekend** [1] - 32:2

**weeks** [12] - 22:3, 23:11, 24:11, 30:15, 31:11, 31:12, 32:4, 32:18, 32:23, 32:24, 45:9, 45:11

**weight** [2] - 63:23,

66:1

**welcome** [1] - 79:1

**whereas** [1] - 12:21

**whole** [3] - 20:20, 34:2, 41:17

**Williams** [2] - 2:21, 3:12

**willing** [3] - 7:21, 9:14, 22:4

**Winstohn** [1] - 4:3

**WINSTON** [1] - 2:14

**Winston** [2] - 4:1

**withholds** [1] - 78:4

**witness** [71] - 34:21, 34:23, 34:25, 35:3, 35:6, 35:20, 36:2, 36:13, 36:17, 36:20, 40:13, 42:22, 43:3, 45:17, 46:21, 47:4, 47:10, 48:3, 48:8, 48:9, 48:14, 48:17, 48:25, 49:5, 49:10, 49:25, 50:4, 50:5, 51:14, 52:3, 52:6, 52:10, 53:9, 53:10, 53:23, 54:11, 55:18, 56:17, 57:1, 57:2, 57:7, 59:12, 59:24, 60:3, 60:5, 60:17, 61:2, 61:3, 61:8, 61:11, 61:14, 61:15, 61:19, 62:3, 62:6, 62:12, 62:13, 62:16, 62:25, 63:3, 63:9, 63:12, 64:12, 66:15, 66:16, 66:17, 66:22, 67:7, 71:8

**witnesses** [41] - 4:13, 6:20, 18:24, 35:17, 35:18, 36:1, 36:6, 36:10, 36:11, 36:18, 36:23, 37:2, 37:6, 38:8, 38:9, 38:10, 40:14, 41:20, 42:6, 43:2, 43:4, 43:11, 43:12, 46:23, 46:25, 47:3, 48:1, 50:4, 50:6, 50:25, 52:19, 53:19, 60:6, 60:21, 62:14, 63:7, 64:15, 67:13, 68:16, 74:20

**Word** [2] - 76:10, 76:16

**word** [1] - 56:5

**words** [5] - 16:24, 28:20, 45:5, 48:2, 67:2

**workable** [1] - 75:21

**works** [2] - 14:1, 23:24

**world** [1] - 70:6

**worried** [1] - 48:2
**worse** [1] - 42:14
**writing** [1] - 33:23
**written** [3] - 55:8, 77:4, 79:7
**wrote** [1] - 70:4

## Y

**year** [6] - 6:3, 14:3, 37:12, 38:25, 46:2, 46:3
**York** [7] - 2:15, 36:24, 37:1, 37:25, 38:3, 38:5, 43:21
**yourself** [1] - 10:20
**yourselves** [1] - 76:2

## Z

**zones** [1] - 15:5