

North America Europe Asia

1901 L Street, NW
Washington, DC 20036
T +1 202 282 5000
F +1 202 282 5100

**HEATHER LAMBERG**
Partner
+1 202 282 5274
HLamberg@winston.com

February 19, 2021

The Honorable James B. Clark, III
United States District Court
District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

Re: *Federal Trade Commission v. Hackensack Meridian Health, Inc., et al.*, No. 2:20-cv-18140-JMV-JBC – **Request to Compel Subpoena Compliance by the Hospital for Special Surgery**

Dear Judge Clark:

Defendant Englewood Healthcare Foundation ("Englewood") respectfully requests that the Court compel third party the New York Society for the Relief of the Ruptured and Crippled, Maintaining the Hospital for Special Surgery ("HSS") to comply with a subpoena to produce documents issued to HSS by Englewood on January 6, 2021.[1] Englewood and HSS have met and conferred extensively.[2] However, HSS has not produced a single document to date and finally informed Englewood this week that it does not intend to produce any documents. Given that discovery in this expedited preliminary injunction matter closes on March 12, Englewood requests that the Court resolve this dispute on an expedited basis at the already-scheduled status conference on February 24 at 2:00 p.m. or shortly thereafter.

As the Court is aware, this is an antitrust case concerning Englewood's pending merger with Co-Defendant Hackensack Meridian Health, Inc. ("HMH"). Plaintiff, the FTC, seeks to block the merger, alleging that it will reduce competition in an alleged relevant market for a cluster of "inpatient general acute care ('GAC') hospital services sold and provided" in an area "no broader than Bergen County, New Jersey." *See* Compl. ¶¶ 4, 32-42. Englewood and HMH oppose the injunction, dispute the FTC's alleged market definition and assert that their merger will have pro-competitive effects including improving the efficiency and quality of healthcare services they provide. The subpoena seeks discovery from HSS that Englewood believes will help establish HSS's significance as one of Defendants' many competitors and rebut the FTC's market definition and allegations of competitive harm.

The crux of HSS's refusal to respond to the subpoena is that HSS argues it is not a relevant competitor with Defendants, and is wholly irrelevant to this litigation, because it has a specialty in orthopedics and musculoskeletal conditions, such that it offers some, but not all, of the hospital services in the FTC's alleged inpatient GAC services market.[3]

HSS's argument is both legally wrong and belied by facts from existing discovery. First, HSS's argument ignores that who competes with Defendants and whether the FTC can prove its alleged market definition are core, disputed merits issues in this case. Englewood and HMH are entitled to discover rebuttal

[1] *See* Ex. 1, Subpoena to HSS (Jan. 6, 2021).
[2] Englewood and HSS counsel had written or phone communications on January 6, 8, 27, 30, February 1, 3, 4, 8, 9, 12 and 15.
[3] *See* Ex. 2, HSS's Objections and Responses (Jan. 27, 2021) ("R&Os").





evidence to dispute the FTC's allegations. Second, the existing record demonstrates that HSS is a significant, relevant competitor to Defendants that offers overlapping services and actively competes for patients from Northern New Jersey,[4] including through HSS's investment in its "HSS Paramus" outpatient facility that it has expressly stated is intended to feed patients to its inpatient hospital in New York. Moreover, Englewood's document requests are reasonably tailored to the needs of the case and seek discovery that is uniquely available from HSS. For the reasons explained further below, Englewood requests that HSS be ordered to respond substantively to Request Nos. 4-7, 9-10, 12 and 13 of the subpoena and produce all documents sufficiently in advance of the close of discovery.[5]

## I. The Relevant Market Is Disputed and Defendants Are Entitled to Rebuttal Evidence

Who competes with Defendants, and whether the FTC can prove its alleged market definition, are at the core of the contested merits issues in this case. "Determination of the relevant product and geographic markets is 'a necessary predicate' to deciding whether a merger contravenes the Clayton Act." *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 618 (1974). In order to establish even a *prima facie* case for an injunction (which can then be rebutted), the FTC must prove: (1) the relevant product market in which to assess the merger; (2) the geographic market in which to assess the merger; and then (3) that the effect of the merger in that market is likely to be anticompetitive. *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 337-38 (3d Cir. 2016). If the FTC fails to prove the relevant product or geographic market, its claims necessarily fail. *See, e.g., FTC v. Freeman Hosp.*, 69 F.3d 260, 268 (8th Cir. 1995).

Here, the relevant market is a contested issue. Englewood and HMH believe that the FTC's allegation that the geographic market is "no broader than Bergen County, New Jersey," (Compl. ¶ 37), is overly narrow and arbitrarily defined by a political boundary that does not take competitive real-world realities into account. Further, the alleged product market is a vaguely defined "cluster" of "hundreds of individual inpatient GAC hospital services," (Compl. ¶ 33), such that even the contours of what is alleged to be in or out of the cluster remains unclear and subject to dispute. Englewood and HMH intend to argue in their defense that they face vigorous competition, not only from hospitals located in Bergen County, but also from hospitals and health systems in New York City and the broader Northern New Jersey/New York area – and that HSS is a significant, relevant competitor.

HSS's argument that it does not fit neatly with the FTC's alleged market definition is not a basis to avoid discovery. Contrary to HSS's arguments, the Federal Rules do not start with the conclusion that the plaintiff's allegations are correct and then limit discovery only to facts that fit the plaintiff's theory. *See Groark v. Timek*, 989 F. Supp. 2d 378, 397 (D.N.J. 2013) ("Rule 26 does not limit discovery to evidence which tends to prove plaintiff's claim."). Rather, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims *or defense* and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added).

Indeed, in another recent FTC hospital merger challenge, *Jefferson/Einstein*, the Eastern District of Pennsylvania rejected a third party's attempt to avoid responding to a subpoena for documents based on almost identical arguments as HSS now asserts—arguing that it was "not a direct competitor" of defendants because its specialty services did not fall within the market alleged in the complaint. The court explained:

---

[4] "Northern New Jersey," as used in the subpoena, refers to Bergen, Essex, Hudson, and Passaic Counties.

[5] Englewood also reserves the right to seek a deposition of HSS after the close of discovery. Under the Case Management Order, ECF No. 61, the Parties are allowed limited depositions. Due to HSS's non-compliance with the document subpoena, Englewood has been unable to determine if deposing HSS is needed or to prepare adequately for such deposition.





> Shannondell [a third party] first contends that the subpoenas seek information that is not relevant because Shannondell "is not a direct competitor of Jefferson or Einstein." In making this argument, Shannondell relies on the Complaint's allegation that "subacute rehabilitation services provided at skilled nursing facilities are not included in the market for inpatient acute rehabilitation services." The information that the parties seek from Shannondell, however, is relevant to Einstein's rebuttal of Plaintiffs' claims.
>
> * * *
>
> The discovery requested from Shannondell is relevant to Einstein's defense concerning whether Shannondell, in fact, exists as a competitor for acute rehabilitation services in the proper relevant market. Indeed, because Einstein contends that Shannondell's services compete with those of Einstein and Jefferson, the subpoena requests are relevant to evaluating both the product and geographic market.

*Fed. Trade Comm'n v. Thomas Jefferson Univ.*, 2020 WL 3034809, at *2 (E.D. Pa. June 5, 2020) (*"Jefferson/Einstein*") (internal citations omitted).

This Court should likewise reject HSS's attempt to avoid the subpoena, and allow Englewood to develop evidence to rebut the Plaintiff's claims. As explained further below, HSS is clearly a major provider of health care services in the Northern New Jersey/New York area, and the question of whether it "exists as a competitor . . . in the proper relevant market" is a live factual dispute.

## II. HSS Competes for Northern New Jersey Patients—including from Bergen County—and Is Plainly Relevant to the FTC's Alleged Geographic and Product Markets

The existing discovery record and public information show that HSS clearly competes for patients from Bergen County. Yet the FTC's alleged Bergen County geographic market definition excludes HSS because HSS's main inpatient hospital is located across the bridge in New York City. Defendants seek discovery directly from HSS, as its unique documents are relevant to determine the extent to which HSS targets residents in Bergen County and Northern New Jersey, and to rebut the FTC's market allegations.

HSS has long operated its "HSS Main Campus" inpatient hospital in New York City, located just 13 miles from Englewood Hospital. Given HSS's proximity, it is not surprising that, over the last decade, HSS has specifically targeted Northern New Jersey—particularly Bergen County—for strategic investments and growth, including opening a large "HSS Paramus" outpatient center in Bergen County in 2014.[6] When HSS opened its Paramus facility, HSS's CEO explained that "***the New Jersey market is an important part of the hospital's growth strategy***."[7] While the Paramus facility provides outpatient care, it was clearly an intended and actual driver of patients needing inpatient services to the HSS Main Campus–as HSS's press release stated, "HSS already attract[ed] a large patient population from northern New Jersey" and "***if surgery is needed, it will be performed at the main hospital in Manhattan***."[8]

HSS's inpatient discharges reflect that this strategy has been successful. According to HSS's public filings, from 2015-2017, 19% of all HSS inpatient discharges were from patients residing in Northern/Central New Jersey.[9] This is the largest percentage of patients attributed to any region that HSS's

---

[6] Ex. 3, HSS, *Hospital for Special Surgery Opens New Location in Paramus, New Jersey* (Nov. 17, 2014), https://www.hss.edu/newsroom_hss-new-location-paramus-new-jersey.asp.
[7] *Id.*
[8] *Id.*
[9] Ex. 4, HSS Taxable Bonds, Series 2018, Offering Memorandum, App. A, at A-10 to A-11.





public filings break out. In light of its success in New Jersey, HSS further invested to expand its Paramus location in 2017.[10] And in 2018, HSS deepened its presence in Bergen County with a another new "strategic investment" to create the first Ivy Rehab HSS Physical Therapy Center of Excellence in Englewood.[11]

HSS's intentional, active competition for Northern New Jersey patients is further evident from its advertising—examples of which are attached as exhibits hereto. HSS has advertised in NJ Transit signage—a clear effort to target New Jersey commuters.[12] HSS also advertises in TV commercials broadcast in New Jersey, closing with the HSS logo underscored by text announcing its presence in "New York · New Jersey · Connecticut · Now in Florida".[13] These are just two examples drawn from public sources. Englewood seeks discovery of HSS's other advertising targeting Northern New Jersey patients.

Despite HSS' obvious presence as a competitor in New Jersey, HSS has taken the position that it is wholly irrelevant to this litigation and need not comply with Englewood's subpoena because HSS has a specialty in orthopedic and musculoskeletal services, and may not provide *each and every* service within the FTC's alleged inpatient GAC hospital services market. However, HSS plainly offers *many* competing services within that alleged market, such as operating an inpatient hospital with a wide array of medical, surgical, and diagnostic services, including operating rooms, anesthesia, 24-hour nursing care, and pharmaceuticals. *See* Compl. ¶ 32. HSS provides primary and secondary care, including services from neurologists, osteoporosis and metabolic bone physicians, pain management physicians, physiatrists, podiatrists, and primary sports medicine physicians.[14] And although HSS focuses on musculoskeletal conditions, its services still include those of anesthesiologists, internists, neurologists, pathologists, psychiatrists, psychologists, and radiologists. These are all services in which Englewood and HMH compete, along with many other hospitals in the Northern New Jersey/New York area.

Moreover, the FTC has expressly advocated that specialty hospitals should be included in relevant GAC services markets. Notably, in *Jefferson/Einstein*, ***the FTC included at least four specialized third-party hospitals in its alleged relevant GAC services markets***, including a specialized surgical hospital, two cancer specialist hospitals, and a children's hospital. *See, e.g.,* Pltfs' Proposed Findings of Fact & Conclusions of Law, *Fed. Trade Comm'n v. Thomas Jefferson Univ.*, No. 2:20-cv-01113-GJP, ECF No. 226 at 7-8 (E.D. Pa. Oct. 12, 2020) (including Physicians Care Surgical Hospital; Fox Chase Cancer Center; Cancer Treatment Centers of America, Philadelphia; and St. Christopher's Hospital for Children within alleged relevant GAC Services markets).[15]

---

[10] Ex. 5, HSS, *National Leader in Orthopedics Expands in Bergen County to Add Rehabilitation Services* (June 26, 2017), https://www.hss.edu/newsroom_hss-paramus-outpatient-center-rehabilitation.asp.

[11] Ex. 6, HSS, *HSS and Ivy Rehab to Create Physical Therapy Centers of Excellence Nationwide* (Aug. 15, 2018), https://news.hss.edu/hss-and-ivy-rehab-to-create-physical-therapy-centers-of-excellence-nationwide/.

[12] *See* Ex. 7, NJ Transit advertisement.

[13] *See* Ex. 8, commercial screenshot. HSS's full "How You Move" commercial is viewable on HSS's YouTube channel at https://www.youtube.com/watch?v=M2--c3PSZg8, posted on July 1, 2020. An attorney for Englewood has also observed this or a similar HSS commercial broadcast during local evening news in New Jersey as recently as February 17, 2021.

[14] *See* https: www.hss.edu/find-a-doctor.asp.

[15] HSS also wrongly argues it is irrelevant because some services it provides are "tertiary services" and it believes inpatient GAC services should be limited to primary and secondary services. *See* Ex. 2, R&Os Gen. Objs. 2, 3. Even if tertiary services were excluded, HSS still provides primary and secondary services and remains relevant. And the cases HSS cites also do not support its argument. In *FTC v. Butterworth Health Corporation*, tertiary services were included in the GAC inpatient services market. 946 F. Supp. 1285, 1297-98 (W.D. Mich. 1996) (discussing competition for tertiary services in market). In HSS's other cases, the issue was not disputed or resolved by the court. *See FTC v. Tenet Healthcare Corp.*, 17 F. Supp. 2d 937, 942 (E.D. Mo. 1998); *FTC v. OSF Healthcare Sys*, 852 F. Supp. 2d 1069, 1076 (N.D. Ill. 2012). Here, the Complaint expressly alleges that Defendants' investment in tertiary and quaternary care is a relevant form of competition. Compl. ¶¶ 58-60.





HSS' relevance is further supported by the fact that HSS falls unambiguously within the definition of "Inpatient GAC Hospital Services" used in the FTC's own subpoena to HSS.[16] The FTC's definitions are inconsistent with the notion that to be relevant for discovery purposes in a "cluster market" case, a competitor must provide all the clustered services. Indeed, the FTC defines "Relevant Services" to encompass "all Inpatient GAC Hospital Services, collectively and individually" and "Hospital" to be a provider of "Inpatient GAC Hospital Services, collectively or individually."[17] Under any of these definitions, HSS is a relevant provider of Inpatient GAC Hospital Services for discovery purposes, without regard to whether it is specialized in orthopedic and musculoskeletal issues.

## III. Englewood's Requests Are Tailored to Relevant Information HSS Uniquely Possesses

Englewood's document requests are tailored to relevant information that HSS uniquely possesses and not unduly burdensome. Due to HSS standing on its blanket relevance objection to the entire subpoena, discussions of particular requests have made only limited progress to date. However, Englewood has provided HSS information to narrow and clarify what it seeks with certain requests, in an effort to address HSS's objections and reduce any compliance burdens. Attached as Appendix A is a table summarizing Englewood's subpoena requests, the status of HSS's response (or lack thereof), and the narrowing clarifications Englewood has provided. As that Appendix reflects, HSS has not made a good faith effort to comply with Englewood's subpoena. HSS has not produced any documents and its only substantive response in writing has been to provide hyperlinks to its website in response to four requests.

Englewood asks the Court to order HSS to respond substantively—subject to the clarifications Englewood has offered HSS as identified in Appendix A—to the following Requests:

- **No. 4** (HSS's service area and market share);
- **Nos. 5-7** (HSS's strategic and business plans for Northern New Jersey);
- **Nos. 9-10 and 12** (HSS's efforts to contract with insurance payors for New Jersey-specific plans/networks)[18]; and
- **No. 13** (HSS's advertising targeting Northern New Jersey).[19]

These requests go to core issues in the case focused on discovering the extent of HSS's competition with Englewood and HMH. We believe the burden of responding to these requests is modest and reasonable, and HSS has not shown otherwise. Further, Englewood remains committed to meeting and conferring about any legitimate burden concerns even after the Court resolves HSS's blanket objection and orders HSS to respond to the subpoena.

Englewood appreciates the Court's expedited consideration of this letter and welcomes the opportunity to participate in an oral argument.

Respectfully submitted,
*/s/ Kerry C. Donovan*

---

[16] *See* Ex. 9, FTC Subpoena to HSS at D15; *see also id.* at D16 (defining "Inpatient Services").
[17] *Id.* at D10, D30 (emphasis added).
[18] HSS's website states it is in-network with at least UnitedHealthcare's Oxford "Garden State Network." https://www.hss.edu/insurance.asp. Englewood understands HSS may have, or have considered, contracts with other New Jersey plans.
[19] Based on HSS's counsel's representations, and in an effort to narrow the issues before the Court, Englewood is not seeking enforcement of Request Nos. 1-3, 8, or 11.





Jeffrey L. Kessler (admitted pro hac vice)
Jeffrey J. Amato (admitted pro hac vice)
Kerry C. Donovan
Johanna Rae Hudgens (admitted pro hac vice)
WINSTON & STRAWN LLP
200 Park Ave
New York, NY 10166
(212)-294-6700
Email: jkessler@winston.com
Email: jamato@winston.com
Email: kcdonovan@winston.com
Email: jhudgens@winston.com

David E. Dahlquist (admitted pro hac vice)
Matthew R. DalSanto (admitted pro hac vice)
Kevin B. Goldstein (admitted pro hac vice)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
(312)-558-5600
Email: ddahlquist@winston.com
Email: mdalsanto@winston.com
Email: kbgoldstein@winston.com

Heather P. Lamberg (admitted pro hac vice)
WINSTON & STRAWN LLP
1901 L Street NW
Washington, D.C. 20036
(202)-282-5000
Email: hlamberg@winston.com

Angelo J. Genova
GENOVA BURNS LLC
494 Broad St.
Newark, NJ 07102
(973) 535-7100
AGenova@genovaburns.com

*Attorneys for Defendant Englewood Healthcare Foundation*

cc: *All counsel of record* (via ECF)
*Counsel for Third Party HSS*:
Colin Kass, Esq. (CKass@proskauer.com)
Edward Kornreich, Esq. (EKornreich@proskauer.com)
David Munkittrick, Esq. (DMunkittrick@proskauer.com)
Nicollette Moser, Esq. (NMoser@proskauer.com)
PROSKAUER ROSE LLP