# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Federal Trade Commission,

                Plaintiff,

v.

Hackensack Meridian Health, Inc., and Englewood Healthcare Foundation,

                Defendants.

No. 2:20-cv-18140

**THE HOSPITAL FOR SPECIAL SURGERY'S
OBJECTIONS AND RESPONSES TO JANUARY 6, 2021 SUBPEONA**

Pursuant to the Federal Rules of Civil Procedure, New York Society for the Relief of the Ruptured and Crippled, Maintaining the Hospital for Special Surgery ("HSS"), by and through its attorneys, submits the following Responses and Objections ("Responses") to the January 6, 2021 Subpoena ("Subpoena" or "Requests") served by the Englewood Healthcare Foundation.

**GENERAL OBJECTIONS**

HSS asserts the following General Objections ("GOs"), which are incorporated by reference into each of the Specific Responses and Objections below. These General Objections govern the scope of any response made by HSS to the Requests and are neither waived nor limited by HSS's Specific Responses and Objections. Upon request HSS will meet and confer to discuss its General and Specific Objections, as well as its Responses and the scope of discovery hereunder.

    1.    HSS objects to the Requests, including the Definitions and Instructions, to the extent that they are inconsistent with or exceed the obligations imposed by the Federal Rules of Civil Procedure, any Local Rule, or applicable order. In responding to these Requests, HSS will

1

comply with the requirements of the Federal Rules of Civil Procedure, the Local Rules, and applicable orders of the Court.

2. HSS objects to Definition No. 14 ("GAC") on the grounds of ambiguity. In responding to this subpoena, HSS interprets the term GAC to mean the "broad cluster" of general acute care services typically offered by full service hospitals. *See* Complaint ¶ 32 (defining alleged relevant market). This is consistent with how courts have defined the GAC market:

> "The FTC characterizes general acute care inpatient hospital services as 'a common host of distinct services and capabilities that are necessary to meet the medical, surgical, and other needs of inpatients, e.g., operating rooms, anesthesia, intensive care capabilities, 24–hour nursing care, lodging, and pharmaceuticals.' These services are said to represent a ***cluster of services*** and capabilities that are provided only by general acute care hospitals and for which there are no reasonable substitutes….
>
> Indeed, general acute care inpatient hospital services is a product market that has been commonly used to evaluate the competitive effects of hospital mergers….
>
> Defendants argue, however, that the product market cannot be so simply defined. While admitting there may be no substitute for the entire cluster of general acute care hospital services outside the realm of acute care hospitals, they argue that outpatient services can be substituted for many inpatient services and that this substitutability should be deemed to act as a constraint upon the hospitals' behavior, thereby justifying a broader product market including outpatient care providers as viable competitors…. ***The argument is not compelling***."

*F.T.C. v. Butterworth Health Corp.*, 946 F. Supp. 1285, 1290 (W.D. Mich. 1996), *aff'd*, 121 F.3d 708 (6th Cir. 1997); *see also FTC v. Tenet Healthcare Corp.,* 17 F. Supp. 2d 937, 942 (E.D. Mo. 1998), *rev'd on other ground*s, 186 F.3d 1045 (8th Cir. 1999) (relevant market is general acute-care inpatient hospital services, "including primary and secondary services, but not including tertiary or quaternary care hospital services"); *FTC v. OSF Healthcare System and Rockford Health System*, No. 11C50344 (N.D. Ill. 2012) ("The GAC market does not include outpatient services, rehabilitation services, psychiatric services, or complex tertiary and quaternary services, as these services are offered by a different set of competitors"). In that regard, HSS notes that the

Complaint does not allege a substantial lessening of competition in any market consisting of any specific specialty, individual, or outpatient service.

3. HSS objects to the subpoena on proportionality, relevance, breadth, and burden grounds because it seeks information related to "inpatient GAC services," as defined in GO 2. HSS does not provide "inpatient GAC services." HSS's sole New Jersey location, HSS Paramus Outpatient Center, features only 11 exam rooms and provides outpatient services only. HSS's New York locations, which provide specialized inpatient services, do not provide the broad cluster of GAC services. Rather, HSS is a specialty hospital uniquely focused on treating patients with musculoskeletal conditions. HSS's website, for example, makes clear that it does not provide GAC services, but only specialized care:




3

> **Why Choose HSS?**
>
> You'll receive expert, ==specialized care that no other healthcare organization can offer==
>
> ==Every doctor, nurse and therapist at HSS is uniquely focused on treating patients with musculoskeletal conditions.== This means that whether you need a hip replacement, treatment for lupus, or complex surgery for an injury, your care will come from an expert in the field. In addition, our surgical and nonsurgical ==specialists== ensure the best care that is customized for each patient's need.
>
> **Make an Appointment TODAY**
>
> Start
>
> When you choose HSS, you're choosing:
>
> - The Official Hospital of the New York Giants, Mets, Knicks, Red Bulls, as well as the Brooklyn Nets, NYRR, USA Basketball and many more.
> - A hospital that saved 7-year-old Bridget's arm from amputation and provided Jennifer with a life-saving lupus diagnosis.
> - A world leader in medical education – with over 22,000 professionals from 128 countries receiving online courses from HSS.
>
> Learn more about why HSS has unparalleled patient outcomes and is ==the world leader in orthopedics and rheumatology== below.

Courts have determined that such specialized services are "tertiary services" that fall outside the alleged GAC service market. *Butterworth Health Corp.*, 946 F. Supp. at 1288 n.2 (Tertiary services include "the most specialized, complex and expensive procedures, such as ... orthopedic surgery.").

4

In contrast, Englewood's *mission* is to provide – not specialized musculoskeletal care – but "*comprehensive*" patient care:



Accordingly, Englewood provides a broad cluster of services that HSS does not, including:

- Acupuncture
- Advanced Medical Imaging (non-musculoskeletal)
- Ambulance Service
- Antepartum Testing
- Bariatric Surgery
- Behavioral Health and Psychiatry
- Bloodless Medicine and Surgery
- Braverman Family Executive Wellness Program
- Breast Care

5

- Cancer Treatment and Wellness Center
- Cardiac Care
- Cardiac Diagnostic Services
- Cardiac Electrophysiology
- Cardiac Rehabilitation
- Cardiothoracic Surgery
- Clinical Research Center (non-musculoskeletal)
- Critical Care
- Diabetes Self-Management Education
- Emergency Cardiac Care
- Emergency Department
- Emergency Medical Services (EMS)
- EMS Training Courses for Professionals
- Englewood Health Physician Network
- Executive Wellness
- Family Birth Place
- Gastroenterology and Gastrointestinal Surgery
- Graf Center for Integrative Medicine
- Gregory P. Shadek Behavioral Care Center
- Griffin Cares
- Heart Care
- High-Risk Pregnancy Services
- Hospital Medicine Service
- Hyperbaris Oxygen Therapy
- Imaging (non-musculoskeletal)
- Infusion Center
- Integrative Medicine
- Intensive Care
- Internal Medicine
- Interventional Cardiology
- Korean Health and Wellness
- Laboratory
- Lefcourt Family Cancer Treatment and Wellness Center
- Leslie Simon Breast Care and Cytodiagnosis Center
- Mammography and Breast Imaging
- Maternal and Fetal Medicine
- Maternity Care
- MDPartners
- Mental Health
- Metabolic Surgery
- MitraClip Procedure
- Mobile Intensive Care Unit
- Neonatal Intensive Care (NICU)
- Nutrition Counseling
- Obstetrics
- Outpatient Laboratory
- Palliative Medicine
- Patient Blood Management
- Pediatrics
- Physical and Occupational Therapy (non-musculoskeletal)
- Pregnancy
- Pregnancy & Infant Loss Support Program
- Primary Care
- Psychiatry
- Pulmonary Rehabilitation
- Radiology and Imaging (non-musculoskeletal)
- Rehabilitation Medicine
- Research Administration
- Sleep Medicine
- Stroke Center
- Transcatheter Aortic Valve Replacement (TAVR)

Because HSS's services are focused on musculoskeletal conditions, it does not compete with the merging parties in the market for inpatient GAC services, and insurers do not view HSS as a substitute for the merging parties in constructing their provider networks; instead, HSS is a complementary provider of specialized services.[1]

4.  HSS objects to the subpoena because it purports to require the production of confidential "commercial information" without a showing of "substantial need." Fed. R. Civ. P. 45(d)(3)(B) and (C). HSS notes that Englewood has made no showing of need, and have failed to present information showing that insurers or commercial payors view HSS's specialty services as a substitute for contracting with general acute care hospitals for the broad cluster of services that full service hospitals provide. To the extent defendants face competition from HSS to be included as a general acute care hospital in payors' networks, defendants' own documents would reveal the existence of such competition. As such, there is no substantial need for discovery from HSS, and such discovery would be unreasonably cumulative of discovery that can be obtained from the parties.[2]

5.  HSS objects to the Subpoena on the ground that the party issuing it failed to "take reasonable steps to avoid imposing an undue burden or expense" on HSS. *See* Fed. R. Civ. P. 45(d)(1). HSS notes that defendants have taken a scorched earth approach to third-party discovery issuing scores of subpoenas without taking into account the fact that there is no competition within

---

[1] To the extent defendants contend otherwise, HSS requests defendants to produce information sufficient to show that insurers have replaced them with HSS in their networks, or have threatened to do so.

[2] For example, Englewood asks HSS to produce "[a]ll documents … reflecting any price/rate, discount or other contract concessions [y]ou made or offered … to any payor … for inpatient GAC … services based … on actual or perceived competition from other healthcare providers … for inclusion in that payor's network, including any narrow network or tiered products for which you requested a competing provider would be excluded or placed in a less-favorable tier." *See* Request 9. But defendants have not demonstrated they "made or offered" pricing concessions based on competition from HSS, or that they faced exclusion or requested exclusion (or less favorable treatment) vis-à-vis HSS in the ordinary course of business. Absent such a showing, defendants have not shown a substantial need for the information they seek.

the *alleged* relevant market between defendants and at least some of the subpoenaed parties, such as HSS. HSS further notes that Englewood refused HSS's request to identify the other subpoenaed parties, preventing inquiry into whether defendant's fishing expedition is overly broad, unreasonably cumulative or duplicative of other discovery being sought in the case, and disproportional to the needs of the case. Although HSS has not yet determined the full costs of complying with the Subpoena, HSS believes that the burden of compliance will be significant if not prohibitive. Accordingly, HSS will not undertake any search for, nor shall it produce, any documents unless and until the issuing party agrees to fully compensate HSS for its reasonable costs and attorneys' fees associated with complying with the Subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B)(ii).

6.  HSS objects to the subpoena on grounds of relevance, breadth, burden, and proportionality to the extent it seeks information unrelated to inpatient GAC hospital services sold and provided to commercial insurers and their enrollees because such services fall outside the alleged relevant market. *See* Complt. ¶4 ("[t]he Proposed Transaction will substantially lessen competition in the market for *inpatient GAC hospital services sold and provided to commercial insurers and their enrollees*"). Without limitation, HSS objects on this basis to any Request seeking information relating to outpatient, clinic, or physician office services. In that regard, HSS notes that during the January 8, 2021 meet and confer, counsel for Englewood conceded that the legality of the merger depended on *geographic* market definition. This position is consistent with Englewood's Answer, which asserts the "FTC's Complaint is premised on a contrived and artificial *geographic market* delineated not by real-world industry dynamics, but by arbitrary *county lines* dating back to the pre-Revolutionary War colonies." ECF 65, at 2.[3] Likewise, HMH's

---

[3] Englewood's Answer concedes that the alleged market for inpatient GAC services excludes "outpatient and retail health care services." *Answer*, ECF 65, ¶ 7. While Englewood faults the exclusion of such services from the alleged

8

Answer acknowledges that it is investing in a "modernization project," but argues that any adverse impact on the project cannot be deemed an "anticompetitive effect" of the proposed merger because "these investments will not add new inpatient beds." ECF 64, ¶ 59. Put simply, the parties have not demonstrated that specialized service providers like HSS (including any outpatient services) fall within the alleged relevant market, and therefore have not demonstrated the relevance of such information.

7. HSS objects to the subpoena on the grounds that it is unreasonably duplicative or cumulative to the extent the information sought can be sought directly from commercial payors, which are the customers in the alleged relevant market. Commercial payors would have more information about the providers their insureds use, as well as the contract negotiations payors engage in. Such information is available more efficiently and with less burden through discovery directed at payors, versus piecemeal and scattershot subpoenas issued to individual healthcare providers.

8. Based on HSS's General and Specific Objections, HSS is not making any specific offer of production of additional documents beyond the information contained in these responses. To the extent HSS is required to produce additional information, HSS objects on the grounds of relevance, burden, breadth, and proportionality to each of the requests as written and will meet and confer with the issuing party to discuss the parameters of an appropriate search, including (i) whether the request is properly limited; (ii) the extent of any custodial search; (iii) which, if any, custodians will be searched; and (iv) the reimbursement of costs for such search. For avoidance

---

market, it does not allege that commercial payors substitute providers of inpatient GAC services with providers of "outpatient or retail health services." Nor is such an argument plausible. No one substitutes inpatient appendectomies for outpatient ingrown toenail removal. Likewise, when constructing provider networks or otherwise contracting with providers, commercial payors do not consider specialized hospitals, physicians, clinics, and outpatient centers substitutes for full service hospitals that provide the broad cluster of GAC services.

of doubt and without limitation, HSS objects to each and every request below that seeks "all documents" on this ground and will not search for or produce "all documents" in response to any request without such agreed-upon limitations.

9. HSS objects to Definition No. 25 ("Price") on the grounds of ambiguity, particularly as to the phrase "percent of charge."

10. HSS objects to Definition No. 29 ("You" and "Yours") on the grounds of proportionality, relevance, breadth, and burden to the extent such terms require the production of information by any entity other than HSS.

11. HSS objects to the Requests to the extent they seek information dated prior to January 1, 2020 on the grounds of relevance, breadth, burden, and proportionality. To the extent HSS agrees to conduct a search, unless otherwise specified, any such search shall be limited to documents dated between January 1, 2020 to December 8, 2020 (the "Relevant Period").

12. HSS objects to the Requests to the extent that they call for the production of information or documents that HSS is barred from producing by (i) any domestic or foreign privacy laws, including HIPAA; (ii) a protective order or restriction on use or dissemination in another case or governmental investigation; (iii) confidentiality agreements with, or licensing restrictions imposed by, third parties; or (iv) statute or agency rule. To the extent HSS relies on this objection as its sole basis for withholding otherwise responsive, non-privileged information, HSS will provide notice of that fact.

13. HSS objects to the Requests to the extent they call for the production of any electronically stored information that is not reasonably accessible, or cannot be compiled or produced without unreasonable investments in time and expense. To the extent HSS agrees to

conduct a search, HSS will comply with the requirements of the Federal Rules of Civil Procedure, the Local Rules, and applicable orders of the Court.

14. HSS objects on burden grounds to the extent the Requests purport to require HSS to "label in such a way as to show which files and offices they came from." In responding to these Requests, HSS will comply with the requirements of the Federal Rules of Civil Procedure, the Local Rules, and applicable orders of the Court.

15. In setting forth these Objections and Specific Objections, HSS shall use the term "proportionality" to mean that the Request seeks information that is not "proportional to the needs of the case" under Fed. R. Civ. P. 26(a)(b)(1). HSS uses the terms "breadth," "burden," and/or overbreadth to mean that (i) the Request is overly broad and/or unduly burdensome; (ii) the discovery sought is unreasonably cumulative or duplicative of other information HSS has offered to produce in response to a document request under Fed. R. Civ. P. 34(a); and/or (iii) the burden or expense of the proposed discovery outweighs its likely benefit under Fed. R. Civ. P. 26(b). HSS uses the term "relevance" to mean that the discovery requested is neither relevant to any party's claim or defense under the Federal Rules of Evidence nor proportional to the needs of the case, or is otherwise outside the scope of Fed. R. Civ. P. 26(b)(1). HSS uses the term "ambiguity" to mean the Request is vague and ambiguous. HSS uses the term "privilege" to mean that the discovery requested seeks information protected by the attorney-client privilege, the work product doctrine, joint defense or common interest privileges, or any other applicable privilege.

## SPECIFIC OBJECTIONS

### REQUEST NO. 1

*A copy of each organizational chart and personnel directory in effect for each of Your facilities that provides inpatient GAC services in the Northern New Jersey/New York Area.*

**Response to Request No. 1**

HSS objects to this Request for reasons set forth in GO 2-5 because it does not provide "GAC services" and does not compete with Englewood or HMS in the alleged inpatient GAC hospital market. HSS objects to this Request on the grounds of relevance because HSS's corporate structure is not relevant to any issue in case.

**REQUEST NO. 2**

*All documents relating to the Proposed Transaction, the Merger Review, the Administrative Proceeding, or this Litigation, including but not limited to, Your communications with Plaintiff, the potential effect of the Transaction on Your business or the business of any other healthcare provider, and/or any efforts by You to oppose, prevent, delay, or terminate the Proposed Transaction.*

**Response to Request No. 2**

HSS objects to this Request to the extent it seeks privileged information concerning the proposed transaction, including its manifest anticompetitive effect on commercial payors for inpatient GAC services. Subject to and without waiving its General and Specific Objections, HSS states that it has not provided any documents to the FTC concerning the proposed transaction, and has not engaged in any "efforts to oppose, prevent, delay, or terminate the Proposed Transaction."

**REQUEST NO. 3**

*Documents sufficient to identify the location of each hospital or other healthcare facility (e.g., outpatient, clinic, physician office) at which You provide inpatient GAC, outpatient, or physician services in Bergen, Hudson, Passaic, or Essex Counties, NJ, and, for facilities opened after January 1, 2018, the date the facility opened.*

**Response to Request No. 3**

HSS objects to this Request for reasons set forth in GO 2-5 because it does not provide "GAC services" and does not compete with Englewood or HMS in the alleged inpatient GAC hospital market. HSS objects to this Request for reasons set forth in GO 4-6 to the extent it seeks information concerning services that are not included in the alleged relevant market, including

outpatient, clinic, or physician office services. Subject to and without waiving its General and Specific Objections, HSS notes that its locations are publicly available at https://www.hss.edu/locations.asp.

**REQUEST NO. 4**

*Documents and data sufficient to show Your primary service area and Your secondary service area in which you draw patients for inpatient GAC services, including the zip codes that comprise Your facilities' service areas and Your market shares within those service areas.*

**Response to Request No. 4**

HSS objects to this Request for reasons set forth in GO 2-5 because it does not provide "GAC services" and does not compete with Englewood or HMS in the alleged inpatient GAC hospital market. HSS objects to the term "market share" on grounds of ambiguity. As the Complaint alleges, the alleged relevant market for GAC services consists of a cluster of services that insurers contract for to provide patients with the full range of general acute care services they require. It is unclear how the limited, specialized services (focused primarily on musculoskeletal services) that HSS provides can be included in, or otherwise measured, as part of the alleged GAC services market.

**REQUEST NO. 5.**

*All strategic and business planning documents, marketing plans, advertising, market studies, forecasts, surveys, or other strategic documents that discuss, analyze or describe competition, competitors, or market share for inpatient GAC, outpatient, or physician services in Bergen, Hudson, Passaic, or Essex Counties, NJ, or which analyze or describe any plans to develop, expand, or reduce Your provision of inpatient GAC, outpatient, or physician services in Bergen, Hudson, Passaic, or Essex Counties, NJ.*

**Response to Request No. 5**

HSS objects to this Request for reasons set forth in GO 2-5 because it does not provide "GAC services" and does not compete with Englewood or HMS in the alleged inpatient GAC hospital market. HSS objects to this Request for reasons set forth in GO 4-6 to the extent it seeks

13

information concerning services that are not included in the alleged relevant market, including outpatient, clinic, or physician office services. Without limiting the foregoing, HSS objects to this Request on grounds of relevance, breadth, and proportionality to the extent it seeks documents that do not discuss competition with either (or both) of the merging parties. HSS objects to this Request on the grounds that it seeks confidential commercial information without a showing of substantial need, as set forth in GO 4.

**REQUEST NO. 6**

*All reports, presentations, or materials written or created by consultants, advisors, or other third parties engaged by You that discuss, analyze or describe competition, competitor or market share for inpatient GAC, outpatient, or physician services in Bergen, Hudson, Passaic, or Essex Counties, NJ, or which analyze or describe any plans to develop, expand, or reduce Your provision of inpatient GAC, outpatient, or physician services in Bergen, Hudson, Passaic, or Essex Counties, NJ.*

**Response to Request No. 6**

HSS objects to this Request for reasons set forth in GO 2-5 because it does not provide "GAC services" and does not compete with Englewood or HMS in the alleged inpatient GAC hospital market. HSS objects to this Request for reasons set forth in GO 4-6 to the extent it seeks information concerning services that are not included in the alleged relevant market, including outpatient, clinic, or physician office services. Without limiting the foregoing, HSS objects to this Request on grounds of relevance, breadth, and proportionality to the extent it seeks documents that do not discuss competition with either (or both) of the merging parties. HSS objects to this Request on the grounds that it seeks confidential commercial information without a showing of substantial need, as set forth in GO 4.

**REQUEST NO. 7**

*All documents that discuss, analyze or describe any of Your strategic initiatives and operational plans (including, but not limited to, construction of infrastructure and recruitment of physicians) to expand or develop the provision of inpatient GAC, outpatient, or physician services in Bergen, Hudson, Passaic, or Essex Counties, NJ, including but not limited to the rationale and impact on*

14

*Your inpatient general acute care admissions from You expanding HSS Paramus Outpatient Center in 2017.*

### Response to Request No. 7

HSS objects to this Request for reasons set forth in GO 2-5 because it does not provide "GAC services" and does not compete with Englewood or HMS in the alleged inpatient GAC hospital market. HSS objects to this Request for reasons set forth in GO 4-6 to the extent it seeks information concerning services that are not included in the alleged relevant market, including outpatient, clinic, or physician office services. Without limiting the foregoing, HSS objects to this Request on grounds of relevance, breadth, and proportionality to the extent it seeks documents that do not discuss competition with either (or both) of the merging parties. HSS objects to this Request on the grounds that it seeks confidential commercial information without a showing of substantial need, as set forth in GO 4.

### REQUEST NO. 8

*Documents sufficient to show the identity of physicians who refer patients to Your inpatient GAC hospital(s) that also refer patients to any inpatient GAC hospital operated by HMH or Englewood, and the annual volume of those referrals from January 1, 2018 to the present.*

### Response to Request No. 8

HSS objects to this Request on the grounds that it seeks information beyond HSS's possession, custody, or control. HSS does not know the identity of physicians who "refer patients to any inpatient GAC hospitals operated by HMH or Englewood." HSS objects to this Request because the identity of specific physicians is not relevant to any issue in this case. HSS objects to this Request for reasons set forth in GO 2-5 because it does not provide "GAC services" and does not compete with Englewood or HMS in the alleged inpatient GAC hospital market. HSS objects to this Request to the extent it seeks confidential commercial information without a showing of substantial need, as set forth in GO 4.

15

**REQUEST NO. 9.**

*All documents and communications reflecting any price/rate, discount or other contract concessions You made or offered or that was requested of You (even if not consummated) to any payor (commercial or managed Medicare) for inpatient GAC, outpatient, or physician services based, in whole or in part, on actual or perceived competition from other healthcare providers in the Northern New Jersey/New York Area for inclusion in that payor's network, including any narrow network or tiered products for which you requested a competing provider would be excluded or placed in a less-favorable tier.*

**Response to Request No. 9**

HSS objects to this Request for reasons set forth in GO 2-5 because it does not provide "GAC services" and does not compete with Englewood or HMS in the alleged inpatient GAC hospital market. HSS objects to this Request for reasons set forth in GO 4-6 to the extent it seeks information concerning services that are not included in the alleged relevant market, including outpatient, clinic, or physician office services. Without limiting the foregoing, HSS objects to this Request on grounds of relevance, breadth, and proportionality to the extent it seeks documents that do not discuss competition with either (or both) of the merging parties. HSS objects to this Request on the grounds that it seeks confidential commercial information without a showing of substantial need, as set forth in GO 4. HSS objects to this Request for reasons set forth in GO 7 because information concerning commercial payor contract negotiations can be more efficiently obtained directly from commercial payors.

**REQUEST NO. 10**

*Documents sufficient to identify each health plan (commercial or managed Medicare) offered in New Jersey in which You are or have been a participating provider since January 1, 2018, and all documents or communications discussing the possible or actual termination of Your participation in any such health plan.*

**Response to Request No. 10**

HSS objects to this Request for reasons set forth in GO 2-5 because it does not provide "GAC services" and does not compete with Englewood or HMS in the alleged inpatient GAC

hospital market. HSS objects to this Request for reasons set forth in GO 4-6 to the extent it seeks information concerning services that are not included in the alleged relevant market, including outpatient, clinic, or physician office services. Subject to and without waiving its General and Specific Objections, HSS refers Englewood to the list of participating insurers and insurance plans available at www.hss.edu/insurance.asp.

**REQUEST NO. 11**

*Documents sufficient to show any letters or other statements of opposition submitted to the New Jersey Department of Health in response to any competing provider's Certificate of Need application relating to inpatient GAC, outpatient, or physician services in the Northern New Jersey/New York Area, from January 1, 2016 to the present.*

### Response to Request No. 11

HSS objects to this Request for reasons set forth in GO 2-5 because it does not provide "GAC services" and does not compete with Englewood or HMS in the alleged inpatient GAC hospital market. HSS objects to this Request for reasons set forth in GO 4-6 to the extent it seeks information concerning services that are not included in the alleged relevant market, including outpatient, clinic, or physician office services. HSS objects to this Request on the grounds of relevance, burden, breadth, and proportionality because HSS's statements, if any, to the New Jersey Department of Health concerning Certificates of Need by other unidentified third parties are not relevant to any issue in this case. HSS objects to the Request for reasons set forth in GO 11 to the extent it seeks information beyond the relevant period.

**REQUEST NO. 12**

*Documents sufficient to show the identity of New Jersey commercial payors with whom you are an in-network provider for at least one commercial product.*

### Response to Request No. 12

HSS objects to this Request for reasons set forth in GO 2-5 because it does not provide "GAC services" and does not compete with Englewood or HMS in the alleged inpatient GAC

hospital market.  HSS objects to this Request for reasons set forth in GO 4-6 to the extent it seeks information concerning services that are not included in the alleged relevant market, including outpatient, clinic, or physician office services.  Subject to and without waiving its General and Specific Objections, HSS refers defendants to the list of participating insurers and insurance plans available at www.hss.edu/insurance.asp.

**REQUEST NO. 13.**

*Documents sufficient to show all marketing materials and advertisements you have created, commissioned or purchased relating to inpatient GAC, outpatient, physician services, or Your services generally, where and when such materials or advertisements were distributed, in what quantity (e.g., number of impressions), the target audience, and the total amount of Your marketing and advertising spend. This request extends to advertisements in any medium, including but not limited to print, television, radio, billboards, internet, social media, and direct mailing.*

**Response to Request No. 13**

HSS objects to this Request for reasons set forth in GO 2-5 because it does not provide "GAC services" and does not compete with Englewood or HMS in the alleged inpatient GAC hospital market.  HSS objects to this Request for reasons set forth in GO 4-6 to the extent it seeks information concerning services that are not included in the alleged relevant market, including outpatient, clinic, or physician office services.  HSS objects to this Request on grounds of proportionality, relevance, burden, and breadth because HSS's marketing materials and advertisements are not relevant (in part because alleged customers are commercial payors, not patients, competing for provider contracts, and HSS does not engage in any advertising or marketing efforts directed at commercial payors) and because information relating to insured's use of providers can be obtained more easily from the insurers themselves.

Dated: January 27, 2021

Respectfully submitted,

/s *Colin R. Kass*

Colin R. Kass
Nicollette R. Moser
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Washington, DC 20001
ckass@proskauer.com
nmoser@proskauer.com

Edward S. Kornreich
David A. Munkittrick
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
ekornreich@proskauer.com
dmunkittrick@proskauer.com

***Attorneys for the Hospital for Special Surgery***

19