# EXHIBIT 9

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| | |
|---|---|
| Federal Trade Commission ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. 2:20-cv-18140-JMV-JBC |
| Hackensack Meridian Health, Inc., et al. ) | |
| *Defendant* ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: New York Society for the Relief of the Ruptured and the Crippled, Maintaining the Hospital for Special Surgery
Edward Kornreich, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, ekornreich@proskauer.com

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: :See Attachment A

| Place: Federal Trade Commission 400 7th Street, SW Washington, DC 20024 | Date and Time: 01/26/2021 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 01/12/2021

*CLERK OF COURT*

OR

_____                               /s/ Nandu Machiraju
*Signature of Clerk or Deputy Clerk*                         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Federal Trade Commission , who issues or requests this subpoena, are:
Nandu Machiraju, 400 7th Street SW, Washington, DC 20024, nmachiraju@ftc.gov, 202-326-2081

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Case 2:20-cv-18140-JMV-JBC   Document 78-10   Filed 02/19/21   Page 3 of 18 PageID: 1126

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:20-cv-18140-JMV-JBC

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____
_____
on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Case 2:20-cv-18140-JMV-JBC   Document 78-10   Filed 02/19/21   Page 4 of 18 PageID: 1127

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**<br><br>                    Plaintiff,<br><br>     v.<br><br>**HACKENSACK MERIDIAN HEALTH, INC.,**<br><br>   and<br><br>**ENGLEWOOD HEALTHCARE FOUNDATION,**<br><br>                    Defendants. | Judge John Michael Vazquez<br><br>No. 2:20-cv-18140-JMV-JBC |

**ATTACHMENT A TO SUBPOENA TO PRODUCE DOCUMENTS
ISSUED TO NEW YORK SOCIETY FOR THE RELIEF OF THE RUPTURED AND
<u>CRIPPLED, MAINTAINING THE HOSPITAL FOR SPECIAL SURGERY</u>**

**REQUESTS**

In accordance with the Definitions and Instructions below:

1. To the extent the Company produces Documents and information in response to Defendants' Subpoena or any subpoena issued by any Defendant in this Litigation to the Company, please also produce copies of those Documents and information to the Federal Trade Commission.

2. Submit all Documents and other communications transmitted between or among the Company and HMH, Englewood, and/or any other Entity relating to the Proposed Transaction, including any communications relating to this Investigation or this Litigation.

3. Submit all Documents and information responsive to Document Requests 4 and 5 as they are worded in Defendants' Subpoena.

4. Submit all Documents relating to any costs, barriers, or other challenges relating to the Company's provision of Relevant Services to residents of the Relevant Area, including but not limited to travel times and travel costs.

1

5. Submit Documents sufficient to show the year-over-year change in the Company's market share for Relevant Services in Bergen, Hudson, Passaic, and Essex Counties, together and separately for each county, from January 2017 to the present.

6. Submit Documents sufficient to show the existence and scope of any plan for or actual affiliation with any Provider located in the Relevant Area.

7. From January 1, 2017 to the present, submit Documents sufficient to show the location of all Hospitals or other facilities that provide Inpatient Services, Outpatient Services, or Physician Services that the Company owns or operates in Bergen and Hudson Counties, the services provided by each facility, the number of practicing physicians at each facility, by specialty or subspecialty, and the date the facility opened.

8. Submit Documents sufficient to show the actual or anticipated effect on the Outmigration for Relevant Services to the Company's facilities located in New York City of (a) any business or other activity that the Company has undertaken or plans to undertake; (b) the presence of any existing or planned Company facilities that provide Inpatient Services, Outpatient Services, or Physician Services in Bergen or Hudson Counties; or (c) the effect of any existing or planned affiliations by the Company with any Entity that provides Inpatient Services, Outpatient Services, or Physician Services in Bergen or Hudson Counties.

# DEFINITIONS

For the purposes of this Subpoena, the following Definitions apply:

D1. The term "Administrative Proceeding" means the Federal Trade Commission Adjudicative Proceeding, *In re Hackensack Meridian Health, et al.*, FTC Docket No. 9399.

D2. The terms "and" and "or" have both conjunctive and disjunctive meanings.

D3. The term "the Company" means New York Society for the Relief of the Ruptured and Crippled, Maintaining the Hospital for Special Surgery; its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, agents, and representatives of the foregoing.

D4. The term "Defendants" means HMH and Englewood.

D5. The term "Defendants' Subpoena" means the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action dated January 6, 2021 directed to the Company.

D6. The terms "Documents" and "Document" mean all electronically stored information and written, recorded, or graphic material of every kind, prepared by any Persons, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations. Furthermore, the terms "Documents" and "Document" include the complete original Document (or a copy thereof if the original is not available), all drafts, whether or not they resulted in a final Document, and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original. The terms "Documents" and "Document" also include metadata and files, information, or data created or stored in software-as-a-service or cloud computing. Documents covered by these requests include, but are not limited to, the following: letters; memoranda; presentations; reports; contracts and other agreements; studies; plans; entries in notebooks, calendars, and diaries; minutes, records, and transcripts of conferences, meetings, telephone calls, or other communications; publications and unpublished speeches or articles; typed and handwritten notes; electronic mail; electronic messaging including text messages and instant messages; facsimiles (including the header showing the receipt date and time); tabulations; statements, ledgers, and other records of financial matters or commercial transactions; diagrams, graphs, charts, blueprints, and other drawings; technical plans and specifications; advertising, product labels, and packaging materials; photographs, photocopies, slides, microfilm, microfiche, and other copies or reproductions; film, audio, and video tapes; tape, disk, and other electronic recordings including voice mail; and computer printouts.

D7. The terms "each," "any," and "all" mean "each and every."

D8. The term "Englewood" means Englewood Healthcare Foundation; its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint

ventures; and all directors, officers, employees, agents, and representatives of the foregoing.

D9. The term "Entity" means any natural Person, corporation, company, partnership, joint venture, association, joint-stock company, trust, estate of a deceased natural Person, foundation, fund, institution, facility, division, department, unit, Provider, society, union, or club, whether incorporated or not, wherever located and of whatever citizenship, or any receiver, trustee in bankruptcy or similar official or any liquidating agent for any of the foregoing, in his or her capacity as such.

D10. The term "Health Insurance" refers to Medicaid, Medicare, Medicare Advantage, and commercial Health Insurance Products.

D11. The terms "Health Insurance Product" and "Health Plan" mean any health maintenance organization, point-of-service plan, preferred Provider arrangement or organization, network, fee-for-service indemnity insurance, employer Self-Insured health benefit plan, Medicare, Medicaid, TRICARE, Medicare Advantage plan, or any other private or governmental health care plan or insurance of any kind.

D12. The term "Hospital" means a Provider that provides Inpatient GAC Hospital Services, collectively or individually. For the avoidance of doubt, Providers located on distinct campuses should be considered separate Hospitals, regardless of whether they report to any state agency under a single license number.

D13. The term "HMH" means Hackensack-Meridian Health, Inc.; its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures; and all directors, officers, employees, agents, and representatives of the foregoing.

D14. The term "Independent Physician Association" means a network of physicians who agree to participate in an association to contract with Health Insurance carriers.

D15. The term "Inpatient GAC Hospital Services" refers to the provision of Inpatient Services (including any Physician Services that may be provided on an inpatient basis) for medical diagnosis, Treatment, and care of physically injured or sick individuals with short-term or episodic health problems or infirmities, excluding non-acute long-term services (*e.g.*, skilled nursing care) and the treatment of mental illness or substance abuse.

D16. The term "Inpatient Services" refers to the provision of medical services that require at least one overnight stay at a Provider or at least 24-hour nursing care, including any Physician Services rendered as part of the inpatient Treatment.

D17. The term "Investigation" means the FTC's investigative review of the Proposed Transaction, File No. 201-0044, including but not limited to, this Litigation and the Administrative Proceeding.

D18. The term "Litigation" means the case *Federal Trade Commission v. Hackensack Meridian Health, Inc. et al.*, No. 2:20-cv-18140-JMV-JBC (D. N.J.) and/or *In re Hackensack Meridian Health, Inc., et al.*, Dkt. 9399 (F.T.C.).

D19. The term "Mid-Level Practitioner" means a clinical medical professional other than a physician. Examples include nurse practitioners and physician assistants.

D20. The term "Outmigration" means the phenomenon in which residents of New Jersey travel to New York to receive Inpatient Services.

D21. The term "Outpatient Services" refers to the provision of medical services, including Physician Services, that do not require an overnight stay at a Provider or 24-hour nursing care.

D22. The term "Person" includes the Company and means any natural Person, corporate Entity, partnership, association, joint venture, Independent Physician Association, Physician Group, government Entity, or trust.

D23. The term "Physician Group" means a bona fide, integrated firm in which physicians practice medicine together as partners, shareholders, owners, or employees, or in which only one physician practices medicine.

D24. The term "Physician Services" means all services provided by a physician, Mid-Level Practitioner, Independent Physician Association, or Physician Group.

D25. The term "plan" means tentative and preliminary proposals, recommendations, or considerations, whether or not finalized or authorized, as well as those that have been adopted.

D26. The term "Proposed Transaction" means the proposed acquisition of Englewood by HMH, or any other proposed, contemplated, discussed, or related transaction between HMH and Englewood.

D27. The term "Provider" means any Entity that provides Inpatient GAC Hospital Services, and includes, but is not limited to, any Hospital, other Healthcare Facility, individual physician, Mid-Level Practitioner, Independent Physician Association, or Physician Group.

D28. The terms "relate" and "relating to" mean, in whole or in part, addressing, analyzing, concerning, constituting, containing, commenting on, discussing, describing, identifying, referring to, reflecting, reporting on, stating, or dealing with.

D29. The term "Relevant Area" means the area encompassing Bergen, Essex, Hudson, and Passaic counties in New Jersey.

D30. The term "Relevant Service" encompasses all Inpatient GAC Hospital Services, collectively and individually.

D31. The term "Treatment" means any individual occurrence when a patient receives medical attention (such as a diagnosis, clinical procedure, surgery, imaging service, rehabilitation session, visit, or any other medical assessment, care, procedure, or action) from a physician or other Provider at one specific location.

D32. Any word or term that the Company considers vague or insufficiently defined has the meaning most frequently assigned to it by the Company in the ordinary course of business.

## INSTRUCTIONS

For purposes of this Subpoena, the following instructions apply:

1. Unless otherwise specified, each request calls for Documents received, created, transmitted, or sent from January 1, 2018 to the present.

2. Unless modified by agreement with the Commission, these Document requests require a complete search of all the files of the Company. The Company shall produce all responsive Documents, wherever located, that are in the actual or constructive possession, custody, or control of the Company and its representatives, attorneys, and other agents, including but not limited to consultants, accountants, lawyers, or any other person retained by, consulted by, or working on behalf or under the direction of the Company.

3. The Company need not produce any Document that was previously produced to the Commission voluntarily or in response to a compulsory request during the Commission's investigation of the Proposed Transaction.

4. These Document requests are continuing in nature and shall be supplemented in the event that additional Documents responsive to these requests are created, prepared, or received between the time of the Company's initial response and the date established by the Court for hearing the Commission's Motion for Preliminary Injunction in the above-captioned proceeding.

5. All Documents responsive to these Document requests, regardless of format or form and regardless of whether submitted in hard copy or electronic format:

    a. Shall be produced in complete form, un-redacted unless privileged, and in the order in which they appear in the Company's files;

    b. Shall be marked on each page with corporate identification and consecutive Document control numbers;

    c. Shall be produced in color if the original Document was in color;

    d. Shall be accompanied by an index that identifies: (i) the name of each person from whom responsive Documents are submitted; and (ii) the corresponding consecutive Document control number(s) used to identify that person's Documents, and if submitted in paper form, the box number containing such Documents. The Commission will provide a sample index upon request.

6. Form of Production: The Company shall submit Documents as instructed below absent written consent.

    a. Documents stored in electronic or hard copy formats in the ordinary course of business shall be submitted in the following electronic format provided that such copies are true, correct, and complete copies of the original Documents:

7

    i. Submit Microsoft Excel, Access, and PowerPoint files in native format with extracted text and metadata.

    ii. Submit emails in TIFF (Group IV) format with extracted text and the following metadata and information:

| Metadata/Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the Document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of email. |
| Bates End | Bates number of the last page of the email. |
| Beg Attach | First Bates number of the attachment range. |
| End Attach | Ending Bates number of the attachment range. |
| Custodian | Name of the Person from whom the email was obtained. |
| Email BCC | Names of Person(s) blind copied on the email. |
| Email CC | Names of Person(s) copied on the email. |
| Email Date Received | Date the email was created. [MM/DD/YYYY] |
| Email Date Sent | Date the email was sent. [MM/DD/YYYY] |
| Email From | Names of the Person who authored the email. |
| Email Message ID | Microsoft Outlook Message ID or similar value in other message systems. |
| Email Subject | Subject line of the email. |
| Email Time Received | Time email was received. [HH:MM:SS AM/PM] |
| Email To | Recipient(s) of the email. |
| Email Time Sent | Time email was sent. [HH:MM:SS AM/PM] |
| Page count | Number of pages in record |
| File size | Size of Document in KB |

8

| Metadata/Document Information | Description |
|---|---|
| File Extension | File extension type (*e.g.*, docx, xlsx) |
| Folder | File path/folder location of email. |
| Hash | Identifying value used for de-duplication – typically SHA1 or MD5. |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC0003090.txt |

iii. Submit email attachments other than those described in subpart (a)(i) in TIFF (Group IV) format. For all email attachments, provide extracted text and the following metadata and information as applicable:

| Metadata/Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the Document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the Document. |
| Bates End | Last Bates number of the Document. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |
| Custodian | Name of Person from whom the file was obtained. |
| Date Created | Date the file was created. [MM/DD/YYYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY] |
| Page count | Number of pages in record |
| File size | Size of Document in KB |
| File Extension | File extension type (*e.g.*, docx, xlsx) |
| Filename with extension | Name of the original native file with file extension. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Native Link | Relative file path to submitted native or near native files. |
| Parent ID | Document ID or beginning Bates number of the parent email. |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC0003090.txt |

9

| Metadata/Document Information | Description |
|---|---|
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

iv. Submit all other electronic Documents, other than those described in subpart (a)(i), in TIFF (Group IV) format accompanied by extracted text and the following metadata and information:

| Metadata/Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the Document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the Document. |
| Bates End | Last Bates number of the Document. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |
| Custodian | Name of Person from whom the file was obtained. |
| Date Created | Date the file was created. [MM/DD/YYYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY] |
| Page count | Number of pages in record |
| File size | Size of Document in KB |
| File Extension | File extension type (*e.g.*, docx, xlsx) |
| Filename with extension | Name of the original native file with file extension. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Originating Path | File path of the file as it resided in its original environment. |
| Native Link | Relative file path to submitted native or near native files. |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

10

      v. Submit Documents stored in hard copy in TIFF (Group IV) format accomplished by OCR with the following information:

| Metadata/Document Information | Description |
| --- | --- |
| Bates Begin | Beginning Bates number of the Document. |
| Bates End | Last Bates number of the Document. |
| Custodian | Name of Person from whom the file was obtained. |

      vi. Submit redacted Documents in TIFF (Group IV) format accompanied by OCR with the metadata and information required by relevant document type in subparts (a)(i) through (a)(v) above. For example, if the redacted file was originally an attachment to an email, provide the metadata and information specified in subpart (a)(iii) above. Additionally, please provide a basis for each privilege claim as detailed in Instruction I(6).

b. Submit data compilations in electronic format, specifically Microsoft Excel spreadsheets or delimited text formats, with all underlying data un-redacted and all underlying formulas and algorithms intact. Submit data separately from Document productions.

c. If the Company intends to utilize any de-duplication, email threading, or TAR software or services when collecting or reviewing information that is stored in its computer systems or electronic storage media, or if the Company's computer systems contain or utilize such software, the Company must contact Commission staff to determine, with the assistance of the appropriate Commission representative, whether and in what manner the Company may use such software or services when producing materials in response to these Document requests.

d. Produce electronic file and image submissions as follows:

      i. <u>All Documents produced in electronic format shall be scanned for and free of viruses prior to submission. The Commission will return any infected media for replacement, which may affect the timing of the Company's compliance with these requests</u>;

      ii. Encryption of productions using NIST FIPS-Compliant cryptographic hardware or software modules, with passwords sent under separate cover, is strongly encouraged; and

      iii. Each production shall be submitted with a transmittal letter that includes the Civil Action Number (No. 2:20-cv-18140); production volume name; encryption method/software used; passwords for any password protected files; list of custodians and Document identification number range for

      each; total number of Documents; and a list of load-file fields in the order in which they are organized in the load file.

7. To protect patient privacy, the Company shall mask any Sensitive Personally Identifiable Information ("PII"). For purposes of this subpoena, PII means an individual's Social Security Number alone; or an individual's name, street address (but not city, county, state, or zip code of residence), or phone number in combination with one or more of the following: date of birth; driver's license number or other state identification number, or a foreign country equivalent; passport number; financial account number; or credit or debit card number.

8. Where required by a particular request, the Company shall substitute for the masked information a unique patient identifier that is different from that for other patients and the same as that for different admissions, discharges, or other treatment episodes for the same patient. Otherwise, the Company shall redact the PII but is not required to replace it with an alternate identifier. Provide the names of any electronic production tools or software packages utilized by the Company in responding to this subpoena for: keyword searching, Technology Assisted Review, email threading, de-duplication, and global de-duplication or near deduplication:

    a. If the Company utilized keyword search terms to identify Documents and information responsive to this subpoena, a list of all of the search terms used for each custodian;

    b. If the Company utilized Technology Assisted Review software, all statistical analyses utilized or generated by the Company or its agents related to the precision, recall, accuracy, validation, or quality of its Document production in response to this subpoena; and descriptions of all collection methodologies, including (i) how the software was utilized to identify responsive Documents, (ii) the process(es) the Company utilized to identify and validate the seed set Documents subject to manual review, (iii) the total number of Documents reviewed manually, (iv) the total number of Documents determined non-responsive without manual review, (v) the process the Company used to determine and validate the accuracy of the automatic determinations of responsiveness and non-responsiveness, (vi) how the Company handled exceptions ("uncategorized Documents"), and (vii) if the Company's Documents include foreign language Documents, whether reviewed manually or by some technology-assisted method; and

    c. The identity of each individual able to testify on behalf of the Company about information known or reasonably available to the Company relating to its response.

9. Unless otherwise agreed, if any Documents or parts of Documents are withheld from production based on a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support thereof, in the form of a searchable and sortable log that includes each Document's authors, addressees, date, a description of each

    Document, and all recipients of the original and any copies. Attachments to a Document should be identified as such and entered separately on the log. For each author, addressee, and recipient; state the person's full name, title, and employer or firm; and denote all attorneys with an asterisk. The description of the subject matter shall describe the nature of each Document in a manner that, though not revealing information itself privileged, provides sufficiently detailed information to enable the parties or a court to assess the applicability of the privilege claimed under FRCP 45(d)(2). For each Document or part of a Document withheld under a claim that it constitutes or contains attorney work product, also state whether the Company asserts that the Document was prepared in anticipation of litigation or for trial and, if so, identify the anticipated litigation or trial upon which the assertion is based. Submit all non-privileged portions of any responsive Document (including non- privileged or redactable attachments) for which a claim of privilege is asserted (except where the only non-privileged information has already been produced in response to this instruction), noting where redactions in the Document have been made. Documents authored by outside lawyers representing the Company that were not directly or indirectly furnished to the Company or any third-party, such as internal firm memoranda, may be omitted from the log. Provide the log in Microsoft Excel format.

10. If Documents responsive to a particular request no longer exist for reasons other than the ordinary course of business or the implementation of the Company's Document retention policy, but the Company has reason to believe such Documents have been in existence, state the circumstances under which they were lost or destroyed, describe the Documents to the fullest extent possible, state the request(s) to which they are responsive, and identify persons having knowledge of the content of such Documents.

11. If you object to any part of a request, set forth the basis for your objection and respond to all parts of the request to which you do not object. All objections must be made with particularity and must set forth all the information upon which you intend to rely in response to any motion to compel.

12. All objections must state with particularity whether and in what manner the objection is being relied upon as a basis for limiting the scope of any search for Documents or withholding any responsive Documents. If you are withholding responsive information pursuant to any general objection, you should so expressly indicate. If, in responding to any request, you claim any ambiguity in interpreting either the request or a definition or instruction applicably thereto, set forth as part of your response the language deemed to be ambiguous and the interpretation used in responding to the request, and produce all Documents that are responsive to the request as you interpret it.

13. Whenever necessary to bring within the scope of a request a response that might otherwise be construed to be outside its scope, the following construction should be applied:

    a. Construing the terms "and" and "or" in the disjunctive or conjunctive, as necessary, to make the request more inclusive;

      b.      Construing the singular form of any word to include the plural and plural form to include the singular;

      c.      Construing the past tense of the verb to include the present tense and present tense to include the past tense;

      d.      Construing the masculine form to include the feminine form and vice versa; and

      e.      Construing the term "date" to mean the exact day, month, and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters.

14. Unless otherwise stated, construe each request independently and without reference to any other purpose or limitation.

15. Except as otherwise provided below, the Company's response to this subpoena shall be submitted to the Commission through email and using secure file transfer protocols ("FTP"). For instructions on submitting through FTP, please contact Nandu Machiraju at 202-326-2081 or at nmachiraju@ftc.gov.

16. Contact Nandu Machiraju at 202-326-2081 or at nmachiraju@ftc.gov with any questions you have relating to the scope or meaning of this subpoena.