

```
                                                            200 Park Avenue
                                                            New York, NY 10166
                                                            T +1 212 294 6700
                                                            F +1 212 294 4700


                                                            HEATHER LAMBERG
                                                                        Partner
                                                                 +1 202 282 5274
                                                       HLamberg@winston.com

                                                            KERRY DONOVAN
                                                                        Partner
                                                                 +1 202 294 3511
                                                       KCDonovan@winston.com
```

March 8, 2021

The Honorable James B. Clark, III
United States District Court
District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

**Re:**   *Federal Trade Commission v. Hackensack Meridian Health, Inc., et al.*, No. 2:20-cv-18140-JMV-JBC – **Request to Compel Subpoena Compliance by NewYork-Presbyterian Hospital**

Dear Judge Clark:

We write on behalf of Defendant Englewood Healthcare Foundation ("Englewood") to ask the Court to compel third-party NewYork-Presbyterian Hospital ("NYP") to comply with a subpoena to produce documents initially issued on January 6, 2021.[1]  Since serving the subpoena, Englewood and NYP have met and conferred extensively, and have substantively agreed on the scope of what NYP is to produce.[2]  However, to date, NYP has only produced four responsive documents.[3]  NYP is an important third party as it operates a major, nationally-ranked hospital and academic medical center less than 7 miles from Englewood – in fact closer to Englewood than its proposed merger partner HMH.  NYP listed is on Defendants witness list.  Given that discovery in this expedited preliminary injunction matter closes in just four short days, on March 12, Englewood requests that the Court resolve this dispute on an expedited basis at the already-scheduled status conference on March 11 at 1:30 p.m., and order NYP to promptly produce the agreed-upon documents.

**I.   Background**

On January 6, 2021, Englewood served a document subpoena to NYP.  Thereafter, Englewood and NYP met and conferred extensively by telephone and email to discuss NYP's concerns with the scope of the document requests.  In response to NYP's objections, and to alleviate NYP's concerns, Englewood

---

[1] *See* Ex. 1, Subpoena to NYP as amended.
[2] Englewood and NYP's counsel had written or phone communications on January 6, 14, 15, 18, 19, 22, 24 26, 27, 29, February 3, 9, 10, 15, 16, 22, 23, 24, 25, 26, 27, 28, March 3, 4, 5, 6, 7, and 8.
[3] Responses to Document Request Nos. 2, 5, 6, 7, 9, 14, and 15 remain outstanding, and we have received only a partial response to Request No. 10.



March 8, 2021
Page 2

narrowed and clarified its document requests to ensure that the requests were tailored to relevant information that NYP uniquely possessed.

On January 29, 2021, Englewood and NYP reached an agreement on the types of documents that would be produced and the manner in which they would be collected. Certain requests seek documents "sufficient to show" or otherwise only require a targeted self-pull. Other requests (Nos. 2, 5-7, 9-10, and 14), Englewood proposed limiting those responses to certain custodians and targeted search terms to aid in NYP's document collection and review. That same day, NYP agreed that it would run Englewood's proposed search terms, and would let Englewood know *early the next week* (the week of February 1) whether NYP ran into any significant issues with the search terms.[4] Englewood made clear to NYP – as it is has with all third parties – that if there were any issues with the search terms, to inform Englewood and that Englewood would work with NYP to narrow or determine a solution.[5]

On February 3, NYP promised that it was: "still on track to start our rolling production later this week."[6] But NYP did not start its rolling production by February 5, as assured. Englewood sought a meet and confer to understand NYP's timeline for completion of its document production, during which NYP did not mention any issues with the search terms but promised that Englewood would receive responses to two requests by February 12, and a complete production of documents by the week of February 15.[7]

NYP, again, did not meet its self-imposed deadline for completing its production of documents. On February 16, NYP produced documents concerning NYP's service area information (responsive to Request No. 4), audited financials for the NYP system overall (partially responsive to Request No. 13), and written responses stating that it did not have documents responsive to Request Nos. 3, 8, 11, and 12. NYP's total production was a mere four documents. To date, these are the only documents that Englewood has received from NYP, and NYP has still not produced documents responsive to the vast majority of Englewood's document requests.

At the start of the next week, on February 22, and after not receiving a complete document production from NYP, Englewood again asked when NYP planned to produce documents responsive to the outstanding requests and reemphasized the impending March 12 discovery deadline.[8] Despite just two weeks prior stating that it would complete document production between February 15 and 19, NYP now informed Englewood for the first time that it would not complete document production until after the close of discovery. Specifically, on February 25, NYP emailed Englewood that NYP "will not be in a position to complete its production before the March 12th discovery cut-off date," and attributed delay to "[t]he size of the health system, the complexity of the IT systems in use, the need to use a third-party vendor to perform many of the searches, and COVID," which had not previously been raised.[9]

---

[4] Ex. 2, Email from E.J. Steren (Jan. 29, 2021).
[5] The search terms proposed to NYP are the same search terms that have been run by other third parties who have completed their document productions. NYP benefited from the work of these other third parties because through meet and confers with other hospitals, some of those hospitals identified search terms that were yielding a high number of hits and, in turn, Englewood adjusted its search terms, those third parties ran them and produced documents in a timely manner.
[6] Ex. 3, Email from E.J. Steren (Feb. 3, 2021).
[7] *See* Ex. 4, Email from K. Goldstein (Feb. 15, 2021).
[8] Ex. 5, Email from K. Goldstein (Feb. 22, 2021).
[9] Ex. 6, Email from E.J. Steren (Feb. 25, 2021).



March 8, 2021<br>Page 3

While Englewood immediately sought to meet and confer about the issue, NYP could not provide any concrete information on the precise IT issues or when NYP could reasonably complete its production of documents.  During the meet and confer, Englewood reemphasized its eagerness to understand the IT issues causing the delay in order to try to come up with a solution or workaround.  Even with Englewood's willingness to assist, NYP could not provide any information on the IT issues (*e.g.*, NYP could not tell us whether the documents had been collected, whether the search terms had been run, or whether the "IT issues" were particular to certain types of documents or custodians), nor did NYP propose a solution or inform Englewood how it could help resolve the issues.

Englewood and NYP met and conferred again on March 3.  During this conversation, NYP stated that it now believes that it cannot complete its production until the end of the month, because of "IT hurdles" faced by NYP and the vendor it has contracted with to handle the document collection.  Englewood explained that production at the end of the month would not work because, fact discovery ends March 12 and expert reports and preliminary injunction briefing commences on March 19 and 22.  Englewood again asked if NYP could provide more information about the IT hurdles, so that Englewood could assist and/or remedy the issues, if possible.  Again, NYP provided no insight during the call, but agreed to provide Englewood an update by Friday March 5 about the specific items preventing NYP from timely producing documents.

In a March 4 follow-up email, to help expedite and work around NYP's technical difficulties with searching its electronic files, Englewood proposed that NYP do a self-pull from relevant custodians and/or departments for documents related to Request No. 2 (the proposed merger, discussions with the FTC, etc.) and Request No. 14 (documents relating to the Englewood RFP), leaving only Request Nos. 5-7 and 9 subject to ESI searches that presumably are the cause of IT issues.[10]   Notably, documents responsive to Request No. 15 (advertising that specifically targets Northern New Jersey) have not been produced, despite not being subject to any ESI/technical issues.

On March 6, NYP emailed Englewood and stated there had been delay due to NYP IT having difficulty searching "certain sources including Box drives and G drives."  NYP's email did not identify what responsive material was in the Box or G drives it referenced (which had never before been mentioned during meet-and-confers); gave no explanation for the delay with producing documents from any other sources; and did not state whether any other documents had been collected, or searched, or whether review had begun.  Moreover, NYP counsel stated again that they "do not have any further estimate at this time of a completion date," and did not offer any proposals for expediting NYP's production.[11]   Englewood responded again on March 7 requesting additional information and reiterated that it remains willing to discuss any reasonable solution that may expedite NYP's production, but could wait no longer to seek the Court's assistance in obtaining NYP's production.

---

[10] *See* Ex. 7, Email from J. Cartwright (Mar. 4, 2021).
[11] Ex. 8, Email from E.J. Steren (Mar. 6, 2021).



## II. Englewood's Requests Are Tailored to Relevant Information NYP Uniquely Possesses

Since the start of discovery, Englewood and HMH have issued 31 document subpoenas to third parties, including NYP. NYP is the *only* third-party that has claimed technical issues so severe as to prevent NYP from producing anything (other than four documents) by the close of discovery, or within a reasonable time thereafter.

Notably, Englewood's document requests are tailored to relevant information that NYP uniquely possesses and not unduly burdensome. As discussed, the parties resolved the scope of the document requests by the end of January, well over a month ago. Attached as Appendix A is a table summarizing Englewood's subpoena requests, the status of NYP's response (or lack thereof), and the narrowing clarifications Englewood has provided. As that Appendix reflects, these requests go to core issues in the case focused on discovering the extent of NYP's competition with Englewood and HMH. We believe the burden of responding to these requests is modest and reasonable, as shown by the many other third-parties who have responded to similar document requests (including using the same search terms) within the same time constraints.

While Englewood remains committed to meeting and conferring with NYP to resolve the technical issues that NYP is facing, we cannot do so with no transparency into the process and continued promises of production that are not met. Accordingly, Englewood requests that the Court order NYP to immediately commence a rolling production and complete its production no later than March 17. It is critical that NYP produce the documents it agreed in a timely manner that allows Defendants to use them in a deposition and possibly in expert reports and preliminary injunction briefing.

## III. 30(b)(6) Deposition

On February 24, just before NYP informed Englewood that it would not produce documents until after the close of fact discovery, the parties agreed to depose NYP's designee(s)[12] on March 10, 2021. When Englewood learned that NYP will not complete document production by March 10, it promptly informed NYP that it would not go forward with the March 10 deposition because it needed the documents prior to the deposition, which NYP acknowledged.

Taking NYP's deposition after the close of fact discovery is warranted, given the IT issues that NYP faced that has prevented NYP from completing document production. *See* Case Management Order, ECF No. 61, ¶ B.4 (noting that, although "no depositions shall be taken after the close of fact discovery absent a showing of good cause… delays in compliance with document subpoenas served sufficiently in advance of the deposition that a third-party attributes to external factors may constitute good cause."). This will not be the only deposition scheduled after the close of discovery, the parties have agreed to several depositions during the week of March 15 (including one scheduled on March 19).[13] Given the importance of NYP to this case, we request that the deposition of NYP proceed no earlier than three days after NYP certifies it has substantially completed its production.

---

[12] NYP has informed the parties that NYP will produce Burak Malatyali as its designated 30(b)(6) witness.
[13] The FTC has acknowledged that the NYP deposition cannot be completed before the existing close of discovery, but the parties have not to-date been able to agree on how to proceed under these circumstances.



## IV.   Conclusion

Englewood will continue to vigorously pursue all outstanding discovery from NYP but requests this Court's intervention. For the reasons explained above, Englewood requests that the Court order NYP to respond substantively to Request Nos. 2, 5, 6, 7, 9, 10, 14, and 15 of the subpoena and produce all documents sufficiently by March 17. Englewood also requests that the Court permit NYP's 30(b)(6) deposition to take place shortly after NYP completes document production. Englewood appreciates the Court's expedited consideration of this letter and welcomes the opportunity to participate in an oral argument.

Respectfully submitted,

*s/ Kerry C. Donovan*

Jeffrey L. Kessler (admitted *pro hac vice*)
Jeffrey J. Amato (admitted *pro hac vice*)
Kerry C. Donovan
Johanna Rae Hudgens (admitted *pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10163
Telephone: 212-294-4698
Facsimile: 212-294-4700
jkessler@winston.com
jamato@winston.com
kcdonovan@winston.com
jhudgens@winston.com

Heather P. Lamberg (admitted *pro hac vice*)
WINSTON & STRAWN LLP
1901 L Street, NW
Washington DC 20036
Telephone: 202-282-5274
Facsimile: 202-282-5100
hlamberg@winston.com

David E. Dahlquist (admitted *pro hac vice*)
Kevin B. Goldstein (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: 312-558-5660



March 8, 2021
Page 6

        Facsimile: 312-558-5700
        ddahlquist@winston.com
        kbgoldstein@winston.com

        Angelo J. Genova
        James Bucci
        Peter Berk
        GENOVA BURNS LLC
        494 Broad Street
        Newark, NJ 07102
        (973) 533-0777
        agenova@genovaburns.com
        jbucci@genovaburns.com
        pberk@genovaburns.com

        *Counsel for Defendant Englewood Health Foundation*

cc:    All counsel of record (via ECF)
       Counsel for Third Party NYP:
            Edward John Steren, Esq. (ESteren@ebglaw.com)
            Mark Lutes, Esq. (MLutes@ebglaw.com)
            EPSTEIN BECKER & GREEN, P.C.