# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> HACKENSACK MERIDIAN HEALTH, INC. and ENGLEWOOD HEALTHCARE FOUNDATION, <br><br> Defendants. | Civil Action No. 2:20-cv-18140-JMV-JBC |

## DEFENDANT ENGLEWOOD HEALTHCARE FOUNDATION'S OPPOSITION TO THE HOSPITAL FOR SPECIAL SURGERY'S MOTION TO QUASH

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................. 1

PROCEDURAL HISTORY .................................................................. 3

ARGUMENT ....................................................................................... 5

  I.   HSS IS REQUIRED TO PRODUCE THE REQUESTED DOCUMENTS ... 5

     A.   Discovery from HSS is Plainly Relevant to this Case ............................. 8

     B. Englewood's Pending Requests are Tailored to Obtain Highly Relevant
Documents That HSS Uniquely Possesses. ................................................16

     C.   HSS Has Made No Showing of Burden .................................................18

  II.   HSS IS NOT ENTITLED TO COSTS .......................................................20

CONCLUSION ...................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adesanya v. Novartis Pharm. Corp.*,
  2015 WL 7574362 (D.N.J. Nov. 24, 2015) ...................................................18

*In re Am. Nurses Ass'n*,
  643 F. App'x 310 (4th Cir. 2016)....................................................................21

*Baldus v. Members of the WI Gov't Accountability Bd.*,
  2012 WL 10610 (E.D. Wisc. Jan. 3, 2012).....................................................24

*Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.*,
  319 F.R.D. 277 (N.D. Cal. 2017) ....................................................................23

*Bowers v. Nat. Collegiate Ath. Ass'n*,
  475 F.3d 524 (3d Cir. 2007).............................................................................24

*Cont'l Cas. Co. v. J.M. Huber Corp.*,
  2017 WL 6492492 (D.N.J. Dec. 19, 2017)........................................................6

*CSX Transp., Inc. v. Gilkison*,
  2009 WL 2985594 (N.D.W. Va. Sept. 15, 2009) ............................................24

*Dial Corp. v. News Corp.*,
  2015 WL 3778533 (May 19, 2015 S.D.N.Y. 2015).........................................12

*Fed. Trade Comm'n v. Advocate Health Care Network*,
  No. 16-2492, ECF No. 40 (7th Cir. 2016) ................................................ 14-15

*Fed. Trade Comm'n v. Thomas Jefferson Univ.*,
  2020 WL 7227250 (E.D. Pa. Dec. 8, 2020)......................................................8

*Fed Trade Comm'n v. Thomas Jefferson Univ.*,
  No. 2:20-cv-01113-GJP, ECF No. 226 (E.D. Pa. Oct. 12, 2020).....................14

*Fed. Trade Comm'n v. Thomas Jefferson Univ.*,
  2020 WL 3034809 (E.D. Pa. June 5, 2020)...................................2, 7, 8, 13, 14

*Fed. Trade Comm'n v. Freeman Hosp.*,
  69 F.3d 260 (8th Cir. 1995)...............................................................................8

*Fed. Trade Comm'n v. Whole Foods Mkt., Inc.*,
548 F.3d 1028 (D.C. Cir. 2008) ........................................................................14

*Gould v. O'Neal*,
2019 WL 4686991 (D.N.J. Sept. 26, 2019) ....................................................5, 6

*Groark v. Timek*,
989 F. Supp. 2d 378 (D.N.J. 2013)....................................................................13

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
2007 WL 2668742 (D. Kan. Sept. 6, 2007)........................................................12

*Hyundai Motor Am., Inc. v. Pinnacle Grp., LLC*,
2016 WL 6208313 (C.D. Cal. Apr. 20, 2016) ...................................................23

*Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*,
2016 WL 7042117 (D. Minn. July 25, 2016) ....................................................12

*In re Namenda Direct Purchaser Antitrust Litig.*,
2017 WL 3822883 (S.D.N.Y. Aug. 30, 2017).....................................................20

*OMS Invs., Inc. v. Lebanon Seaboard Corp.*,
2008 WL 4952445 (D.N.J. Nov. 18, 2008) .........................................................5

*R.J. Reynolds Tobacco v. Philip Morris, Inc.*,
29 F. App'x 880 (3d Cir. 2002)................................................................. 21-22

*Radio Music License Comm. Inc. v. Global Music Rights LLC*,
2020 WL 7636281 (C.D. Cal. Jan. 2, 2020) ....................................................12

*Robertson v. Cartinhour*,
711 F.Supp.2d 136 (D.D.C. 2010) ...................................................................24

*United States v. McGraw-Hill Co., Inc.*,
302 F.R.D. 532 (C.D. Cal. 2014) .....................................................................22

*United States v. Phillipsburg Nat'l Bank & Tr. Co.*,
399 U.S. 350 (1970)..........................................................................................14

*Vident v. Dentsply Int'l, Inc.*,
2008 WL 4384124 (C.D. Cal. Aug. 29, 2008)...................................................12

*W. Penn Allegheny Health Sys., Inc. v. UPMC,*
    2013 WL 12134101 (W.D. Pa. Feb. 15, 2013) .......................................... 22-23

**Other Authorities**

New Jersey Admin. Code § 11.24A-4 ...................................................................12

Rule 26 ........................................................................................ 5, 6, 13, 19, 20

Rule 45 ........................................................................................... 5, 6, 7, 19, 21

**INTRODUCTION**

The Hospital for Special Surgery's ("HSS") motion to quash is detached from reality and disregards the fundamental rules of discovery. Who will care for that child injured on the playground mentioned in the first paragraph of HSS's motion? HSS is ready *at its Bergen County urgent care facility* and eager to transfer a patient for any necessary musculoskeletal inpatient care to its nearby New York hospital. There can be no doubt that HSS is in possession of information relevant to the core issues in this case. The complaint in this action filed by the Federal Trade Commission ("FTC") seeks to prevent the proposed merger between Hackensack Meridian Health, Inc. ("HMH") and Englewood Healthcare Foundation ("Englewood"), hospitals operating in Northern New Jersey. The FTC alleges the proposed merger will substantially lessen competition in Bergen County for general acute care ("GAC") hospital services that will outweigh any pro-competitive benefits.

HSS directly competes with HMH and Englewood through at least three different strategies. First, HSS's Main Campus is a hospital located just six miles from Bergen County, which provides acute care hospital services overlapping with HMH and Englewood in the areas of orthopedics, rheumatology, and musculoskeletal conditions. Second, HSS operates an outpatient facility *in Bergen County* designed to steer patients to its hospital in New York. Third, HSS operates

1

an urgent care center **in Bergen County** for serious orthopedic injuries that would otherwise require a trip to a hospital emergency room.  HSS is in possession of relevant information about competition for GAC hospital services and should be ordered to comply with the subpoena.

HSS erroneously contends that it is irrelevant to this litigation because (1) HSS does not offer each and every inpatient hospital service included in the FTC's alleged "cluster" market for GAC hospital services (although it concedes it offers some of the orthopedic services included in the market) and (2) HSS's inpatient hospital is not located in the FTC's alleged geographic market of Bergen County. Resting on this relevance objection, HSS has not produced even a single document in response to Englewood's subpoena.  But discovery—even from a third party—is not limited only to those facts that fit nicely into a subpoenaed party's view of plaintiff's case.  Defendants are equally entitled to discovery that is relevant to their defenses.  That is precisely what Englewood is seeking from HSS:  documents relevant to rebut the FTC's alleged market definitions.  HSS's same argument that it is irrelevant because it falls outside the FTC's alleged markets and therefore should not be required to produce documents responsive to the subpoena was made and rejected in *Federal Trade Commission v. Thomas Jefferson University*, 2020 WL 3034809, *2 (E.D. Pa. June 5, 2020) (hereinafter "*Jefferson/Einstein*").

HSS's argument that documents from a specialty hospital that offers some, but not all, of the cluster GAC hospital services are not probative is flatly inconsistent with other "cluster" GAC market cases where the FTC itself relied upon evidence from specialty hospitals.  The discovery Englewood seeks from HSS is plainly relevant to this case under any standard for third party discovery and cannot be obtained from other sources.  Tellingly, in our meet and confers, HSS has articulated no burden whatsoever of producing the requested information, nor could it, given that the pending requests are narrowly tailored to information highly relevant to Defendants' defense.

Finally, if any party should be ordered to pay expenses, it is HSS for its frivolous motion to quash and baseless refusal to comply with a subpoena.  HSS's fees incurred to date are due to its *own* efforts to avoid and delay lawful discovery, and it has done nothing to show that it cannot bear the cost of Englewood's document requests.  Accordingly, Englewood respectfully requests that this Court deny HSS's motion to quash.

## **PROCEDURAL HISTORY**

HSS has gone to great lengths to avoid discovery in this case.  Englewood served a subpoena for documents on HSS on January 6, 2021.  ECF No. 98-3.  On January 27, HSS provided its objections and responses, refusing to produce any documents and failing to substantively respond to nearly every request.  ECF No.

98-4.  HSS also issued an unenforceable request for documents on Englewood.  ECF No. 98-5.

On January 30, Englewood sent HSS an email explaining HSS's relevance to this litigation and offering to work with HSS "on burden concerns."  ECF No. 98-6. This email highlighted priority requests and proposed a meet and confer to further narrow the issues.  In response to this email, on February 1, HSS sent Englewood a six-page letter continuing to argue why it is not relevant to this litigation.  ECF No. 98-7.

Nearly a month after the subpoena was issued, on February 4, the parties engaged in their first substantive meet and confer.  Englewood proposed further modifications to narrow the scope of the subpoena (these proposed modifications are detailed in a February 8 follow-up email to HSS).  ECF No. 98-9.  On February 8, HSS requested another meet and confer, during which it did not respond to Englewood's document proposals, but instead proposed providing Englewood with a declaration of "basic facts" that the FTC would also sign off on in lieu of complying with the subpoena.  The following day, Englewood informed HSS that it did not see the declaration as a workable solution, and HSS stated it would consider the document requests as modified.  Finally, on February 15, HSS informed Englewood that it did not intend to produce any documents and was resting on its general objections.

Given HSS's unwillingness to comply with any of the document requests, Englewood sought relief from this Court through a letter filed on February 19. ECF No. 78. HSS filed a response letter, arguing that this Court did not have jurisdiction to enforce the subpoena, and even if it did, Englewood was not entitled to any discovery from HSS. ECF No. 80. HSS attached a proposed motion to quash to its letter. ECF No. 80-1. In an attempt to expedite the process, Englewood served a second subpoena on HSS, changing the place of production to a location within the District of New Jersey. ECF No. 98-10.

At the Court's discovery hearing on February 24, Englewood expressed its position that the Court had sufficient information from both parties on this discovery dispute to rule on the issue. However, HSS requested that the Court issue a briefing schedule and set up a subsequent hearing.

## **ARGUMENT**

## I. **HSS IS REQUIRED TO PRODUCE THE REQUESTED DOCUMENTS**

The relevance objections lodged by HSS are shockingly detached from the reality of discovery in federal litigation. "The scope of discovery in federal litigation is broad." *OMS Invs., Inc. v. Lebanon Seaboard Corp.*, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008). Discovery sought via a subpoena under Rule 45 is governed by the scope of discovery permissible under Rule 26(b). *Gould v. O'Neal*, 2019 WL 4686991, at *3 (D.N.J. Sept. 26, 2019). Rule 26(b)(1), in turn, provides that "Parties

may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim *or defense* and proportional to the needs of the case." (emphasis added). "Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage." *Cont'l Cas. Co. v. J.M. Huber Corp.*, 2017 WL 6492492, at *4 (D.N.J. Dec. 19, 2017). "In applying Rules 26 and 45, Courts must balance several competing factors in assessing the reasonableness of a subpoena: (1) relevance, (2) the party's need for the documents, (3) the breadth of the document request, (4) the time period covered by it, (5) the particularity with which the documents are described, (6) the burden imposed, and (7) the subpoena recipient's status as a nonparty to the litigation." *Gould*, 2019 WL 4686991, at *3. As explained below, this standard is met: the documents Englewood is seeking are highly relevant, not readily available from other sources, tailored to the key issues in the case, and do not impose undue burden and expense (indeed, HSS has not articulated any burden).

HSS incorrectly asserts that a different, "substantial need" standard is warranted. HSS Mot. at 12. This "substantial need" standard applies *not* to third-party discovery generally, but to third-party discovery requests that *require disclosure of certain protected information*. Rule 45(d)(3)(B)(i) states that if the subpoenaed entity shows that the subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information," the burden

shifts to the serving party to "(i) show[] a substantial need for the . . . material that cannot be otherwise met without undue hardship; and (ii) ensure[] that the subpoenaed [entity] will be reasonably compensated."  Fed. R. Civ. P. 45(d)(3)(C). The burden does not shift to Englewood here because HSS has not shown any threat of disclosing "a trade secret or other confidential research, development, or commercial information."

Moreover, HSS has not, and cannot, show that all of the documents that Englewood seeks qualify as confidential information.  For example, Request 13 seeks information about HSS's current and previous advertisements targeted at New Jersey.  Advertising surely is not confidential information.  To the extent that some of the requests seek "confidential" information, there is a Protective Order in place specifically designed to protect third parties' confidential information.  *See* ECF No. 63.  Under the Protective Order, "third parties . . . complying with informal discovery requests, disclosure requirements, or discovery demands in this proceeding may designate any responsive document or portion thereof as Confidential."  *Id.* at ¶ 2. Documents classified as "Confidential" may only be disclosed to limited classes of recipients, including outside counsel, but broadly excluding Defendants' in-house counsel or business people, and other third parties.  *Id.* at ¶ 9.  In *Jefferson/Einstein*, the Eastern District of Pennsylvania correctly recognized that "the Court's Stipulated Protective Order serves as an adequate safeguard" against disclosure of a non-party's

confidential information.  2020 WL 3034809, *2.  Given that there is a Protective Order in place to protect all non-parties' confidential documents in this case, the burden does not shift to Englewood to show a "substantial need" for the requested documents.  In any event, as shown below, Englewood satisfies both standards.

### A.    Discovery from HSS is Plainly Relevant to this Case.

The discovery Englewood seeks from HSS is highly relevant to show that the FTC's alleged relevant market—a "cluster of individual inpatient General Acute Care hospital services" that is "no broader than Bergen County, New Jersey"—is utterly flawed.  (Compl. ¶ 33, 37); *see, e.g., Fed. Trade Comm'n v. Freeman Hosp.*, 69 F.3d 260, 268 (8th Cir. 1995) (holding that if the FTC fails to prove the relevant product or geographic market, its claims necessarily fail).  To determine whether the FTC is entitled to a preliminary injunction enjoining the proposed merger as allegedly anticompetitive, the Court must undertake a detailed "examination of the particular market" including its "structure, history and probable future." *Fed. Trade Comm'n v. Thomas Jefferson Univ.*, 2020 WL 7227250, at *10 (E.D. Pa. Dec. 8, 2020).

HSS holds relevant facts for these inquiries and should be compelled to comply with the subpoena.  HSS has long operated its "HSS Main Campus" inpatient hospital in New York City, located just 13 miles from Englewood Hospital.  HSS's Main Campus offers many of the same inpatient orthopedic services that Defendants

offer in Northern New Jersey, such as joint replacements, bone fracture treatment, ligament surgeries and arthritis treatment.  HSS admits that these overlapping inpatient orthopedic services fall within the FTC's alleged "cluster" product market of inpatient GAC services.  HSS Mot. at 15.

Given HSS's proximity, it is not surprising that, over the last decade, HSS has specifically targeted Northern New Jersey—particularly Bergen County—for strategic investments and growth, including opening a large "HSS Paramus" outpatient center in Bergen County in 2014.[1]  When HSS opened its Paramus facility, HSS's CEO explained that "*the New Jersey market is an important part of the hospital's growth strategy*."[2]  While the Paramus facility provides outpatient care, it was clearly intended to (and did) drive Bergen County patients needing inpatient services to the HSS Main Campus in Manhattan.  HSS admits such in its press release, "HSS already attract[ed] a large patient population from northern New Jersey" and "*if surgery is needed, it will be performed at the main hospital in Manhattan*."[3]  HSS further admits that its Paramus facility "refers patients who need specialized, inpatient orthopedic services to HSS's New York City campus"—many of these are services that could otherwise have been performed at Defendants'

---

[1] Ex. 1, HSS, *Hospital for Special Surgery Opens New Location in Paramus, New Jersey* (Nov. 17, 2014), https://www.hss.edu/newsroom_hss-new-location-paramus-new-jersey.asp.

[2] *Id.* (emphasis added).

[3] *Id.* (emphasis added).

hospitals in Bergen County.  HSS Mot. at n.12.  In addition to opening facilities in Northern New Jersey, HSS's intentional, active competition in Northern New Jersey is further evidenced from its advertising efforts specifically targeting patients residing in Northern New Jersey.  For example, HSS has advertised in NJ Transit signage—a clear effort to target New Jersey commuters.[4]  HSS also advertises in TV commercials broadcast in New Jersey, closing with the HSS logo underscored by text announcing its presence in "New York · New Jersey · Connecticut · Now in Florida."[5]

HSS's inpatient discharges reflect that this strategy has been successful. According to HSS's public filings from 2015-2017, 19% of all HSS inpatient discharges were from patients residing in Northern/Central New Jersey.[6]  This is the largest percentage of patients attributed to any region that HSS's public filings break out.

In light of its success in Bergen County, HSS further invested to expand its Paramus location in 2017, and in 2018 deepened its presence in Bergen County with another new "strategic investment" to create the first Ivy Rehab HSS Physical

---

[4] *See* Ex. 2, NJ Transit advertisement.

[5] *See* Ex. 3, commercial screenshot.  HSS's full "How You Move" commercial is viewable on HSS's YouTube channel at https://www.youtube.com/watch?v=M2--c3PSZg8, posted July 1, 2020.

[6] Ex. 4, HSS Taxable Bonds, Series 2018, Offering Memorandum, App. A, at A-10 at A-11.

Therapy Center of Excellence in Englewood.[7]   Most recently, HSS opened an orthopedic urgent care center in Paramus in 2020.[8]   The President of HSS stated that "Orthopedic injuries, such as sprains, strains and broken bones, are among the most common reasons people go to a hospital emergency room …. HSS Urgent Ortho Care provides an alternative to enable people to have their injury evaluated."  If that Bergen County patient who visits HSS's urgent care center needs orthopedic surgery, he or she will be given the option of having the procedure at Hospital for Special Surgery in Manhattan.   HSS' obvious efforts to invest in Northern New Jersey as a means to drive New Jersey patients (many who could have otherwise been treated at Defendants' hospitals) to its Manhattan hospital for inpatient treatment (facts inconsistent with the FTC's alleged Bergen County only market) is highly relevant to Defendants' defense that the FTC incorrectly defined the relevant market.

Despite HSS's obvious focus on Northern New Jersey and admission that it competes with Englewood and HMH for orthopedic services, HSS takes the incredible position that it is wholly irrelevant to this case and need not comply with

---

[7] Ex. 5, HSS, *HSS and Ivy Rehab to Create Physical Therapy Centers of Excellence Nationwide* (Aug. 15, 2018), https://news.hss.edu/hss-and-ivy-rehab-to-create-physical-therapy-centers-of-excellence-nationwide/.

[8] Ex. 6, HSS, *HSS Urgent Ortho Care Opens in NYC, Long Island, NJ and CT* (Apr. 8, 2020), https://news.hss.edu/hss-urgent-ortho-care-opens-in-nyc-long-island-nj-and-ct/.

Englewood's subpoena—not even produce a single document—because it does not fit neatly within the FTC's alleged market definition.[9]  Namely, it contends that its documents are not relevant because HSS's inpatient hospital is in New York City (a mere 13 miles from Englewood), not in the alleged Bergen County market, and because HSS only offers one of the services included in the FTC's alleged "cluster" of inpatient GAC services market.[10]  According to HSS, "[d]iscovery outside the [alleged] relevant market is 'not relevant on its face.'"  HSS Mot. at 14-15.[11]

---

[9] HSS also argues that it is not a competitor for payors based on the adequacy requirement in New Jersey Administrative Code § 11:24A-4.10, which precludes insurers from offering plans without a Bergen County hospital or one within 10 miles.  But this statute is only applicable to *managed care*, not all commercial insurance products.  *See* § 11:24A-4.1 ("This subchapter shall apply to all carriers that have delivered, will deliver or offer for delivery in this State a health benefits plan that is a managed care plan.").  Further, competition between providers is not limited to competing to satisfy one particular minimum adequacy requirement.

[10] It should be noted that several New York hospitals without a presence in Bergen County have complied with third-party subpoenas in this case, including a specialty hospital.

[11] The cases HSS cites in support of this argument are inapposite.  In *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*, 2007 WL 2668742 (D. Kan. Sept. 6, 2007), the court declined to grant the *plaintiff's* motion to compel the production of patient data for facilities in Missouri where the plaintiff "never contended the appropriate geographic scope of this litigation span[ned] the state of Missouri."  In *Radio Music License Committee Inc. v. Global Music Rights LLC*, 2020 WL 7636281 (C.D. Cal. Jan. 2, 2020), *Dial Corporation v. News Corporation*, 2015 WL 3778533 (May 19, 2015 S.D.N.Y. 2015), and *Vident v. Dentsply International, Inc.*, 2008 WL 4384124 (C.D. Cal. Aug. 29, 2008), the courts declined to compel the production of discovery from entities outside the alleged market where the alleged market was not disputed.  And in *Inline Packaging, LLC v. Graphic Packaging International, Inc.*, 2016 WL 7042117, at *6 (D. Minn. July 25, 2016) the court held that the "subject matter scope of discovery . . . [was] limited to the

But the federal rules do not start with the conclusion that the plaintiff's allegations are correct and then limit discovery only to facts that fit the plaintiff's case.  "Rule 26 does not limit discovery to evidence which tends to prove [a] plaintiff's claim." *Groark v. Timek*, 989 F. Supp. 2d 378, 397 (D.N.J. 2013).  Rather, it explicitly provides that information relevant to a party's defense is also discoverable. Fed. R. Civ. P. 26(b).[12]  Another recent FTC hospital merger challenge is directly on point.  In *Jefferson/Einstein*, the Eastern District of Pennsylvania rejected a third party's attempt to avoid responding to a subpoena based on its claims that it was "not a direct competitor" of defendants and that its specialty services did not fall within the market alleged in the complaint.  In rejecting this argument, the Court explained:

> The discovery requested from [third party] is relevant to Einstein's defense concerning whether [third party], in fact, exists as a competitor for acute rehabilitation services in the proper relevant market.  Indeed, because Einstein contends that [third party's] services compete with those of Einstein and Jefferson, the subpoena requests are relevant to evaluating both the product and the geographic market.

2020 WL 3034809, at *2 (E.D. Pa. June 5, 2020).[13]

---

patents, products, entities, and instances of anti-competitive conduct specifically alleged in support of the claims *or defenses* in the pleadings."  (emphasis added).

[12] HSS falsely asserts that Englewood is "proffering a different market with no anticompetitive effects."  HSS Mot. at 3.  Not the case.  Englewood is using discovery obtained from third parties to rebut the FTC's alleged market.

[13] HSS attempts to distinguish *Jefferson/Einstein* from the present case by noting that the FTC defined two relevant markets in *Jefferson/Einstein*: (1) an inpatient GAC hospital services market and (2) a single-line acute care rehabilitation services

Moreover, it is not the case that a hospital must offer *each and every one* of the services in the alleged "cluster" market to be relevant for discovery purposes. The FTC itself has acknowledged that specialty hospitals (like HSS) are relevant in inpatient GAC hospital services markets.[14]   In *Jefferson/Einstein*, the FTC relied upon evidence from at least four specialized third-party hospitals in its alleged relevant market of a cluster of GAC inpatient services, including a specialized surgical hospital, two cancer specialist hospitals, and a children's hospital.  *See, e.g.* Pltf's Proposed Findings of Fact & Conclusions of Law, *Fed Trade Comm'n v. Thomas Jefferson Univ.*, No. 2:20-cv-01113-GJP, ECF No. 226 at 7-9 (E.D. Pa. Oct. 12, 2020).   Likewise, in *Federal Trade Commission v. Advocate Health Care Network*, the FTC's expert included discharges from a children's specialty hospital

---

market.   This makes no difference.   The third party moving to quash in *Jefferson/Einstein* argued that it did not compete with defendants in the acute rehabilitation services market, just as HSS argues that it does not compete with Englewood and HMH in the inpatient GAC hospital services market.  The court correctly found that when a defendant disputes the alleged relevant market in a merger challenge, it may obtain discovery from third parties it asserts may disprove the alleged market.

[14] HSS references two cases, *United States v. Phillipsburg Nat'l Bank & Trust Co.*, 399 U.S. 350 (1970) and *Fed. Trade Comm'n v. Whole Foods Mkt., Inc.*, 548 F.3d 1028 (D.C. Cir. 2008), in support of its position that cluster markets exclude specialty providers.  But these cases dealt with banking and grocery store markets, rather than healthcare markets.  Further, the Courts were deciding the merits, rather than merely determining the extent to which a party may seek discovery to develop its defense.

in the relevant inpatient GAC hospital services market.  No. 16-2492, ECF No. 40, at 7 (7th Cir. 2016).

HSS's relevance is further supported by the fact that HSS falls unambiguously within the definition of "Inpatient GAC Hospital Services" used in the FTC's own subpoena to HSS *in this case*.[15]  The FTC's definitions are inconsistent with the notion that to be relevant for discovery purposes in a "cluster market" case, a third party must provide all of the clustered services.  Indeed, the FTC defined "Relevant Services" to encompass "all Inpatient GAC Hospital Services, *collectively and individually*" and defined "Hospital" as a provider of "Inpatient GAC Hospital Services, *collectively or individually*."  (emphasis added).  Under these definitions, HSS is a relevant provider of Inpatient GAC Hospital Services for discovery purposes, without regard to whether it is specialized in orthopedic and musculoskeletal issues.

HSS's active presence in Northern New Jersey and efforts to drive Northern New Jersey residents to its Main Campus in Manhattan for inpatient treatment make HSS highly relevant to Defendants' defenses that the FTC has improperly defined a Bergen County relevant market, and that the proposed merger will be procompetitive and will result in substantial enhancements and access to healthcare so that residents no longer need to travel to New York City and pay exorbitant prices for inpatient

---

[15] Ex. 7, January 12, 2021 FTC subpoena to HSS.

specialized care relating to orthopedic, rheumatological and musculoskeletal issues.
*See* Englewood's Answer (ECF 65) at 15.

> **B.  Englewood's Pending Requests are Tailored to Obtain Highly Relevant Documents That HSS Uniquely Possesses.**

Englewood's pending document requests are targeted to relevant information that HSS uniquely possesses.  Englewood is not seeking compliance on each and every request in its subpoena, but only those requests set forth in Englewood's proposal on February 8, 2021 (which are the same requests Englewood moved in its February 19 letter to the Court), namely Nos. 4, 5-7, 9, 10, 12, and 13.  Even with those particular requests, Englewood is moving on certain aspects of those requests (Englewood is not, as HSS seems to suggest, reneging on its prior proposal).  As shown below, each of these requests zeroes in on information relevant to rebut the FTC's alleged geographic market and seeks documents uniquely in HSS's files, not Englewood's or payor's or public files:

- Request No. 4 seeks documents and data sufficient to show HSS's primary service area ("PSA") and secondary service area ("SSA").  HSS contends that it "does not track its share of the GAC market," and there is "ambiguity" in the definition.  HSS Mot. at 26.  But Englewood clarified in its proposed modification that it seeks only HSS's PSA and SSA information for those services it does provide at HSS Main Campus and the HSS system overall.  This is information only HSS would have an interest in maintaining—other sources are not likely to accurately track this information.

- Request Nos. 5 and 6 seek documents analyzing competition with hospitals in Northern New Jersey as well as analyzing or describing any plans to expand further into Northern New Jersey.  HSS contends that these requests are "palpably overbroad."  HSS Mot. at 26.  Englewood has proposed limiting

these requests to documents discussing (i) HSS's efforts to expand its inpatient and outpatient services in Northern New Jersey and the strategic rationale for doing so; (ii) the number of Northern New Jersey residents that come to HSS Main Campus and ways to attract more of them; (iii) Northern New Jersey hospitals that compete with HSS Main Campus; and (iv) how HSS competes for patients that reside in Northern New Jersey through HSS Paramus as a driver of patients to the HSS Main Campus for inpatient procedures.  Because this information relates to HSS's business strategy, no other entity would possess this information.

- Request No. 7 seeks documents reflecting HSS's rationale for opening the Paramus outpatient facility and the impact it has had on inpatient admissions at HSS Main Campus.  HSS contends that this is irrelevant because the services it provides at its Paramus outpatient facility "are outside the alleged market." HSS Mot. at 27.  This is wrong for the same reason as HSS's overall argument that it is irrelevant because it does not neatly fit the FTC's alleged market definition. The HSS Paramus facility is relevant for its role in drawing patients from Northern New Jersey into New York for inpatient services.  To the extent HSS contends that "such documents would be captured by . . . Request 5" already, *id.*, that has no bearing on Englewood's interest in getting the relevant documents, whether construed under Request 5 or 7.  Again, because this information relates to HSS's business strategy, no other entity would possess this information.

- Request No. 9 seeks documents concerning HSS's negotiations with New Jersey payors.  Englewood has narrowed this request to include only (i) documents sufficient to show the terms of the contract and (ii) strategic documents discussing the rationale for entering into those contractual relationships.  HSS contends that this request is "irrelevant" because it "extends beyond inpatient services."  HSS Mot. at 27.  HSS's negotiations with payors are relevant to determining the extent to which it competes with other hospitals in the Northern New Jersey/New York areas.  While some of this information could be obtained from payors, that would only tell half the story.  HSS alone possesses documents that would reflect its perspective on negotiations with payors.

- Request Nos. 10 and 12 seek documents identifying each New Jersey payor and each health plan offered in New Jersey in which HSS's Main Campus is or has been a participating provider since January 2018.  HSS contends that it has "already provided Englewood with public information about the plans it

accepts," by which it means a link to its website.  HSS Mot. at 27.  But this is insufficient to confirm which payors or plans are New Jersey-specific and to determine whether there have been changes over time.  HSS is the only entity that would have comprehensive information on this topic.

- Request No. 13 seeks information concerning HSS's advertising and marketing materials.  HSS contends that this request is "facially overbroad."  HSS Mot. at 27.  Englewood has proposed limiting this request to materials and advertisements ***targeted at*** Northern New Jersey, including billboards, print advertisements in local papers, NJ Transit signage, and similar materials.  HSS erroneously asserts that this request is still irrelevant.  But HSS's attempts to provide services that overlap with those of Englewood and HMH to patients residing in Northern New Jersey is plainly relevant to Englewood and HMH's defense.  HSS—as the creator of its advertising and marketing materials—is the only source that will have comprehensive information on this topic.

These requests go to the core issues in the case focused on discovering the extent of HSS's competition in Northern New Jersey.

### C.   HSS Has Made No Showing of Burden.

Further, HSS has made no showing of burden.  *See Adesanya v. Novartis Pharm. Corp.*, 2015 WL 7574362, at *1 (D.N.J. Nov. 24, 2015) ("On a motion to quash, it is the moving party's burden to demonstrate that compliance with the subpoena would . . . be unduly burdensome").  HSS vaguely asserts that the "discovery [Englewood] seeks would impose a substantial burden on HSS."  HSS Mot. at 24.  But "[g]eneral assertions are insufficient to show undue burden for the

purpose of a motion to quash." *Id.*[16]  As discussed above, Englewood's requests are

narrowly tailored to obtain documents that are highly relevant to this litigation:

- Request No. 4 seeks "documents sufficient to show" HSS's PSA and SSA for the services HSS provides.  Most hospitals maintain this information in the ordinary course of business.

- Request Nos. 5-7 seek solely *strategic* documents discussing or analyzing competition in Northern New Jersey, as well as any efforts to further expand into Northern New Jersey.[17]

- Request Nos. 9, 10, and 12 are limited to "documents sufficient to identify" New Jersey payors.  Then, only for those plans, (i) documents sufficient to show the terms of the contract and (ii) strategic documents discussing the rationale for entering into those contractual relationships.

- Request No. 13 simply seeks copies of advertisements—such as billboards, signs, and mailers—HSS has used to target New Jersey residents.

For all of these requests, Englewood has indicated that it would be amenable to HSS

conducting a "self-collection" from relevant custodians rather than a full ESI

search.[18]

---

[16] Despite meeting and conferring and corresponding with Englewood on multiple occasions, HSS never expressed that Englewood's subpoena was unduly burdensome and if so, why.  Rather, HSS maintained throughout these discussions that Englewood was simply not entitled to the discovery sought.

[17] With respect to Request No. 6, HSS contends that it contravenes Rule 45(d)(3)(B)(ii)'s prohibition against disclosure of an unretained expert's opinion or information.  HSS Mot. at 26-27.  But these are not expert materials.  These are ordinary course business documents that HSS paid a consultant to create.

[18] Englewood requests the Court order the parties to meet and confer on custodians, and that as a first step HSS propose a set of relevant custodians and/or departments (and include organizational charts or other information to evaluate the reasonableness of the proposed custodians).

In a further attempt to avoid discovery, HSS argues that it should not be required to comply with Englewood's subpoena because its offer to provide "a declaration acceptable to both Englewood and the FTC" was "more than sufficient." HSS Mot. at 24.  But Rule 26 expressly provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim *or defense*." Fed. R. Civ. P. 26(b)(1) (emphasis added).  And a declaration cannot be offered as a substitute for complying with a subpoena.  *See In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 3822883, at *10 (S.D.N.Y. Aug. 30, 2017) (recognizing that declarations "do not meet [] discovery needs" and refusing to quash a subpoena). Englewood considered HSS's proposed declaration and concluded it would be insufficient to meet Englewood's defense needs without supporting documents or deposition testimony to corroborate.  Englewood is not obligated to accept HSS's offer of a declaration, particularly when it will not meet its discovery needs in this case.  HSS has failed to provide any evidence that Englewood's narrowly tailored document requests pose an undue burden.

## II.    HSS IS NOT ENTITLED TO COSTS

HSS wrongly asserts that Englewood should be required to reimburse HSS for "*all* reasonable costs of compliance, including attorney's fees."  HSS Mot. at 27. HSS fails to acknowledge that all of its costs incurred to date are due to its *own* delay tactics and aggressive litigation.  Indeed, HSS failed to produce a single document

in response to Englewood's subpoena.  Instead, HSS served lengthy Responses & Objections, sent Englewood a six-page letter detailing their relevancy argument, and then when Englewood sought relief from this Court, HSS proceeded to file two letters and a 28-page *proposed* motion to quash detailing the reasons it should not be subject to discovery.  And when HSS made its appearance at the discovery hearing on February 24, it requested that the Court allow it to file a full motion to quash, rather than allowing the Court to rule on this issue based on the positions articulated in the previous filings.  Although "attorneys fees incurred by non-parties may be shifted under [Rule] 45(d)(2)(B)(ii), the shifting of attorney's fees is only appropriate where the attorney's fees are *actually necessary* to a non-party complying with a discovery order."  *In re Am. Nurses Ass'n,* 643 F. App'x 310, 314 (4th Cir. 2016) (emphasis added) (affirming the award of attorney's fees for preparation of discovery status reports, attendance at discovery hearings, and privilege review of materials, but reversing the award of attorney's fees for time spent drafting the motion for attorney's fees).  The attorney's fees HSS has incurred to this point were not necessary for compliance with any discovery order.  In fact, HSS almost certainly would have incurred less cost by engaging in a self-collection of documents in response to Englewood's narrowed document requests.

HSS likewise is not entitled to any future costs it incurs in complying with discovery.  Rule 45(d)(2)(B)(ii) requires only that "[s]ignificant expenses [] be borne

by the party seeking discovery." *R.J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 F. App'x 880, 883 (3d Cir. 2002).   In determining whether costs are significant, courts "consider the ability of the producing non-party to bear the costs of the production." *United States v. McGraw-Hill Co., Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014).   "[T]his consideration makes practical sense," as "an expense might be 'significant' . . . to a small family-run business, while being 'insignificant' to a global financial institution." *Id.*  HSS has not put forth any evidence that it cannot bear the costs of production.  Given that HSS brought in over $1 billion in revenue in 2018, it is unlikely that Englewood's narrow discovery requests would constitute a "significant expense" to the hospital system.[19]

This Court has also considered the following factors to determine whether cost-shifting is appropriate:  "(1) whether the nonparty has an actual interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs than can the requesting party, and (3) whether the litigation is of public importance." *Maximum Human Perf., LLC*, 2013 WL 4537790, at *4; *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 2013 WL 12134101, at *6 (W.D. Pa. Feb. 15, 2013) (same).

All three of these factors weigh against Englewood covering HSS's costs. First, HSS—a healthcare provider targeting New Jersey residents for both its inpatient and outpatient facilities—has an interest in this litigation.  *See W. Penn*

---

[19] Ex. 8, 2018 HSS Form 990.

*Allegheny*, 2013 WL 12134101, at *6 (court rejected non-party's argument that it had "no dog in the fight" where it had a "future economic interest in the outcome of th[e] litigation"); *Hyundai Motor Am., Inc. v. Pinnacle Grp., LLC*, 2016 WL 6208313, at *2 (C.D. Cal. Apr. 20, 2016) (court refused to shift costs because non-party was not entirely disinterested).  Putting aside the alleged relevant market for antitrust analysis, HSS readily admits that it competes with HMH and Englewood for orthopedic services—it clearly has an interest in the outcome of this merger, which Defendants believe will keep New Jersey residents from outmigrating to New York City, where healthcare costs are higher.

Second, HSS has put forth no evidence that Englewood can more readily bear the costs of this discovery request than HSS.  *See Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.*, 319 F.R.D. 277, 282 (N.D. Cal. 2017) (noting that the non-party provided "[no] basis for [the court] to determine that it is not financially able to bear the entirety of the costs of production").  Indeed, a comparison of the two hospitals' 2018 Form 990s shows that HSS's annual revenue totaled $1,288,800,208.00—over ten times that of Englewood's.[20]

Third, this litigation is clearly a matter of public importance.  All sides will agree that healthcare and hospital services are sectors of great public importance.

---

[20] Ex. 8, 2018 HSS Form 990; Ex. 9, 2018 Englewood Healthcare Foundation Form 990.

The plaintiff is a government agency seeking to use federal power to block a merger that it argues is not in the public interest.  On the other hand, Englewood and HMH believe their merger will improve the quality of healthcare services in northern New Jersey to the benefit of the populations they serve.  HSS has failed to demonstrate that the costs of complying with the subpoena should be shifted to Englewood.

If any party is ordered to pay expenses, it should be HSS.  "The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." *Bowers v. Nat. Collegiate Ath. Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007).  District courts have "imposed reasonable expenses when a motion to quash is opposed and the moving party loses after the opposing party moves for such expense." *CSX Transp., Inc. v. Gilkison*, 2009 WL 2985594, at *6 (N.D.W. Va. Sept. 15, 2009); *Baldus v. Members of the WI Gov't Accountability Bd.*, 2012 WL 10610, at *3-4 (E.D. Wis. Jan. 3, 2012) (imposing sanctions against defendants' attorneys for filing "frivolous motions to quash" that were a pattern of "disinformation, foot-dragging and obfuscation" by the attorneys); *Robertson v. Cartinhour*, 711 F.Supp.2d 136, 138 (D.D.C. 2010) (awarding attorneys' fees where plaintiff's "decision . . . to move to quash" was "reckless and in bad faith").  Despite ample evidence that it possesses documents relevant to this litigation, HSS has dragged its feet in complying with

discovery and filed this motion to quash as another tactic to delay the inevitable. HSS's motion is frivolous, and if any party is entitled to costs, it is Englewood.

## **CONCLUSION**

For these reasons, Englewood respectfully requests that this Court deny HSS's motion to quash and order it to comply with Request Nos. 4, 5, 6, 7, 9, 10, 12, and 13.

Date: March 9, 2021

Respectfully submitted,

s/ James Bucci
James Bucci
Angelo J. Genova
GENOVA BURNS LLC
494 Broad St.
Newark, NJ 07102
(973) 535-7100
AGenova@genovaburns.com

Jeffrey L. Kessler (admitted pro hac vice)
Jeffrey J. Amato (admitted pro hac vice)
Kerry C. Donovan
Johanna Rae Hudgens (admitted pro hac vice)
WINSTON & STRAWN LLP
200 Park Ave
New York, NY 10166
(212)-294-6700
Email: jkessler@winston.com
Email: jamato@winston.com
Email: kcdonovan@winston.com

Heather P. Lamberg (admitted pro hac vice)
WINSTON & STRAWN LLP
1901 L Street NW
Washington, D.C. 20036
(202)-282-5000
Email: hlamberg@winston.com

David E. Dahlquist (admitted pro hac vice)
Matthew R. DalSanto (admitted pro hac vice)
Kevin B. Goldstein (admitted pro hac vice)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
(312)-558-5600
Email: ddahlquist@winston.com
Email: mdalsanto@winston.com
Email: kbgoldstein@winston.com

*Attorneys for Defendant Englewood
Healthcare Foundation*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 9, 2021, a copy of the foregoing was filed with the Court's electronic case filing system, thereby effecting service on counsel for all parties.


*s/ James Bucci*
James Bucci

27